## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LINDIS BIOTECH, GMBH,    )
      )
    Plaintiff,    )    C.A. No.: 22-35-GBW
      )
    v.    )    ███████████
      )
AMGEN INC.,    )    PUBLIC VERSION FILED
      )    JUNE 7, 2024
    Defendant.    )

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR
## SUMMARY JUDGMENT NO. 1 FOR NO INEQUITABLE CONDUCT

**SAUL EWING LLP**
James D. Taylor, Jr. (#4009)
Jessica M. Jones (#6246)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
(302) 421-6863
james.taylor@saul.com
jessica.jones@saul.com
michelle.streifthau-livizos@saul.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

I.   SUMMARY OF ARGUMENT ................................................................................ 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ............................................. 1

III.  STATEMENT OF FACTS ...................................................................................... 2

IV.  LEGAL STANDARD.............................................................................................. 3

    **A.**   Summary Judgement............................................................................... 3

    **B.**   Inequitable Conduct ................................................................................ 3

        1.   Materiality.................................................................................... 4

        2.   Intent ............................................................................................ 4

V.   ARGUMENT............................................................................................................ 5

    (a)   The Non-Clinical Reports Are Insufficient to Create a Fact Question Regarding Inequitable Conduct. ................................................................................ 5

        1.   The Non-Clinical Reports Are Not 'But-For' Material to Patentability.. 5

        2.   There Is No Clear and Convincing Evidence of Specific Intent to Deceive the PTO ....................................................................................... 8

    **C.**   Amgen's Other Arguments of Inequitable Conduct Fail as a Matter of Law....... 10

        1.   Amgen's Allegation that Inventorship Was Misrepresented by the omission of Andreas Graf von Stosch and/or One or More Fresenius Employees as Inventors.  (Amgen Answer ¶¶ 73-77; Counterclaims 3 and 6) ...................... 11

            (i)   Amgen Cannot Show Clear and Convincing Evidence of But-For Materiality................................................................................ 11

            (ii)   No Evidence of Intent to Deceive Exists ...................................... 13

        2.   Amgen's Allegations About Misrepresenting Data Contained in the Specifications of the Asserted Patents.  (Amgen Answer ¶ 78; Counts 3, 6)....... 15

(i)    Amgen Cannot Prove by Clear and Convincing Evidence But-For Materiality ................................................................................................ 15

(ii)    No Evidence of Specific Intent to Deceive .................................. 16

3.    Amgen's Allegation About Misrepresenting the Knowledge of a Person of Ordinary Skill, and the Herbelin Publication.  (Amgen Answer ¶ 79; Counterclaims 3 and 6.) ...................................................................... 17

(i)    Amgen Cannot Show Clear and Convincing Evidence of But-For Materiality ................................................................................................ 17

(ii)    No Specific Intent to Deceive Exists. ........................................... 17

4.    Amgen's Allegation that Information Material to the Patentability was Withheld: the Huhn and Bieker references.  (Amgen Answer ¶¶ 80-121.) .......... 18

(i)    Amgen Cannot Show Clear and Convincing Evidence of But-For Materiality ................................................................................................ 18

(ii)    No Evidence of Specific Intent to Deceive ................................. 20

VI.  CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Media, LLC v. Elec. Arts, Inc.*,
694 F.3d 1367 (Fed. Cir. 2012)...........................................................................4, 10

*ATD Corp. v. Lydall, Inc.*,
159 F.3d 534 (Fed. Cir. 1998)...................................................................................4

*C.R. Bard v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)................................................................................4

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..................................................................................................3

*DeCurtis LLC v. Carnival Corp.*,
No. 20-21547-CIV, 2023 WL 2071915 (S.D. Fla. Feb. 8, 2023)...........................14

*Dexcowin Global, Inc. v. Aribex, Inc.*,
No. CV 16-143-GW(AGRx), 2017 WL 3477748 (C.D. Cal. June 7, 2017) ...........15

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)........................................................................11, 12

*Garrett Corp. v. United States*,
422 F.2d 874 (1970)................................................................................................11

*Grantley Pat. Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*,
540 F. Supp. 2d 724 (E.D. Tex. 2008)....................................................................15

*Hess v. Advanced Cardiovascular Systems*,
106 F.3d 976 (Fed. Cir. 1997)................................................................................11

*Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*,
869 F.3d 1336 (Fed. Cir. 2017)..............................................................................14

*Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*,
863 F.2d 867 (Fed. Cir. 1988) (*en banc*) ..........................................................4, 10

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010)..............................................................................10

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..................................................................................................3

*Monsanto Co. v. Bayer Bioscience N.V.*,
363 F.3d 1235 (Fed. Cir. 2004)...................................................................................3

*Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*,
75 F.3d 1568 (Fed. Cir. 1996)...................................................................................14

*In re Rosuvastatin Calcium*,
703 F. 3d 511 (Fed. Cir. 2012)...............................................................................9, 10

*Shum v. Intel Corp.*,
633 F.3d 1067 (Fed. Cir. 2010)...............................................................................11

*Solvay S.A. v. Honeywell Int'l, Inc.*,
622 F.3d 1367 (Fed. Cir. 2010)...............................................................................12

