**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LINDIS BIOTECH, GMBH,<br><br>Plaintiff,<br><br>v.<br><br>AMGEN INC.,<br><br>Defendant. | C.A. No. 22-35-GBW<br><br>**FILED UNDER SEAL** |

James D. Taylor, Jr., Jessica M. Jones, Michelle C. Streifthau-Livizos, SAUL EWING LLP, Wilmington, DE; Henry A. Platt, Robert C. Gill, Matthew J. Antonelli, Alireza Behrooz, Dennis Ostrovsky, SAUL EWING LLP, Washington, DC; Courtland C. Merrill, SAUL EWING LLP, Minneapolis, MN; Andrew Schwerin, Veronica McCarty, SAUL EWING LLP, Philadelphia, PA.

*Counsel for Plaintiff*

Melanie K. Sharp, James L. Higgins, Stephanie N. Vangellow, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Michael J. Wise, Joseph P. Hamilton, Lara J. Dueppen, Courtney M. Prochnow, Alisha C. Burgin, Doris Alvarez-Reyes, PERKINS COIE LLP, Los Angeles, CA; Garmai Gorlorwulu, Blake A. Winn, PERKINS COIE LLP, San Diego, CA; Brian Kao, J. Drew Diamond, Blake Greene, Wendy A. Whiteford, AMGEN INC., San Diego, CA; Lisa B. Pensabene, Hassen Sayeed, Carolyn S. Wall, Jing Ying (Amy) Zhao, O'MELVENY & MYERS LLP, New York, NY; Luann L. Simmons, Sorin Zaharia, O'MELVENY & MYERS LLP, San Francisco, CA.

*Counsel for Defendant*

**MEMORANDUM OPINION**

November 25, 2024
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Lindis Biotech, GmbH ("Lindis") filed its First Amended Complaint against Defendant Amgen Inc. ("Amgen") alleging direct, contributory, induced, and willful infringement of two of Lindis' patents through Amgen's alleged manufacturing, marketing, distributing, and selling of the immunotherapy drug Blincyto®. *See* D.I. 157 ¶¶ 25-54; *see* D.I. 260 at 1 (letter regarding "[e]lection of asserted patent claims"). Pending before the Court are 1) Plaintiff Lindis Biotech Gmbh's Motion for Summary Judgment No. 1 for No Inequitable Conduct (D.I. 181) (the "No Inequitable Conduct Motion"), which has been fully briefed (D.I. 183; D.I. 200; D.I. 233), and 2) Plaintiff Lindis Biotech Gmbh's Motion For Summary Judgment No. 2 of Infringement of Claim 12 of the '158 Patent (D.I. 172) (the "Infringement Motion"), which has been fully briefed (D.I. 173; D.I. 203; D.I. 234).

For the following reasons, the Court 1) DENIES the No Inequitable Conduct Motion and 2) DENIES the Infringement Motion.

## I. BACKGROUND

Lindis has "move[d] . . . for summary judgment for no inequitable conduct." D.I. 181 at 1. Lindis contends that "there is no genuine issue of material fact," precluding granting the No Inequitable Conduct Motion, "because . . . [Amgen] [purportedly] cannot prove the but-for materiality or intent elements required to establish inequitable conduct." D.I. 183 at 1. Amgen opposes the No Inequitable Conduct Motion. Amgen contends that, at a minimum, there are genuine issues of material fact, with respect to both materiality and intent, that preclude the Court granting the No Inequitable Conduct Motion. *See* D.I. 200 at 22-23.

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* at 308 (quoting *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016)).

## III. DISCUSSION

### A. Summary Judgment Motion 1: The Court Denies Plaintiff Lindis Biotech Gmbh's Motion for Summary Judgment No. 1 for No Inequitable Conduct

Amgen's inequitable conduct allegations are that "Lindis and its CEO, [Dr.] Lindhofer, have engaged in pattern of conduct before the PTO . . . includ[ing] (i) withholding the TRION and EMA Reports from the PTO even though the former was submitted to the EMA, (ii) repeatedly taking positions inconsistent with the findings of the TRION Report before the PTO to gain allowance of the Asserted Patents, (iii) withholding or misrepresenting material prior art references from or to the PTO, and (iv) misrepresenting the inventorship and ownership of the Asserted Patents." D.I. 200 at 22-23. Lindis contends that Amgen's inequitable conduct allegations, considered individually and collectively, fail as a matter of law. *See* D.I. 183 at 1; D.I. 233 at 8-9.