*StoneEagle Servs., Inc. v. Gillman*,
746 F.3d 1059 (Fed. Cir. 2014)..........................................................................12, 14

*Therasense, Inc. v. Becton, Dickinson and Co.*,
649 F.3d 1276 (Fed. Cir. 2011)........................................................................ *passim*

*Union Pacific Res. Co. v. Chesapeake Energy Corp.*,
236 F.3d 684 (Fed. Cir. 2001)...................................................................................4

*Williams v. Borough of West Chester, Pa.*,
891 F.2d 458 (3rd Cir. 1989)...................................................................................3

## Statutes

35 U.S.C. §§ 101-103 ...................................................................................................2

## Other Authorities

37 C.F.R. § 1.56...................................................................................................4, 5

Fed. R. Civ. P. 56(a) ...................................................................................................3

## I.    SUMMARY OF ARGUMENT

1.    Plaintiff Lindis Biotech, GmbH's ("Plaintiff") Motion for Summary Judgment for No Inequitable Conduct ("Motion") should be granted.  There is no genuine issue of material fact because Defendant Amgen, Inc. ("Defendant") cannot prove the but-for materiality or intent elements required to establish inequitable conduct.

2.    Defendant cannot prove "materiality" because there was no substantial likelihood that a reasonable Examiner would have considered the alleged "omissions, misrepresentations, and/or mischaracterizations" material to the patentability of the claimed invention, and they therefore have no bearing on patentability of the asserted claims.  Defendant's inequitable conduct claims cannot be saved by its expert's opinion.  Mr. Robert L. Stoll is not permitted to opine on materiality.  Even if he could, his opinions are insufficient and untimely.

3.    Defendant also cannot prove that the "single most reasonable inference" based on the record is intent to deceive the United States Patent and Trademark Office ("PTO").

## II.    NATURE AND STAGE OF THE PROCEEDINGS

The First Amended Complaint was filed on April 4, 2024 asserting infringement of U.S. Patent Nos. 8,709,421 ("the '421 patent") and 10,071,158 ("the '158 patent") (collectively, the "Asserted Patents").  (D.I. 157, Exs. A and B.)  Defendant filed its Answer to First Amended Complaint, Affirmative Defenses, and Counterclaims on May 2, 2024, wherein Defendant asserted an affirmative defense and counterclaims for inequitable conduct.  (D.I. 166 at 12-22, 27, 29.)

Defendant deposed the named inventors, Dr. Horst Lindhofer and Dr. Markus M. Heiss, on September 20 and 21, 2023 ("Lindhofer Dep.") and September 28, 2023 ("Heiss Dep."),

respectively, (Exs. 1 and 2).[1]  Defendant deposed Ms. Sarah Adriano, the prosecuting U.S. patent attorney of the Asserted Patents, on September 29, 2023 ("Adriano Dep.") (Ex. 3).  Defendant did not depose European patent counsel for the named inventors, Mr. Andreas von Stosch.  (Gill Decl. at ¶ 4.)  Fact discovery closed on September 29, 2023.  (D.I. 57.)

On November 13, 2023, Mr. Stoll issued his expert report ("Stoll Report") in support of Defendant's allegations of inequitable conduct.  (Ex. 4)  Mr. Stoll opined that Dr. Lindhofer breached his duty of candor to the PTO by failing to disclose an April 2005 non-clinical study report  (Ex. 5 (the "Trion Report")) and a February 2011 report entitled "Assessment Report for Removab" (Ex. 6 ("EMA 2009 Report")) (collectively, with the Trion Report, the "Non-Clinical Reports")).  (Ex. 4 at ¶¶ 58-59.)  The Non-Clinical Reports are *not* prior art under 35 U.S.C. §§ 101-103 or 112.  (SUF at ¶ 7.)  Mr. Stoll did not provide any opinions in support of Defendant's other inequitable conduct defenses or claims.  (*Id.*)

Plaintiff deposed Mr. Stoll on March 26, 2024 ("Stoll Dep.").  (Ex. 7).  Mr. Stoll confirmed during his deposition that it was his opinion that only Dr. Lindhofer breached his duty of candor to the PTO.  (Ex. 7 at 102:10-14; 49:17-50:6; 118:8-12.)  Expert discovery closed on April 19, 2024.  (D.I. 144 at 1.)

## III.    STATEMENT OF FACTS

The relevant facts are laid out in Plaintiff's accompanying Undisputed Statement of Facts ("SUF"), set forth in the Sections II and V below as appropriate, and incorporated herewith.

---

[1] A true and correct copy of all exhibits to this Motion are attached hereto to the declaration of Robert Gill ("Gill Decl.") in Support of Plaintiff's Motion for Summary Judgment for No Inequitable Conduct.

## IV.    LEGAL STANDARD

### A.    Summary Judgement

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case.  *Celotex*, 477 U.S. at 323.  The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial.  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3rd Cir. 1989).  If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  *See Celotex Corp.*, 477 U.S. at 322.