#### 1. Inequitable Conduct Legal Standard

"Inequitable conduct renders a patent unenforceable and is, therefore, an affirmative defense to an allegation of patent infringement." *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1096 (Fed. Cir. 2024); *see GS Cleantech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1324 (Fed. Cir.

2020). "It is important to note that inequitable conduct is an equitable claim that is triable to the court, not to the jury." *Lipocine Inc. v. Clarus Therapeutics, Inc.*, No. CV 19-622-WCB, 2020 WL 4794576, at *7 (D. Del. Aug. 18, 2020).[1] "Unlike validity defenses, which are claim specific, inequitable conduct regarding a single claim renders the entire patent unenforceable." *Regeneron Pharms., Inc. v. Merus N.V.*, 864 F.3d 1343, 1350 (Fed. Cir. 2017).

"To prove inequitable conduct, a party must show that the patentee withheld material information from the PTO, and did so with the specific intent to deceive the PTO." *Luv n' Care*, 98 F.4th at 1096-97. "Both requirements must be proven by clear and convincing evidence. Moreover, deceptive intent must be the single most reasonable inference based on the evidence." *Luv n' Care*, 98 F.4th at 1097 (citation omitted).

"To prove the element of materiality, a party claiming inequitable conduct ordinarily must show that the patentee 'withheld or misrepresented information that, in the absence of the withholding or misrepresentation, would have prevented a patent claim from issuing.'" *Ohio Willow Wood Co. v. Alps S., LLC*, 813 F.3d 1350, 1357 (Fed. Cir. 2016) (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333 (Fed. Cir. 2013)). "In determining the materiality of a reference [or information], the court applies the preponderance of the evidence standard and gives claims their broadest reasonable construction." *Regeneron Pharms.*, 864 F.3d at 1350.

"'[I]n cases of affirmative egregious misconduct,' materiality is established per se, without need to prove its impact on the PTO's patentability determination." *Luv n' Care*, 98 F.4th at 1097 (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc)); *see, e.g.*, *Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1342 (Fed. Cir. 2013); *Apotex Inc.*

[1] "Where there are overlapping factual issues that relate to a claim tried to a jury and a claim to be resolved by the court, the court must defer to the jury's finding on any overlapping factual issues." *Natera, Inc. v. ArcherDX, Inc.*, 690 F. Supp. 3d 437, 448 n.5 (D. Del. 2023).

*v. UCB, Inc.*, 763 F.3d 1354, 1362 (Fed. Cir. 2014) (dicta); *Baxalta Inc. v. Bayer Healthcare LLC*, No. CV 17-1316-RGA-SRF, 2020 WL 5445375, at *8 (D. Del. July 13, 2020). Accordingly, if the movant argues that materiality is established via "affirmative egregious misconduct," then the fact finder should "ma[k]e findings as to affirmative egregious misconduct and per se materiality." *Luv n' Care*, 98 F.4th at 1097.

"To satisfy the intent requirement, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it. Inequitable conduct requires clear and convincing evidence of a specific intent to deceive the PTO and that the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Belcher Pharms., LLC v. Hospira, Inc.*, 11 F.4th 1345, 1353 (Fed. Cir. 2021) (cleaned up) (quotation marks and citations omitted). "Specific intent to commit acts constituting inequitable conduct may be inferred from indirect and circumstantial evidence." *Ohio Willow Wood*, 813 F.3d at 1358. The "purposeful omission or misrepresentation of key teachings of prior art references may . . . be indicative of a specific intent to deceive the PTO." *Luv n' Care*, 98 F.4th at 1099.