### B.    Inequitable Conduct

Summary judgment "is permissible on inequitable conduct, as on other issues, if there is no genuine issue of material fact."  *Monsanto Co. v. Bayer Bioscience N.V.,* 363 F.3d 1235, 1240 (Fed. Cir. 2004).

"To prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO."  *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). To make out a case for inequitable conduct, "[t]he accused infringer must prove both elements – intent and materiality – by clear and convincing evidence."  *Id*.  "Intent and materiality are separate requirements."  *Id*. at 1290.  In other words, the accused infringer – in this case Amgen – must

prove by clear and convincing evidence that a named inventor, prosecuting attorney, or other individual substantively involved in the prosecution of the patent application (i) failed to disclose material prior art or other information and (ii) that they did so with the intent to deceive the PTO. *See ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998); 37 C.F.R. § 1.56.

"A district court should ***not*** use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa.  Moreover, a district court ***may not*** infer intent solely from materiality.  Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality.  In other words, each prong of this two-part analysis — both materiality of the undisclosed information and intent to deceive — must be proven by clear and convincing evidence.  *See, e.g., Union Pacific Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed. Cir. 2001); *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988) (*en banc*).

### 1.    Materiality

"[T]he materiality required to establish inequitable conduct is but-for materiality." (*Therasense,* at 1291.)  In determining whether the PTO would have allowed a claim but for the alleged misrepresentation, a court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction.  *Therasense* at 1291-1292.  "There is no presumption that information not filed by an applicant was material simply because patentability ensued."  *C.R. Bard v. M3 Sys., Inc.*, 157 F.3d 1340, 1365 (Fed. Cir. 1998) (citation omitted).

### 2.    Intent

To prove specific intent, the accused infringer must show that the patent applicant knew that the information at issue was material to prosecution of the patent, and acted deliberately with the intent to deceive the PTO.  (*Id.*)  Less than clear and convincing evidence of specific intent "would effectively eviscerate *Therasense*'s test for ***mens rea*** and reinflict the plague of patent

4

unenforceability based on the [] nest of speculation regarding the applicant's putative mental state." *See 1st Media, LLC v. Elec. Arts, Inc*., 694 F.3d 1367, 1375 (Fed. Cir. 2012).

## V.    ARGUMENT

### (a)    The Non-Clinical Reports Are Insufficient to Create a Fact Question Regarding Inequitable Conduct.

The only allegation of inequitable conduct supported by Amgen's expert Stoll is the allegation that inventor Dr. Horst Lindhofer (and only Dr. Lindhofer) breached his duty of candor by withholding the Non-Clinical Reports with specific intent to deceive the PTO.  (Ex. 7 (Stoll Dep.) at 102:11-14 (Q: Dr. Lindhofer is the only one you've said that is identified as breaching their duty, sir? A: Yes, it is …).)

Stoll does not base his expert opinion on Amgen's other allegations: that European lawyer Andreas Graf von Stosch is an inventor, that one or more Fresenius employees are inventors, that Dr. Lindhofer supposedly misrepresented the knowledge of POSA or the data contained in the specifications of the patents-in-suit, or based on the Huhn and Bieker references.

The only allegations of inequitable conduct supported by expert testimony are deficient.

### 1.    The Non-Clinical Reports Are Not 'But-For' Material to Patentability

*Therasense* requires that a patent would not have issued had the information in question been provided to the examiner.  *Therasense*, 649 F.3d at 1291.  It is not enough that a reasonable examiner would have considered the Non-Clinical Reports important to deciding patentability. "Information is material to patentability when it is not cumulative to information already of record or being made of record in the application."  37 C.F.R. 1.56(b).  Even considered in a light most favorable to Amgen, the Non-Clinical Reports were not 'but-for' material to patentability, as discussed below.

First, the information at the core of Amgen's defense, namely data in the Non-Clinical Reports showing impairment of the action of the antibodies by dexamethasone, is not material because the information is cumulative to information already of record in the specification for the Asserted Patents. The specifications of the Asserted Patents and the Non-Clinical Reports disclose the same information about impairment of the action of the antibody by dexamethasone under the specific conditions described therein.

For example, the cytotoxicity experiments of Example 3 (together with the corresponding data shown in Figs. 5A to 5B) of the specifications of the Asserted Patents show impairment of the action of the antibodies by dexamethasone. This information is substantially similar to information about impairment of the action of the antibodies by use of dexamethasone described in both the Trion Report and the EMA Assessment Report. *See e.g.*, '421 Patent at 12:61-65 ("FIG. 5B represents the results of the corresponding measurements with regard to the influence of 0.1 μg/ml dexamethasone. At this dexamethasone concentration a distinct inhibition of the specific percentage cytotoxicity by about 50 percentage points arises.") As such, the disclosure of such "impairment" data in the specifications of the Asserted Patents shows that the Non-Clinical Reports are cumulative to such information already of record in specifications of the Asserted Patents. For this reason alone, Amgen cannot meet its burden to show materiality, let alone but-for materiality.