"Acts which are not 'per se unreasonable when considered in isolation' may still demonstrate 'repeated attempts to avoid playing fair and square with the patent system' and, collectively, support a finding of deceptive intent." *Luv n' Care*, 98 F.4th at 1098 (quoting *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223 (Fed. Cir. 2007)). "Because an intent to deceive the PTO can be inferred from a person's 'pattern of lack of candor,' a district court must consider the person's multiple acts of misconduct '[i]n the aggregate.'" *Luv n' Care*, 98 F.4th at 1098 (quoting *Apotex*, 763 F.3d 1354). Thus, "[w]hen a person having a duty of candor and good faith has engaged in serial misconduct during the prosecution of the same or related patents, it is not enough

for a court to consider each individual act of misconduct without also considering the collective whole." *Luv n' Care*, 98 F.4th at 1098.

With respect to inequitable conduct determinations, the role of expert testimony is limited. *See W. R. Grace & Co.-Conn. v. Elysium Health, Inc.*, No. CV 20-1098-GBW, D.I. 291 at 4-7 (D. Del. Aug. 3, 2023) (surveying Court's caselaw on expert testimony in patent cases, including inequitable conduct); *Persawvere, Inc. v. Milwaukee Elec. Tool Corp.*, No. CV 21-400-GBW, 2023 WL 8019085, at *14-15 (D. Del. Nov. 20, 2023). Generally, "experts in patent cases may not opine on whether a party engaged in inequitable conduct, discuss whether certain information was material to a pending patent application, or otherwise provide legal conclusions on 'substantive issues of patent law.'" *Elysium Health*, No. CV 20-1098-GBW, D.I. 291 at 6 (quoting *Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, No. CIV 8-464, 2010 WL 3907490 (D. Del. Sept. 21, 2010)). That is not to say, however, that expert testimony is per se irrelevant to the issue of inequitable conduct.[2]

"Notably, granting summary judgment of no inequitable conduct 'is permissible, but uncommon,' in light of the 'inherently factual nature of the issue of intent.'" *EIS*, 2023 WL 6799332, at *5 (quoting *Digital Control, Inc. v. Charles Mack Works*, 437 F.3d 1309, 1317 (Fed. Cir. 2006)). While granting summary judgment of no inequitable conduct may be uncommon, it does happen on occasion.[3]

---

[2] *See, e.g.*, *Persawvere*, 2023 WL 8019085, at *14-15; *EIS, Inc. v. IntiHealth Ger GmbH*, No. CV 19-1227-GBW, 2023 WL 6799332, at *6 (D. Del. Aug. 23, 2023); *Regeneron Pharms.*, 864 F.3d at 1351-56.

[3] *See, e.g.*, *U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1353-54 (Fed. Cir. 2016); *Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, No. CV 20-464-WCB, D.I. 283 at 43 (D. Del. Mar. 27, 2023); *Extang Corp. v. Truck Accessories Grp., LLC*, No. CV 19-923-KAJ, D.I. 228 at 2, 2022 U.S. DIST. CT. MOTIONS LEXIS 626162 (D. Del. Feb. 8, 2022).

**2. Summary of Pertinent Facts**

Amgen contends that Lindis engaged in "serial misconduct before the PTO to secure issuance of the Asserted Patents." D.I. 200 at 1. As discussed below, the principal doer of bad deeds, according to Amgen, was Dr. Horst Lindhofer, who is a named inventor of the asserted patents and is purportedly associated with "companies TRION Pharma GmbH ('TRION') and Lindis." D.I. 200 at 1.

**a. Amgen's Theories of Inequitable Conduct[4]**

First, Amgen contends that Dr. Lindhofer made false representations and withheld material information from the United States Patent and Trademark Office ("USPTO") regarding whether "glucocorticoids can reduce non-specific cytokine release caused by a bispecific immunostimulating antibody without impairing tumor killing." D.I. 200 at 2 (capitalization and emphasis removed); *see id.* at 8-9 ("Lindhofer possessed data that exposed the 'surprising finding' touted throughout the Asserted Patents as a lie.").