Even more fundamentally, Amgen cannot show where the purported feature "without impairing the action of the immunostimulating antibodies" is found in the claims. No such feature is actually claimed. Because the information at the core of Amgen's flawed theory of "impairment" of action of the antibodies is nowhere to be found in the claims, this fact also renders the Non-Clinical Reports immaterial to patentability. Amgen's own expert Mr. Stoll admitted that

the purported impairment feature is not contained in the language of the claims.  (Ex. 7 at 64:15-16 ("Q:  But looking at claim one of the "'421 patent, there's no requirement that the stimulate -- the immunostimulating antibodies are unimpaired, right? A: I don't see the particular language you're talking about …").)

Without any specific language in the claims to support his position, Mr. Stoll instead refers to paragraph 73 of his expert report where he quotes passages from applicant's March 9, 2011 response in the application that issued as the '421 Patent where purportedly the prosecuting attorney said that the claims include the "without" impairing language to overcome prior art rejections.  (*Id*. at 63:11-18 ("A: You can look to my paragraph 73, which I cite to your prosecuting attorney, and he talks about the issues and says at the bottom statement: One skilled in the art would predict that the immunosuppressant glucocorticoids would impair ability of the immunostimulating antibodies to kill tumor cells, the opposite of what is claimed in applicant's instant invention.).

The record evidence conclusively establishes that this premise is false.  The claims of the '421 Patent application were different on March 9, 2011 as compared to the claims which ultimately issued in the '421 Patent (*See* claim 1 on March 9, 2011: A method for reducing the non-specific release of a cytokine associated with a disease in a subject comprising administering to the subject at least one glucocorticoid and at least one trifunctional, bispecific immunostimulating antibody that reduces the non-specific release of the cytokine associated with the disease, wherein the disease is a cancerous disease.)  (Ex. 8 at 3.)  In other words, the prosecuting attorney's arguments on March 9, 2011 were at best applicable only to claims as pending at the time, which specifically recited the active steps of administering both a glucocorticoid *AND* an antibody.  The claim was amended later during prosecution to delete the

active step of antibody administration.  (Ex. 9 at 3.) As such, the March 9, 2011 arguments that Mr. Stoll relies on applied only to the claims as they were pending on March 9, 2011, requiring the active step of administering both the glucocorticoid AND the antibody.  However, the March 9, 2011 arguments are not applicable to the claims as subsequently amended to remove the active step of administering an antibody.

Nowhere do the asserted claims recite the use of dexamethasone to reduce non-specific release of cytokines associated with administration of bispecific, immunostimulating antibodies "without impairing the action of the immunostimulating antibodies."  Amgen's flawed theory effectively characterizes the Non-Clinical Reports as critical references that an examiner would find more pertinent than the same information already disclosed in the specification in Example 3 (together with the corresponding data shown in Figs. 5A to 5B).  Amgen's theory is premised on phantom features that do not exist in any of the asserted claims, since the record evidence conclusively shows that the claims that ultimately issued do not recite the feature "without impairing the action of the immunostimulating antibodies."  In sum, Amgen's theory is strained. A failure to cite nonmaterial, cumulative references, namely the Non-Clinical Reports, cannot support a claim for inequitable conduct.  Any omission of the Non-Clinical Reports fails to satisfy the threshold standard for materiality, let alone but-for materiality.

### 2. There Is No Clear and Convincing Evidence of Specific Intent to Deceive the PTO

"[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the *single most reasonable inference* able to be drawn from the evidence,'" or put another way, "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Therasense* at 1290-1291 (internal citations omitted).  No inference of deceptive intent exists where it is "equally plausible" that patent owner believed prosecution requirements had been

met.  *See In re Rosuvastatin Calcium*, 703 F. 3d 511, 522 (Fed. Cir. 2012) ("Recognizing the complexity of patent prosecution, negligence - even gross negligence - is insufficient to establish deceptive intent.").  Guided by the context in which the Non-Clinical Reports are allegedly material, no fact finder could find that Dr. Lindhofer withheld the Non-Clinical Reports with specific intent to deceive the PTO.

Dr. Lindhofer testified that the purpose of the Trion Report was to reproduce data which they had already integrated into the patent documents and to test additional parameters which could be changed for approval of the novel antibody Removab.  (Ex. 1 (Lindhofer Dep.) at 493:22-494:7 ("A:  The purpose of the study was to reproduce data which we have already integrated into a patent documentation, and Fresenius was interested in testing for -- how is it called, for parameters, you know, which can be changed additionally to the data from a patent and especially one, you know, on important point for approvals are that you have performed investigation into a GLP environment, you know, that means it's a controlled, experimental environment and not like at the university.").)

Dr. Lindhofer also testified that he didn't know whether the Trion Report was sent to the examiner at the PTO or not.  (*Id.* at 506:6-16 ███████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

When asked whether he disclosed the EMA Report to the patent office, Dr. Lindhofer testified he did not, as the EMA Report that it has nothing to do with the invention.  (*Id.* at 528:2-14 ("Q: And did you disclose this information to the patent office? this information being the

information that's in the EMA report. A: This is nothing to do with the invention. Q: That dexamethasone inhibits tumor cell killing when preadministered before your antibody. It has nothing to do with your invention; is that right? A: But only under this special conditions where we now have found that this is an incorrect interpretation.").)