Specifically, Amgen contends that Dr. Lindhofer and the asserted patents feigned surprise over and falsely represented "that premedication with glucocorticoids reduces the non-specific release of cytokines caused by a bispecific immunostimulating antibody without impairing the antibody's ability to kill tumor cells." D.I. 200 at 1; *see id.* at 2-7. As examples, Amgen points to

[4] The Court's understanding of Amgen's theories of inequitable conduct is based, almost entirely, on Amgen's answering brief (D.I. 200). The Court relied so heavily on Amgen's answering brief (D.I. 200), because Lindis' opening brief (D.I. 183) is scant on relevant facts. For example, under the heading titled "Statement of Facts," Lindis' opening brief (D.I. 183) failed to set forth any facts, let alone "[a] concise statement of facts, with supporting references to the record, presenting the background of the questions at issue." D. Del. LR 7.1.3(c)(1)(E); *see* D.I. 57 ¶ 13(a) ("Briefing will be presented pursuant to the Court's Local Rules."); *see also Pharmacy Corp. of Am./Askari Consol. Litig.*, No. CV 16-1123-RGA, 2021 WL 4033238, at *1 (D. Del. Sept. 3, 2021) (striking brief with a "Statement of Facts" section similar to Lindis').

the prosecution histories and specifications of the asserted patents. *See* D.I. 200 at 3-5 (specification), 6-8 (prosecution history).

Amgen contends that its examples reflect knowing falsehoods, in light of "a report that [Dr. Lindhofer] co-authored[] titled 'Influence of Steroids on Removab Action In Vitro' (the 'TRION Report[']])" and a 2009 European Medicine Agency Assessment Report for Removab (the "EMA Report"). D.I. 200 at 3-6.[5] Amgen contends that both "the EMA Report" and "the TRION Report" "confirm[] that the 'surprising result' trumpeted in the Asserted Patents does not exist." D.I. 200 at 6. Accordingly, Amgen contends that it is "[t]elling[] [that] both the TRION Report and the EMA Report were withheld from the PTO." D.I. 200 at 1 (emphasis removed).

Second, Amgen contends that the Fresenius Biotech Clinical Study Report, Study No. IV Rem 01 DE ("Fresenius Study") "suggests that Fresenius investigators—not the named inventors—conceived the alleged invention." D.I. 200 at 10. Amgen draws this "suggest[ion]," because purportedly "[n]owhere does the Fresenius report mention [Dr.] Lindhofer or [Dr. Markus M.] Heiss." D.I. 200 at 10.

Third, Amgen contends that "documents and testimony evince a pattern of misrepresentation to the PTO regarding ownership of the Asserted Patents." D.I. 200 at 10. Specifically, Amgen concludes that Lindis and Dr. Lindhofer "misrepresent[ed] ownership of the Asserted Patents to the PTO," based on Dr. Lindhofer's purported testimony, in this litigation, that "TRION never possessed an ownership interest in the '421 patent." D.I. 200 at 22.

---

[5] The TRION Report and EMA Report will be collectively referred to as the "Non-Clinical Reports." *See* D.I. 183 at 2.

**3. Analysis**

**a. The Non-Clinical Reports**

Lindis contends that, as a matter of law, the Non-Clinical Reports are insufficient foundations for inequitable conduct for two independent reasons: (1) because the Non-Clinical Reports purportedly lack but-for materiality (D.I. 183 at 5); and (2) because "no fact finder could find that Dr. Lindhofer withheld the Non-Clinical Reports with specific intent to deceive the PTO." D.I. 183 at 9. "[S]ummary judgment is appropriate only if, construed in the light most favorable to the non-moving party, the record shows that there is no genuine dispute of material fact [, as to materiality or intent,] and that the moving party is entitled to judgment as a matter of law." *Qin v. Vertex, Inc.*, 100 F.4th 458, 469 (3d Cir. 2024). As discussed below, with respect to the Non-Clinical Reports, Lindis has not shown that summary judgment of no inequitable conduct is warranted due to insufficient materiality or intent.