Courts must find in favor of patent holders based on intent under such circumstances, even where a reference is known and material. *See 1st Media, LLC v. Elec. Arts, Inc*., 694 F.3d 1367, 1372 (Fed. Cir. 2012) ("A court can no longer infer intent to deceive from non-disclosure of a reference solely because that reference was known and material."); *see In re Rosuvastatin Calcium*, 703 F. 3d 511, 522 (Fed. Cir. 2012) (citing *Kingsdown*, 863 F.2d 867, 876 (Fed. Cir. 2012) ("a finding that particular conduct amounts to 'gross negligence' does not of itself justify an inference of intent to deceive")); *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc*., 628 F.3d 1359, 1379 (Fed. Cir. 2010) ("mistake or exercise of poor judgment . . . does not support an inference of intent to deceive").

Even if the Non-Clinical Reports were material, and were not cumulative, the most likely inference from the evidence is that Dr. Lindhofer was mistaken about their relevance, or negligent. He testified that he did not know if the Trion Report had been sent to the PTO, but that the information in the Trion Report was incorporated into the Asserted Patents. He testified that the information in the EMA Report "has nothing to do with [the] invention." There is simply no record evidence that Dr. Lindhofer actually believed the Non-Clinical Reports were material, and a mistake or negligence as to the Non-Clinical Reports' materiality does not rise to the level of intent required for inequitable conduct.

## C.    Amgen's Other Arguments of Inequitable Conduct Fail as a Matter of Law.

None of Amgen's other allegations of inequitable conduct in its Answer and Counterclaims to the Amended Complaint are supported by expert testimony. Accordingly, there is no evidence

to support the element of the claim that a reasonable examiner would have found the other arguments raised by Amgen to be material to patentability.  As discussed below, each lacks but-for materiality, and lacks evidence of specific intent necessary to support a claim of inequitable conduct.

> **1.    Amgen's Allegation that Inventorship Was Misrepresented by the omission of Andreas Graf von Stosch and/or One or More Fresenius Employees as Inventors.  (Amgen Answer ¶¶ 73-77; Counterclaims 3 and 6)**

> > **(i)    Amgen Cannot Show Clear and Convincing Evidence of But-For Materiality.**

Amgen cannot show that the Asserted Patents would not have issued had Dr. Lindhofer identified European patent attorney von Stosch and/or one or more authors of Fresenius HemoCare Immune Therapy GmbH Study No. IV REM 01 DE ("Fresenius Study") as co-inventors. "[T]he burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence." *Hess v. Advanced Cardiovascular Systems,* 106 F.3d 976, 980 (Fed. Cir. 1997) (quoting *Garrett Corp. v. United States*, 422 F.2d 874, 880 (1970)).

"Patent issuance creates a presumption that the named inventors are the true and only inventors." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (emphasis added).  There is no evidence to support Amgen's claim, and it cannot overcome this presumption. With regard to the alleged omission of patent attorney von Stosch and/or one or more authors of the Fresenius Study as co-inventors, to be material they must have qualified as inventors in the first place.  "[T]he critical question for joint conception is who conceived, as that term is used in the patent law, the subject matter of the claims at issue." *Id.* at 1462; *see Shum v. Intel Corp.*, 633 F.3d 1067, 1083 (Fed. Cir. 2010).

There is no evidence that patent attorney von Stosch and/or one or more authors of the Fresenius Study even considered themselves to be inventors of any part of the asserted claims, or

11

that any one of them wanted to be named as an inventor.  The only indirect evidence cited by Amgen is Fresenius's preclinical studies, including the Fresenius Study, and various versions and amendments, that, according to Amgen, are "identified and relied upon by Plaintiff as purportedly evidencing and demonstrating invention of the claims of the Asserted Patents."  Nowhere do the Fresenius documents mention inventorship.

Amgen's inventorship theory is a stretch.  This is illustrated by Amgen's flawed assertion that Lindis' European patent counsel von Stosch contributed to aspects of the claims of the Asserted Patents.  Even considered in a light most favorable to Amgen, von Stosch assisted in constructively reducing an invention to practice, which the Federal Circuit has found to be insufficient to establish inventorship.  *See StoneEagle Servs., Inc. v. Gillman*, 746 F.3d 1059, 1063 (Fed. Cir. 2014) ("In this case, the most favorable inference from the record in favor of StoneEagle shows only that Gillman assisted in constructively reducing an invention to practice. . . .  Those activities confer no more rights of inventorship than activities in furtherance of an actual reduction to practice.  Otherwise, patent attorneys and patent agents would be co-inventors on nearly every patent.  Of course, this proposition cannot be correct.") (internal citations omitted).

There is no evidence that patent attorney von Stosch is an inventor.  Von Stosch's assistance as a European patent attorney and the Fresenius documents relied on by Amgen, even considered in the light most favorable to Amgen, at most suggest that von Stosch and the Fresenius authors assisted in developing the claimed invention ***after*** its conception by Drs. Lindhofer and Heiss.  "[O]ne does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention."  *Ethicon*, 135 F.3d at 1460.  Conception "justifies a finding of inventorship" but reduction to practice "does not."  *Id.* at 1465.