As to materiality, the Court is not convinced of Lindis' contention that "[t]he Non-Clinical Reports are insufficient to create a fact question regarding inequitable conduct." D.I. 183 at 5 (some capitalization and emphasis removed). "Materiality is a question of fact." *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, No. CV 17-1734-RGA, 2021 WL 982728, at *2 (D. Del. Mar. 16, 2021); *see Creo Prod., Inc. v. Presstek, Inc.*, 166 F. Supp. 2d 944, 974 (D. Del. 2001), *aff'd*, 305 F.3d 1337 (Fed. Cir. 2002). Given the procedural posture, as "[t]he moving party[,] [Lindis] bears the burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact," with respect to the materiality of the Non-Clinical Reports. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015); *see United States v. Care Alternatives*, 81 F.4th 361,

375 (3d Cir. 2023) ("[I]t is the *moving party* who bears the burden of demonstrating the absence of a genuine issue of material fact.").[6]

Despite allocating over three pages of its opening brief to the materiality of the Non-Clinical Reports, *see* D.I. 183 at 5-8, the Court is not persuaded that Lindis has satisfied its "burden of demonstrating the absence of a genuine issue of material fact." *Care Alternatives*, 81 F.4th at 375; *see* D.I. 183 at 3 (contending that "[t]he moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question"). While Lindis discusses the asserted patents and their prosecution history, *see* D.I. 183 at 6-8, that information by itself is insufficient to find that the Non-Clinical Reports are not but-for material.[7] To determine whether the Non-Clinical Reports are but-for material, for purposes of the inequitable conduct inquiry, the Court requires sufficient information about what those reports disclose. *Cf. Voice Tech Corp. v. Unified Pats., LLC*, 110 F.4th 1331, 1342 (Fed. Cir. 2024) (quoting *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268 (Fed. Cir. 2015) ("'What a reference teaches and the differences between the claimed invention and the prior art' are [] questions of fact.")). Lindis, however, fails to adequately describe what the Non-Clinical Reports disclose or fail to disclose. *See* D.I. 183 at 5-8.

Moreover, even when Lindis does describe what the Non-Clinical Reports purportedly disclose, Lindis fails to back up its contentions with citations. For example, to support its contention that the "Non-Clinical Reports . . . [are] not material because the information is

---

[6] "[F]or a factual dispute to be material, its resolution must have the potential to affect the outcome of the suit." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022). "[I]n assessing the genuineness of a potential factual dispute, inferences from the underlying facts should be drawn in favor of the nonmoving party." *Id.* at 204.

[7] Such information pertains to "the first step in determining but-for materiality of a reference[,] [which] is determining the scope of the claims at issue." *Regeneron Pharms.*, 864 F.3d at 1351.

cumulative,"[8] Lindis asserts that "the cytotoxicity experiments of Example 3 . . . of the specifications of the Asserted Patents show . . . . information [that] is substantially similar to information about impairment of the action of the antibodies by use of dexamethasone described in both the [TRION] Report and the EMA Assessment Report." D.I. 183 at 6. Lindis supports that assertion, however, solely with a citation to and quotation from the '421 patent. D.I. 183 at 6. In painting half the picture, Lindis fails to "identify[] specific portions of the record that establish the absence of a genuine issue of material fact," *Santini*, 795 F.3d at 416, regarding Lindis' contention that the asserted patents and Non-Clinical Reports disclose "substantially similar [] information." D.I. 183 at 6. In other words, the dearth of information about the Non-Clinical Reports leaves the Court unable to ascertain whether "no reasonable jury could find other than in favor of the movant." *Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 452 F.3d 1353, 1359 (Fed. Cir. 2006).

With respect to intent, Lindis has not shown that "no fact finder could find that Dr. Lindhofer withheld the Non-Clinical Reports with specific intent to deceive the PTO." D.I. 183 at 9. "[I]ntent to deceive [is] [a] question[] of fact." *Creo Prod.*, 166 F. Supp. 2d at 974; *see Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.*, 606 F.3d 1353, 1368 (Fed. Cir. 2010) (Prost, J., dissenting) ("Both elements, materiality and intent to deceive, are questions of fact."). "At the summary judgment stage, the focus is whether [Amgen] ha[s] 'mustered sufficient evidence such that, at the trial stage, a factfinder *could reasonably conclude* that deceptive intent is the single most reasonable inference.'" *CAO Lighting, Inc. v. Gen. Elec. Co.*, No. CV 20-681-GBW, D.I.