**(ii)      No Evidence of Intent to Deceive Exists**

There is no evidence that anyone substantively involved in the preparation and prosecution of the Asserted Patents considered Drs. Lindhofer or Heiss as not the true and only inventors of the technology claimed, or otherwise considered the work they did for the technology claimed to be patentable.  Amgen has not provided any evidence regarding U.S. patent counsel Sarah Adriano's or European patent counsel Andreas von Stosch's beliefs on this issue.  Mr. von Stosch was not deposed in this case.  Ms. Adriano and Dr. Buhmann never testified that they considered anyone other than Drs. Lindhofer and Heiss as the true and only inventors.

Nor does any evidence exist that anyone substantively involved in  prosecution of the Asserted Patents considered that an individual employed by, associated with, or who were advisors to Fresenius to have invented the technology claimed, or to have considered the work they did patentable.  This includes anyone developing the protocols and methods for Fresenius's preclinical studies.  These include the Fresenius Study and various versions and amendments, in which patients were pretreated with a glucocorticoid prior to administration of removab, the March 7, 2002 Amendment of which is identified and relied upon by Plaintiff as evidencing and demonstrating invention of the claims of the Asserted Patents.

Rather than present evidence of specific intent to deceive, Amgen's defense relies on speculation that Dr. Lindhofer misled or lied to the PTO regarding inventorship, because the Fresenius Study identifies various authors, but omits Drs. Lindhofer and/or Heiss as authors. Speculation about authorship does not implicate inventorship, let alone prove specific intent.

There is no evidence that one or more authors of the Fresenius Study claimed they invented the technology protected by the Asserted Patents.  There certainly is no evidence that one or more

13

authors conceived of the idea or contributed to its conception, much less that one or more of the individuals substantively involved in prosecution of the Asserted Patents knew of any such claim, but intentionally withheld the information from the PTO.

Direct evidence at a minimum permits the reasonable inferences that one or more of the individuals substantively involved in the preparation and prosecution of the Asserted Patents did not name patent attorney von Stosch and/or one or more authors of the Fresenius Study as inventors because they believed that these individuals, including the authors, were not inventors, or that any omission was a mistake rather than the product of deceptive intent. Those activities by von Stosch or the authors confer no more rights of inventorship than activities in furtherance of an actual reduction to practice, at most. Even the most favorable inference from the record in favor of Amgen shows only that von Stosch or one or more of the authors assisted in constructively reducing an invention to practice, which does not contribute to inventorship. *See StoneEagle Servs., Inc.* 746 F.3d at 1063.

ven if one or more of the individuals substantively involved in the preparation and prosecution of the Asserted Patents were incorrect in their belief regarding inventorship, the most that can be inferred is a mistake, since there is no evidence showing that these individuals intentionally lied to the PTO. *DeCurtis LLC v. Carnival Corp.*, No. 20-21547-CIV, 2023 WL 2071915, at *8 (S.D. Fla. Feb. 8, 2023) (citing *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1352 (Fed. Cir. 2017) ("without any evidence in the record showing that these inventors were lying, the most that can be inferred is a mistake.") (noting that the challenger had presented "no admission or anything similar indicating that any relevant [patentee] officer or representative" "actually believed" the error was actually an error)). And a mistake "in determining inventorship is not by itself inequitable conduct." *Pro-Mold & Tool Co. v. Great*

14

*Lakes Plastics, Inc*., 75 F.3d 1568, 1576 (Fed. Cir. 1996) (affirming lower court finding of no inequitable conduct); *see Grantley Pat. Holdings, Ltd. v. Clear Channel Commc'ns, Inc*., 540 F. Supp. 2d 724, 734 (E.D. Tex. 2008) (granting motion for summary judgment of no inequitable conduct where the evidence pointed to, at best, "a confusion over what was likely a difficult inventorship determination."); *Dexcowin Global, Inc. v. Aribex, Inc.*, No. CV 16-143-GW(AGRx), 2017 WL 3477748, at *11 (C.D. Cal. June 7, 2017) (granting summary judgment against inequitable conduct defense based on improper inventorship and noting "in cases of error in inventorship, the most likely inference from the evidence is that the Patentees misunderstood the exact requirements of the legal term of art inventor" (internal citation omitted)).

> **2.    Amgen's Allegations About Misrepresenting Data Contained in the Specifications of the Asserted Patents.  (Amgen Answer ¶ 78; Counts 3, 6).**

> > **(i)    Amgen Cannot Prove by Clear and Convincing Evidence But-For Materiality.**

Amgen cannot prove the but-for materiality required to establish inequitable conduct. *Therasense*, 649 F.3d at 1291. The asserted claims of the patents-in-suit do not require *inter alia* the use of glucocorticoids "without impairing the action of the immunostimulating antibodies directed against the target antigen."  As such, Amgen cannot prove that the patents would not have issued even if, considered in the light most favorable to Amgen, one or more individuals substantively involved in the prosecution of the Asserted Patents misrepresented data, as alleged by Amgen.