---

[8] "A reference is cumulative when it teaches no more than what a reasonable examiner would consider to be taught by the prior art already before the PTO." *Luv n' Care*, 98 F.4th at 1098 (quoting *Regeneron Pharms.*, 864 F.3d 1343). "A prior art reference that is otherwise material 'is not but-for material if it is merely cumulative.'" *Id.* at 1098 (quoting *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976 (Fed. Cir. 2022)).

347 at 5 (D. Del. Nov. 17, 2022) (quoting *Sysmex Corp. v. Beckman Coulter, Inc.*, No. CV 19-1642-JFB-CJB, 2022 WL 1503987 (D. Del. May 6, 2022)); *see Elysium Health*, No. CV 20-1098-GBW, D.I. 291 at 6.

"As the Federal Circuit explained in *M. Eagles*, '[i]ntent is generally inferred from the facts and circumstances surrounding the applicant's overall conduct, especially whe[n] there is no good faith explanation for a nondisclosure.'" *Targus Int'l*, No. CV 20-464-WCB, D.I. 283 at 41 (some alterations in original) (quoting *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335 (Fed. Cir. 2006)). "Such an inference frequently requires the court to make credibility determinations regarding the testimony of the witnesses." *Id.* at 41-42 (collecting cases). "As multiple courts have observed, questions of intent and credibility are 'difficult to determine on summary judgment.'" *Id.* at 42 (quoting *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. CV 2:15-478, 2017 WL 11455318 (E.D. Va. Apr. 13, 2017)); *see Thomas v. Tice*, 948 F.3d 133, 145 n.3 (3d Cir. 2020) (Greenaway Jr., concurring in part) (citations and quotations omitted) ("[W]e have previously recognized that a party's state of mind is typically not a proper issue for resolution on summary judgment, because it is inherently a question of fact which turns on credibility.").

For the purpose of the No Inequitable Conduct Motion, Lindis and Amgen agree to the following two facts: (i) "Dr. Lindhofer had knowledge of the Non-Clinical Reports," and (ii) "Dr. Lindhofer testified that the TRION Report's results would be 'misleading to the examiner.'" D.I. 239 ¶ 4; *cf.* D.I. 202 ¶ 4.[9] However, as discussed below, Lindis and Amgen disagree on several other material facts and the inferences to be drawn from those facts.

[9] These "facts" were developed through the scheduling order's option for "[t]he party opposing the motion [to] also include with its opposing papers a separate concise statement, not to exceed four (4) pages, which sets forth material facts as to which the opposing party contends there is a genuine issue to be tried." D.I. 57 ¶ 13(b).

Lindis contends that "there is no clear and convincing evidence of specific intent to Deceive the PTO." D.I. 183 at 8 (some capitalization and emphasis removed). Lindis contends that "the most likely inference from the evidence is that Dr. Lindhofer was mistaken about the[] relevance" of the Non-Clinical Reports or "negligent." D.I. 183 at 10; *see* D.I. 233 at 2 ("[Dr.] Lindhofer did not act knowingly and deliberately with the purpose of defrauding the PTO."); D.I. 239 ¶ 4 ("Dr. Lindhofer's intent behind the non-disclosure of the TRION Report was that Dr. Lindhofer did not want to 'mislead[] the examiner,' as he believed the results of the TRION Report had 'nothing to do with the invention.'"). The record "evidence" that Lindis relies on is as follows: (i) "Dr. Lindhofer testified that the purpose of the [TRION] Report was to reproduce data which they had already integrated into the patent documents and to test additional parameters which could be changed for approval of the novel antibody Removab," (ii) "Dr. Lindhofer [] testified that he didn't know whether the [TRION] Report was sent to the examiner at the PTO or not," and (iii) "Dr. Lindhofer testified he did not" "disclose[] the EMA Report to the patent office." D.I. 183 at 9.[10] Amgen disagrees. Amgen responds that "a factfinder could reasonably conclude that deceptive intent is the single most reasonable inference from [Dr.] Lindhofer's deliberate withholding of the TRION report from the PTO while at the same time relying on that report before the EMA." D.I. 200 at 17; *see id.* at 16 (citing Defendant Amgen Inc.'s Concise Statement of Facts in Support Of Its Answering Brief in Opposition to Plaintiff's Motion For Summary Judgment No. 1 of No Inequitable Conduct (D.I. 202) ¶ 4).