As discussed above, Amgen cannot show that the purported feature "without impairing the action of the immunostimulating antibodies" is present in the claims, because during prosecution such claims were omitted.  *See*, *in general*, Exs. 8 and 9.  Amgen cannot explain the relationship, if any, between the allegedly misrepresented data about impairment of the action of the antibody

15

by dexamethasone, and the invention as claimed. Amgen fails to acknowledge that the specifications contain numerous *in vitro* and *in vivo* examples and the associated data, which disclosed the ability of glucocorticoids (e.g., dexamethasone) to inhibit the non-specific release of cytokines associated with a bispecific, immunostimulating antibody, but also disclosed the effects of dexamethasone on the cytotoxicity of T-cells.

In other words, Amgen cannot identify any evidence, let alone clear and convincing evidence, showing that the Examiner did not consider all the data disclosed in the specification, including the data which shows impairment of the action of the antibody by dexamethasone, before deciding to issue a Notice of Allowance for the asserted claims. Nor can Amgen show that any purported misrepresentation was material to patentability of the asserted claims.

### (ii)    No Evidence of Specific Intent to Deceive.

There is no evidence that inventor Dr. Lindhofer misrepresented the data contained in the specifications, let alone with specific intent to deceive the PTO.

The record evidence conclusively shows that the cytotoxicity experiments of Example 3 (together with the corresponding data shown in Figs. 5A to 5B) as disclosed in the specifications preclude Amgen's entire theory of specific intent. These disclosures show that dexamethasone under the specific conditions described can impair the cytotoxicity of the antibody. If Dr. Lindhofer had intended to misrepresent the data disclosed in the specifications, he would not have disclosed the experiments in Example 3 (together with the corresponding data shown in Figs. 5A to 5B) in the specification showing impairment of cytotoxicity by dexamethasone under certain conditions. In other words, Example 3 (together with the corresponding data shown in Figs. 5A to 5B) of the specification, which discloses impairment of cytotoxicity, conclusively shows that

Dr. Lindhofer had no reason to misrepresent the data contained in the specifications, thus undermining Amgen's entire theory of specific intent.

> ### 3. Amgen's Allegation About Misrepresenting the Knowledge of a Person of Ordinary Skill, and the Herbelin Publication. (Amgen Answer ¶ 79; Counterclaims 3 and 6.)
>
> #### (i) Amgen Cannot Show Clear and Convincing Evidence of But-For Materiality.

Even if, as alleged by Amgen, Dr. Lindhofer misrepresented the knowledge of a person of ordinary skill in the art regarding the use of glucocorticoids (e.g., dexamethasone) to inhibit release of cytokines caused by immunostimulating antibodies and the Herbelin publication, Amgen cannot provide any reason why the patents would not have issued.

Importantly, Amgen fails to acknowledge that the specifications of the Asserted Patents cite to and discuss Herbelin. (col. 2, lines 8-19 of '421 Patent; col. 2, lines 10-23 of '158 Patent.) Amgen cannot identify any evidence, let alone clear and convincing evidence, that the Examiner did not consider the specifications' disclosures, including the disclosure of Herbelin, before deciding to issue a Notice of Allowance for the asserted claims. Amgen cannot show that any representation was false, or material to patentability of the asserted claims.

> #### (ii) No Specific Intent to Deceive Exists.

There is no evidence that Dr. Lindhofer misrepresented the knowledge of a person of ordinary skill in the art regarding the use of glucocorticoids (e.g., dexamethasone) to inhibit release of cytokines caused by immunostimulating antibodies, or the publication titled "CD3 antibody-induced IL-10 in renal allograft recipients: an in vivo and in vitro analysis" by Herbelin *et al.* (Transplantation (1999) 68(5): 616-622) ("Herbelin").

The fact that Herbelin is cited and discussed in the specification (col. 2, lines 8-19 of '421 Patent; col. 2, lines 10-23 of '158 Patent) kills Amgen's specific intent theory. If one or more

17

individuals substantively involved in prosecution of the Asserted Patents intended to misrepresent the knowledge of a person of ordinary skill in the art at the time of the invention, they would not have cited and discussed Herbelin in the specification. Citation and discussion of Herbelin in the specification conclusively shows that Dr. Lindhofer disclosed the reference which Amgen claims was material.

>    **4.    Amgen's Allegation that Information Material to the Patentability was Withheld: the Huhn and Bieker references. (Amgen Answer ¶¶ 80-121.)**

>>    **(i)    Amgen Cannot Show Clear and Convincing Evidence of But-For Materiality.**

Amgen's theory is that two other references were material and were intentionally withheld. *Huhn et al.*, "Rituximab therapy of patients with B-cell chronic lymphocytic leukemia," Blood (2001) 98:1326-1331 ("Huhn"), and *Bieker et al.* "Rituximab in combination with platinum-containing chemotherapy in patients with relapsed or primary refractory diffuse large B-cell lymphoma," Oncol. Rep. (2003) 10:1915-1917 ("Bieker").