---

[10] None of this "evidence" was identified in Plaintiff's Statement of Undisputed Facts in Support of Its Motion for Partial Summary Judgment on Defendant Amgen, Inc.'s Fifth Affirmative Defense and Counterclaims 3 and 6 (D.I. 184). The scheduling order, however, required Lindis to "detail[] each material fact . . . [that] [Lindis] contends is essential for the Court's resolution of the summary judgment motion (not the entire case) and as to which [] [] [Lindis] contends there is no genuine issue to be tried." D.I. 57 ¶ 13(b).

After consideration, the Court is not convinced that there is "no genuine issue of material fact that Dr. Lindhofer did not have the specific intent required for inequitable conduct." D.I. 239 ¶ 4; *see Care Alternatives*, 81 F.4th at 375 ("[I]t is the *moving party* who bears the burden of demonstrating the absence of a genuine issue of material fact."). Even assuming *arguendo* that Amgen "has pointed to no affirmative evidence that" Dr. Lindhofer "deliberately chose to withhold the" Non-Clinical Reports, the record "does not compel a determination of no inequitable conduct at the summary judgment stage of this case." *Targus Int'l*, No. CV 20-464-WCB, D.I. 283 at 41.

"While the burden of proving intent is a heavy one, [the Court] cannot conclude as a matter of law that [Amgen] cannot show that [D]r. [Lindhofer] intended to deceive the PTO." *ART+COM Innovationpool GmbH v. Google Inc.*, 155 F. Supp. 3d 489, 503-04 (D. Del. 2016). At this stage, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Care Alternatives*, 81 F.4th at 369 (cleaned up and quotation marks omitted); *see Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 262 (3d Cir. 2017) ("Credibility determinations are for the factfinder and are inappropriate at the summary judgment stage."); *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1362 (Fed. Cir. 2002) ("[S]ummary judgment is inappropriate where, as here, a case may ultimately turn on the credibility of witnesses."). Thus, although the fact finder may eventually find that deceptive intent has not been proven under the governing legal standard, *see Freshub, Inc. v. Amazon.com, Inc.*, 93 F.4th 1244, 1254 (Fed. Cir. 2024), at this time, "granting summary judgment would require [the Court] impermissibly to 'weigh evidence or determine credibility questions.'" *Clews v. Cnty. of Schuylkill*, 12 F.4th 353, 364-65 (3d Cir. 2021) (quoting *Hill v. City of Scranton*, 411 F.3d 118 (3d Cir. 2005)).

For the foregoing reasons, Lindis' contentions concerning the lack of materiality and lack of intent to deceive with respect to the Non-Clinical Reports have not met its burden to warrant granting it summary judgment for no inequitable conduct. Thus, the Court denies the No Inequitable Conduct Motion. *See, e.g.*, *EIS*, 2023 WL 6799332, at *5; *CAO Lighting*, No. CV 20-681-GBW, D.I. 347 at 6; *Elysium Health*, No. CV 20-1098-GBW, D.I. 291 at 22.[11]

**B. The Remaining Summary Judgment Motion Is Denied**

Given the Court's denial of Lindis' first ranked summary judgment motion, the Court denies the Infringement Motion in accordance with its summary judgment motions ranking procedures. *See* D.I. 57 ¶ 13(d); *Lindis Biotech, GmbH v. Amgen Inc.*, No. CV 22-35-GBW, 2024 WL 4869579, at *4 (D. Del. Nov. 22, 2024).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff Lindis Biotech Gmbh's Motion for Summary Judgment No. 1 for No Inequitable Conduct (D.I. 181). The Court also **DENIES** Plaintiff Lindis Biotech Gmbh's Motion For Summary Judgment No. 2 of Infringement of Claim 12 of the '158 Patent (D.I. 172) pursuant to its summary judgment motions ranking procedures.

[11] Given the Court denies the No Inequitable Conduct Motion, the Court will not reach Lindis' contentions regarding Amgen's additional theories of inequitable conduct.