Amgen asserts that: '[b]oth Huhn and Bieker contradict and are inconsistent with applicants' repeated arguments during prosecution of the Asserted Patents that one skilled in the art would not have combined a glucocorticoid with a bispecific immunostimulating antibody as claimed. To the contrary, both Huhn and Bieker demonstrate that "[s]teroid medication [e.g., a glucocorticoid,] is a common tool in the clinics to minimize the side effects of overwhelming cytokine secretion in patients during monoclonal antibody therapy" as recited in the Trion Report.' *See* D.I. 166 at ¶ 117. The record evidence conclusively establishes that this theory is false. Even considered in a light most favorable to Amgen, non-disclosure of Huhn and Bieker during prosecution at most would suggest that the information was not material to patentability.

First, by Amgen's own admission, Huhn and Bieker concern cytokine secretion associated with "monoclonal antibody therapy."  This case, in contrast, concerns a different class of antibodies, which are bispecific, immunostimulating antibodies.  The fact that Amgen's theory is flawed is self-evident from this distinction.  Applicant's arguments during prosecution of the Asserted Patents with respect to bispecific, immunostimulating antibodies cannot possibly contradict or be inconsistent with any disclosure by Huhn and Bieker, which by admission relate only to "monoclonal antibody therapy."

The specification of the Asserted Patents discusses Herbelin, which describes "monoclonal antibody" therapy.  As with Huhn and Bieker, concerns treatment with the "monoclonal antibody" rituximab.  *See* Rose AL et al., Glucocorticoids and rituximab in vitro: Synergistic direct antiproliferative and apoptotic effects, Blood. Sep. 1, 2002; 100(5):1765-73 ("Rose").  Rose was disclosed to the PTO, and appears on the face of the Asserted Patents. D.I. 157-1, Ex. A ('421 Patent) at 1; id. at Ex. B ('159 patent) at 3.

Even considered in a light most favorable to Amgen, non-disclosure of Huhn and Bieker at most would suggest that Huhn and Bieker, which concern "monoclonal antibody" therapy are cumulative to the disclosed Herbelin and Rose papers, which also relate to "monoclonal antibody" therapy.  The disclosure of substantially similar references, namely disclosure and discussion of Herbelin in the specification, and disclosure of Rose in an information disclosure statement, clearly are more than sufficient. Huhn and Bieker are not material to patentability, since they are cumulative information.

Moreover, information concerning "monoclonal antibody" treatments, in particular known immunosuppressive treatments such as the monoclonal antibodies rituximab (Rose) and OKT3 (Herbelin), cannot possibly contradict or be inconsistent with any of applicants' arguments during

19

prosecution of the Asserted Patents, as those arguments pertain to glucocorticoid usage associated with treatments involving bispecific, immunostimulating antibodies. In sum, Amgen's theory is without merit. A failure to cite nonmaterial, cumulative references, namely Huhn and Bieker, is not inequitable conduct. Any omission of Huhn and Bieker was not material.

(ii)    **No Evidence of Specific Intent to Deceive.**

Guided by context in which Huhn and Bieker are allegedly material, no fact finder could find that Dr. Lindhofer withheld Huhn and/or Bieker with specific intent to deceive the PTO.

As set forth above with regard to the issue of materiality, any failure to disclose Huhn and/or Bieker was inconsequential, in that Huhn and Bieker were substantially similar references to Herbelin, disclosed in the specification, and Rose, disclosed in an information disclosure statement. For the same reason that Huhn and Bieker were not material to patentability, because they represented cumulative information, any failure to disclose Huhn and/or Bieker is insufficient to prove specific intent.

Even if Huhn and Bieker were material, and Dr. Lindhofer knew they existed, the most likely inference from the evidence for non-disclosure is that Dr. Lindhofer was mistaken or negligent. There is simply no record evidence that Lindhofer actually believed non-disclosure of Huhn and Bieker was an error, and a mistake or negligence, even gross negligence, is not by itself inequitable conduct.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests this Court enter Summary Judgment for Plaintiff on Defendant's Fifth Affirmative Defense and Counterclaims 3 and 6 predicated on alleged inequitable conduct.

Dated May 24, 2024

**SAUL EWING LLP**

_/s/Michelle C. Streifthau-Livizos_
James D. Taylor, Jr. (#4009)
Jessica M. Jones (#6246)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
(302) 421-6863
james.taylor@saul.com
jessica.jones@saul.com
michelle.streifthau-livizos@saul.com

Henry A. Platt
Robert C. Gill
Matthew J. Antonelli
Alireza Behrooz
Dennis Ostrovsky
1919 Pennsylvania Avenue, NW, Suite 550
Washington, DC  20006
henry.platt@saul.com
robert.gill@saul.com
matt.antonelli@saul.com

Courtland C. Merrill
33 South Sixth Street, Suite 4750
Minneapolis, MN  55402
courtland.merrill@saul.com
(612) 225-2943

Andrew Schwerin
Veronica McCarty (#6734)
1500 Market Street, 38th Floor
Philadelphia, PA  19102
(215) 972-7184
andrew.schwerin@saul.com
veronica.mccarty@saul.com

*Attorneys for Lindis Biotech, GmbH*