**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| LINDIS BIOTECH, GMBH | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-35-GBW |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| AMGEN INC., | ) | |
| | ) | |
| Defendant. | ) | |

**[PROPOSED] JOINT PRETRIAL ORDER**

**SAUL EWING LLP**
James D. Taylor, Jr. (#4009)
Jessica M. Jones (#6246)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
(302) 421-6863
james.taylor@saul.com
jessica.jones@saul.com
michelle.streifthau-livizos@saul.com

**Attorneys for Defendant Amgen Inc.**
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Stephanie N. Vangellow (No. 7277)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
svangellow@ycst.com

**PERKINS COIE LLP**
Michael J. Wise
Joseph P. Hamilton
Lara J. Dueppen
Courtney M. Prochnow
Alisha C. Burgin
Doris Alvarez-Reyes
1888 Century Park East
Suite 1700
Los Angeles, CA 90067-1721
(310) 788-9900

Garmai Gorlorwulu
Blake A. Winn
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
(858) 720-5700

**AMGEN INC.**
Brian Kao
J. Drew Diamond
Blake Greene
Wendy A. Whiteford
One Amgen Center Drive
Thousand Oaks, CA 91320-1799
(805) 447-1000

**O'MELVENY & MYERS LLP**
Lisa B. Pensabene
Hassen Sayeed
Carolyn S. Wall
Jing Ying (Amy) Zhao
1301 Avenue of the Americas

ii

Suite 1700
New York, NY 10019
(212) 326-2000

Luann L. Simmons
Sorin Zaharia
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
(415) 984-8700
*Attorneys for Amgen Inc*

# TABLE OF CONTENTS

I.    NATURE OF THE CASE ....................................................................................... 1

II.   JURISDICTION .................................................................................................... 4

III.  FACTS .................................................................................................................. 4

    A.    UNCONTESTED FACTS ................................................................... 4

    B.    ISSUES OF FACT TO BE LITIGATED ............................................ 5

IV.  ISSUES OF LAW .................................................................................................. 5

V.   EXHIBITS ............................................................................................................ 5

VI.  TRIAL DISCLOSURE SCHEDULE .................................................................... 7

    A.    EXHIBITS AND DEMONSTRATIVES ............................................ 7

        1.   Exhibits and Demonstratives for Opening Statements ................................. 7

        2.   Trial Exhibits for Direct Examination ......................................................... 8

        3.   Demonstratives and Physical Exhibits ......................................................... 9

        4.   Witness Binders ......................................................................................... 11

        5.   Cross Examination ..................................................................................... 11

        6.   Exhibits and Demonstratives for Closing Arguments ................................. 11

    B.    WITNESSES .................................................................................... 12

        1.   Lists of Witnesses Expected To Be Called .................................................. 12

        2.   Prior Deposition Testimony ........................................................................ 13

        3.   Impeachment ............................................................................................. 17

        4.   Objections To Expert Testimony ................................................................ 17

    C.    DISCLOSURE DISPUTE RESOLUTION ....................................... 17

    D.    PARTY OPPONENT STATEMENTS .............................................. 18

    E.    NOTICE OF INTENT TO REST ...................................................... 18

    F.    JUROR NOTEBOOKS ..................................................................... 18

VII. PLAINTIFF'S STATEMENT OF PROOF AND DAMAGES ............................ 18

VIII.   AMGEN'S STATEMENT OF PROOF AND RESPONSE TO PLAINTIFF'S STATEMENT OF DAMAGES .............................................................................. 19

IX.  MOTIONS *IN LIMINE* ................................................................................................... 21

X.   DISCOVERY ........................................................................................................... 23

XI.  NUMBER OF JURORS ........................................................................................... 23

XII. LENGTH OF TRIAL ............................................................................................... 24

XIII.     AMENDMENT OF THE PLEADINGS ......................................................... 24

XIV.      MOTIONS FOR JUDGMENT AS A MATTER OF LAW ........................................... 24

XV.  SETTLEMENT ....................................................................................................... 24

XVI.      CONFIDENTIALITY ..................................................................................... 25

## <u>TABLE OF EXHIBITS</u>

**LINDIS BIOTECH, GMBH V. AMGEN INC.**
**TABLE OF EXHIBITS TO PRETRIAL ORDER**

| Exhibit No. | Description of Exhibit |
|:---:|:---|
| A | Joint Statement of Uncontested Facts |
| B | Plaintiff's Statement of Issues of Fact to Be Litigated |
| C | Defendant's Statement of Facts to be Litigated |
| D | Plaintiff's Statement of Issues of Law |
| E | Defendant's Statement of Issues of Law |
| F | Joint Exhibit List |
| G | Plaintiff's Exhibit List |
| H | Defendant's Exhibit List |
| I | Plaintiff's List of Witnesses |
| J | Defendant's List of Witnesses |
| K | Plaintiff's Deposition Designations |
| L | Defendant's Deposition Designations |
| M | Plaintiff's Motions in Limine |
| N | Defendant's Motions in Limine |

`

This matter comes before the Court for a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.  Plaintiff Lindis Biotech, GmbH ("Lindis" or "Plaintiff") and Defendant Amgen, Inc. ("Amgen" or "Defendant"), having conferred among themselves, jointly submit for the Court's approval this Pretrial Order governing the trial pursuant to District of Delaware Local Rule 16.3.  A pretrial conference was held on November 26, 2024 at 3:00 p.m. A 7-day jury trial in this case is set to begin on December 9, 2024.

## I.    NATURE OF THE CASE

1.    This is a patent infringement lawsuit arising under the patent laws of the United States, Title 35, Sections 154, 271, and 281-285.

2.    Plaintiff Lindis Biotech, GmbH ("Lindis" or "Plaintiff") is represented by Saul Ewing LLP.

3.    Defendant Amgen, Inc. ("Amgen" or "Defendant") is represented by Perkins Coie LLP, O'Melveny & Myers LLP, and Young Conaway Stargatt and Taylor, LLP.

4.    Lindis alleges that Amgen induces infringement of claims 3, 8 and 15 of U.S. Patent No. 8,709,421 ("the '421 Patent") and 1, 12 and 20 of U.S. Patent No. 10,071,158 ("the '158 Patent") (the '158 Patent, collectively, with the '421 Patent, the "Asserted Patents"). Lindis alleges that Amgen manufactures, markets, distributes and sells the immunotherapy drug named blinatumomab, which is marketed and sold under the name Blincyto®. Lindis alleges that Amgen has induced infringement by instructing, enabling, and otherwise causing end users (*i.e.,* physicians who prescribe, administer, and supervise the administration of Blincyto for patients) to use Blincyto in an infringing manner, including through Blincyto's prescribing information. Lindis further alleges that such infringement has been and continues to be willful. Lindis seeks damages from January 2016 through the present to compensate Lindis for Amgen's induced infringement. Lindis also seeks pre-judgment interest and costs, pursuant to 35 U.S.C. § 284, Federal Rule of Civil Procedure 54, and Local Rule 54.1. Lindis also contends that this is an exceptional case that merits attorneys' fees pursuant to 35 U.S.C. § 285. Lindis seeks enhanced damages against Amgen, including increased damages up to three times the amount of compensatory damages found. Lindis also seeks such other relief as the Court deems just and proper.

5.      Amgen denies that it infringes, directly or indirectly, the Asserted Patents.  Amgen further denies that it infringes the Asserted Patents based on acts performed outside of the United States by Amgen or a third party or sales from the United States to foreign countries.  Amgen also denies that it has willfully infringed or actively induced infringement, and asserts that it has not and is not currently willfully infringing or actively inducing infringement of the Asserted Patents.  Amgen further denies that Lindis is entitled to damages or that Lindis is entitled to attorneys' fees or a finding that this case is exceptional under 35 U.S.C. § 285, for the reasons Lindis contends.  Amgen asserts that the Asserted Patents are invalid for failure to comply with one or more of the requirements set forth in 35 U.S.C. §§ 102, 103, and 112 and under other judicially created bases for invalidity.  Amgen further asserts that the Asserted Patents are unenforceable due to inequitable conduct during the filing and prosecution of U.S. Patent Application No. 11/977,856, which issued as the '421 Patent, and U.S. Patent Application No. 14/247,029, which issued as the '158 Patent.  Amgen also asserts counterclaims that (a) Amgen has not induced any infringement of the Asserted Patents, (b) the Asserted Patents are invalid under 35 U.S.C. §§ 102, 103, and/or 112, or under other judicially created bases for invalidation, and (c) the Asserted Patents are unenforceable.

6.      Amgen requests that the Court (a) dismiss Plaintiff's Complaint with prejudice and enter judgment in favor of Amgen; (b) deny the relief sought in Plaintiff's Complaint in its entirety; (c) declare the Asserted Patents invalid and/or unenforceable; (d) declare that Amgen does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the Asserted Patents; (e) declare that Plaintiff is not entitled to injunctive relief related to the Asserted Patents; (f) order that judgment be entered in favor of Amgen on each of its affirmative defenses; (g) enjoin Lindis from representing to anyone, either directly or indirectly, that Amgen infringed, infringes, or will infringe, directly or indirectly, literally or under the doctrine of equivalents, any

claim of the Asserted Patent; (h) award Amgen its costs and expenses in this action; (i) declare this case exceptional and award Amgen its reasonable attorneys' fees and costs pursuant to 35 U.S.C, § 285; and (j) award Amgen any further relief this Court may deem just, proper and equitable.

7.    On January 10, 2022, Lindis filed a complaint alleging infringement of the Asserted Patents. (D.I. 1.)

8.    On April 1, 2022, Amgen filed a Motion to Dismiss for Failure to State a Claim for Counts I, II, and III of the Complaint.  (D.I. 13.)

9.    On July 27, 2023, the Court issued its Memorandum Opinion and corresponding order regarding claim construction ("Claim Construction Order").  (D.I. 94, D.I. 95.)  Following the Court's Claim Construction Order, Lindis withdrew its opposition to Amgen's Motion to Dismiss Count III in its entirety.  (D.I. 98.)

10.    On March 27, 2024, the Court granted in part and denied in part Amgen's Motion to Dismiss.  (D.I. 155.)  The Court dismissed Lindis's contributory infringement claims in Counts I and II, with leave to amend, and dismissed Count III with prejudice.  (D.I. 155 at 17.)  The Court otherwise denied Amgen's Motion to Dismiss.  (*Id.*)

11.    On April 4, 2024, Lindis filed its First Amended Complaint.  (D.I. 157.)  Lindis asserted a claim for contributory infringement in Count I of its First Amended Complaint (D.I 157), but later withdrew the claim in the dispositive motions process.  Lindis did not assert a claim for contributory infringement in Count II of its First Amended Complaint.

12.    On May 2, 2024, Amgen filed its Answer to the First Amended Complaint and Counterclaims.  (D.I. 166.)

13.    On May 23, 2024, Lindis filed its Answer to Amgen's Counterclaims.  (D.I. 169.)

14.     On May 24, 2024, Lindis filed its: (a) Motion to Strike Certain Opinion Testimony of Julie L. Davis (D.I. 170-171); (b) Motion for Summary Judgment No. 1 for No Inequitable Conduct (D.I. 181-184); and (c) Motion for Summary Judgment No. 2 of Infringement of Claim 12 of the '158 Patent (D.I. 172-174).

15.     Simultaneously, on May 24, 2024, Amgen filed its: (a) Motion for Summary Judgment No. 1 of No Induced Infringement for the '421 Patent (D.I. 175-176, 180); (b) Motion for Summary Judgement No. 2 for No Contributory Infringement for the '421 Patent (D.I. 175, 177, and 180); (c) Motion for Summary Judgment No. 3 for Invalidity of the '158 Patent for Lack of Written Description under 35 U.S.C. § 112 (D.I. 175, 178, and 180); and (d) Motion for Summary Judgment No. 4 for No Induced Infringement of the Asserted Patents (D.I. 175, 179-180).

16.     Briefing for all dispositive motions concluded on July 19, 2024.

## II.     JURISDICTION

17.     The jurisdiction of the Court is not disputed and is based on 28 U.S.C. §§ 1331 and 1338(a).  Venue is not disputed in this case and is based on 28 U.S.C. § 1400(b).

## III.     FACTS

### A.     UNCONTESTED FACTS

18.     The parties' Joint Statement of Uncontested Facts is attached as **Exhibit A.**

19.     These uncontested facts shall require no proof at trial and will become part of the evidentiary record at trial if introduced to the jury.

20.     Any party, with prior notice to all other parties, may read any of the uncontested facts to the jury, and will be charged for time used to do so.  If one party reads a portion of the uncontested facts, the other party may immediately thereafter read any additional portion as appropriate for purposes of completeness.

4

### B.    ISSUES OF FACT TO BE LITIGATED

21.    If the Court determines that any issue identified in the Statements of Issues of Fact to be Litigated or brief statement of intended proofs is more properly considered an issue of law, it shall be so considered.

22.    Lindis' Statement of Issues of Fact to be Litigated is attached as **Exhibit B.**

23.    Amgen's Statement of Issues of Facts to be Litigated is attached as **Exhibit C.**

## IV.    ISSUES OF LAW

24.    If the Court determines that any issue identified in the Statements of Issues of Law is more properly considered an issue of fact, it shall be so considered.

25.    Lindis' Statement of Issues of Law is attached as **Exhibit D.**

26.    Amgen's Statement of Issues of Law is attached as **Exhibit E.**

## V.    EXHIBITS

27.    The Parties' Joint Exhibit List is attached as **Exhibit F**.

28.    Lindis' Exhibit List, with Amgen's Objections, is attached as **Exhibit G.**

29.    Amgen's Exhibit List, with Lindis's Objections, is attached as **Exhibit H.**

30.    The parties will exchange final digital copies of exhibits, with exhibit numbers, seven (7) days before trial.  The final digital copy of each exhibit page will be endorsed with a unique page identifier, including the exhibit prefix, exhibit number, and page numbers of the electronic document.  The exhibit prefixes shall be: "JTX" for exhibits on the Joint Exhibit List; "PTX" for exhibits on Plaintiff's Exhibit List, and "DTX" for exhibits on Amgen's Exhibit List.

31.    That an exhibit is on the parties' Joint Exhibit List is not an agreement that the exhibit is admissible for all purposes.  The parties reserve all rights to object to any JTX exhibit at trial.

32.     This pretrial order contains the exhibits to be used in any party's case-in-chief and during cross-examination, as well as all objections to the admission of such exhibits. Neither the exhibit lists nor objections thereto shall be supplemented without approval of all parties or leave of the Court, on good cause shown. Exhibits not listed will not be admitted into evidence unless good cause is shown.

33.     Notwithstanding the foregoing, the parties agree that exhibits to be used solely for impeachment need not be included on the lists of trial exhibits or disclosed before being used at trial. Exhibits used solely for impeachment will not be admitted into evidence beyond the explicit read-out for impeachment.

34.     The parties may supplement the exhibit list prior to submitting the Pretrial Order. No party may supplement the exhibit list after the submission of the Pretrial Order absent leave of the Court.

35.     Except as provided by Federal Rules of Evidence and provided below with respect to exhibits introduced via video deposition testimony and opening statements, exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so.

36.     Exhibits may be introduced via video deposition testimony. Any such exhibits may be shown to the jury simultaneously with the corresponding video deposition testimony to the extent all objections to such exhibits are resolved following the procedures provided below for disclosing exhibits and resolving objections thereto before the deposition testimony is played for the jury. Any party that has used an exhibit with a witness via video deposition testimony and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number, after the video deposition is played for the jury.

37.     Any trial exhibit that was produced in discovery by a party and that on its face appears to have been authored or generated by an employee, officer, or agent of the party producing such exhibit, shall be deemed authentic under Federal Rule of Evidence 901.

38.     A party may use an exhibit that is listed on the other party's exhibit list, to the same extent as though it were listed on its own exhibit list, subject to evidentiary objections.  Any exhibit, once admitted, may be used by either party.  Listing an exhibit on a party's exhibit list or joint list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to admit the document.  It further does not waive any objections to that exhibit by the listing party should the opposing party attempt to offer the exhibit into evidence.  A party does not waive its objection to an exhibit by including that exhibit on its own exhibit list.  The parties also agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document.

39.     Each party reserves the right to object to the admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered and to the extent such objections are not deemed waived by the Court.

## VI.    TRIAL DISCLOSURE SCHEDULE

### A.    EXHIBITS AND DEMONSTRATIVES

#### 1.    Exhibits and Demonstratives for Opening Statements

40.     The parties will exchange (1) a list of trial exhibits and (2) copies of any demonstrative exhibits (including a color representation in PDF or JPG form of any physical

exhibits to be used as demonstratives, and slides)[1] that the party intends to use in opening statements by **2:00 P.M.** one (1) day before opening statements.  The exhibits and demonstratives for Opening Statements need not be listed or exchanged in the order in which they will be presented to the jury.

41.    The parties shall provide any objections to such exhibits and demonstratives, including physical exhibits, by **6:00 P.M.** one (1) day before opening statements.  The parties will meet and confer to resolve any objections to exhibits and demonstratives for opening statements by **7:00 P.M.** one (1) day before opening statements.

42.    During opening statements, the parties may show the jury any trial exhibit for which there are no unresolved objections.  During opening statements, the parties may not show the jury any deposition testimony as there is no pre-admitted deposition testimony designated by the parties.

43.    Blow-ups, highlights, underlining, or other annotations of trial exhibits or parts of trial exhibits, without more, are not required to be provided to the other side before their use under this provision, provided that such annotations are made to trial exhibits otherwise disclosed pursuant to this provision and for which there are no unresolved objections.

### 2.    Trial Exhibits for Direct Examination

44.    A party will provide a list of trial exhibits to be used in connection with direct examination, including indicating with which witness the trial exhibits will be used, by **6:00 P.M.**

---

[1] To the extent a demonstrative includes animation, or other graphics which are not represented in a PDF printout in the same manner in which they would be presented to the jury, the demonstrative will be sent in a format that allows the animation / graphics to be viewed as it would be seen by the jury.  Any demonstrative exhibits that include videos and/or animations will be provided to the other side via a secure file share link.  For any physical demonstratives of uncommon size, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibit.

one (1) day before their intended use.  The parties' disclosures will reflect a good-faith determination of the exhibits that will be used with a particular witness, and reasonable efforts will be made to streamline disclosures.  The parties shall provide any objections to trial exhibits by **8:00 P.M.** one (1) day before their intended use.  The parties will meet and confer to resolve any objections to trial exhibits to be used for direct examination by **9:00 P.M.** one (1) day before their intended use.  The list of exhibits does not need to be in the order in which they will be presented to the jury.

### 3.    Demonstratives and Physical Exhibits

45.    A party will provide demonstrative exhibits to be used in connection with direct examination (including a color representation in PDF or JPG form of any physical exhibits to be used as demonstratives, and slides),[2] including indicating with which witness the demonstrative exhibits will be used, by **6:00 P.M.** one (1) day before their intended use.  The parties shall provide any objections to demonstrative exhibits, including physical exhibits, by **8:00 P.M.** one (1) day before their intended use.  The parties will meet and confer to resolve any objections to demonstrative exhibits to be used for direct examination by **9:00 P.M.** one (1) day before their intended use.  The demonstrative exhibits need not be exchanged in the order in which they will be presented to the jury.

46.    Where a demonstrative exhibit refers to information found in a trial exhibit, the party offering the demonstrative exhibit shall disclose to the other party all trial exhibits that form

---

[2] To the extent a demonstrative includes animation, or other graphics which are not represented in a PDF printout in the same manner in which they would be presented to the jury, the demonstrative will be sent in a format that allows the animation / graphics to be viewed as it would be seen by the jury.  For any physical exhibit, the party seeking to use the exhibit will provide a color representation as a PDF of an 8.5 x 11 copy of the exhibit.

the basis of the demonstrative exhibit at the same time the party discloses the demonstrative exhibit.

47.    Any demonstrative exhibits that include videos and/or animations will be provided to the other side via a secure file share link.

48.    Three days before the first day of trial, the parties shall make available for inspection any physical exhibits to be used at trial, labeled with an exhibit number, whether such physical exhibits will be admitted into evidence or used as demonstratives.  For purposes of clarity, such physical exhibits do not include documentary trial exhibits or demonstrative exhibits, which are subject to the disclosure provisions above.  The provisions included in this paragraph are not intended as a waiver of any argument that a physical exhibit was not timely produced during discovery or properly included on the producing party's exhibit list.

49.    The disclosure provisions included in this section do not apply to demonstrative exhibits created live during direct examination, which do not need to be provided to the other side before their use.

50.    Blow-ups, highlights, or underlining of trial exhibits or parts of trial exhibits, without more, are not required to be provided to the other side before their use under the provisions in this section, provided that such annotations are made to trial exhibits otherwise disclosed for use with direction examination of the relevant witness pursuant to the provisions in this section.

51.    Parties may make reasonable, non-substantive edits or corrections of typographical and similar errors to a demonstrative provided that the party promptly provide the opposing party with reasonable notice of the changes before the demonstrative exhibit is presented to the jury.

52.     No party can use any of the other party's disclosed demonstratives before the disclosing party has used them.  Any demonstrative that has been disclosed to the jury may be used again by either party without requiring further disclosure.

### 4.     Witness Binders

53.     The parties agree to provide witness binders for each fact and expert witness for examination to the extent the witness will be asked to testify about any trial exhibit or demonstrative.  The parties further agree that the sponsoring party will provide at least two (2) copies of that binder to the opposing party at the same time the binder is presented to the witness, in addition to the two (2) courtesy copies required by the Court's Trial Procedures.

### 5.     Cross Examination

54.     The parties will not exchange lists of trial exhibits or copies of demonstratives to be used in cross examination of any witness (notwithstanding the fact that any exhibit to be used during cross-examination must appear on an exhibit list unless that exhibit is to be used solely for impeachment).

### 6.     Exhibits and Demonstratives for Closing Arguments

55.      Any demonstratives that will be shown to the jury during closing arguments must be disclosed by **10:00 P.M.** on the night before closing, and objections to any such disclosed closing demonstratives are due by **11:00 P.M.** that same day, with the understanding that closings will commence on the next day.  The parties will meet and confer to resolve any objections to demonstrative exhibits to be used for direct examination by **12:00 A.M.** that night.  These demonstratives need not be exchanged in the same order that they will be presented to the jury. Notwithstanding the disclosure requirements of this provision, the parties agree that a party need not disclose or provide advance notice of its intent to show to the jury during closing any demonstratives previously used during the course of trial or any admitted exhibits, including any

11

enlargements, highlighting, ballooning, or other annotations of admitted trial exhibits, trial testimony, or previously used demonstratives.

**B.    WITNESSES**

56.    Absent good cause shown, any witness not listed in a party's Witness List will be precluded from testifying.  In the absence of an alternative agreement between the parties, fact witnesses other than the party's respective corporate representatives will be sequestered.  Also, unless the parties reach an alternative agreement, the order of the presentation of evidence will follow the burden of proof.

The order of presentation of evidence will follow each parties' burden of proof and be as follows:

I.     Lindis's case-in-chief on infringement, willfulness and damages.

II.    Amgen's rebuttal on infringement, willfulness and damages and case-in-chief on invalidity.

III.   Lindis's rebuttal on invalidity.

IV.    Equitable trial on equitable defenses held at a later date, if necessary.

**1.    Lists of Witnesses Expected To Be Called**

57.    Lindis's Witness List, with Amgen's objections, is attached as **Exhibit I**.

58.    Amgen's Witness List, with Lindis's objections, is attached as **Exhibit J**.

59.    The listing of a witness on a party's Witness List does not require that party to call that witness to testify, either in person or by deposition.  Each party reserves the right to call rebuttal witnesses (who are not presently identifiable) as may be necessary, by consent of the parties or upon leave of the Court for good cause shown.  In the event a party seeks to call a substitute witness, the parties agree they will make an application to the Court to amend the Joint Final Pretrial Order.

60.     Each party agrees that they confirmed on October 24, 2024, in good faith, the fact witnesses who will be called live in their respective cases.  In the interests of an orderly trial, the parties also agree that no witness identified by a party as testifying live at trial as of that date may be withdrawn from testifying live, absent serious illness or inability to travel.

61.     Each party will provide a list of witnesses that the party intends to call for direct examination, the order the party expects to call the witnesses, a short neutral, non-substantive transition statement to introduce the witness, and the method of testimony (i.e., live or by deposition testimony) by **6:00 P.M.** two (2) days before the witnesses are expected to testify.  Each party will provide an updated list of witnesses the party intends to call for direct examination, the order the party expects to call the witnesses, a short neutral, non-substantive transition statement to introduce the witness, and the method of testimony (i.e., live or by deposition testimony) by **6:00 P.M.** one (1) day before the day the witnesses are expected to testify.  The parties shall provide any objections to a witness or transition statement to introduce the witness by **8:00 P.M.** one (1) day before the witness is expected to testify.  The parties will meet and confer to resolve any objections by **9:00 P.M.** one (1) day before the witness is expected to testify.

62.     Any fact witnesses who will be made available to testify live in court will only be called once per phase and will not be presented by either party by prior deposition testimony.  The parties may still, however, use prior deposition testimony for purposes of impeachment.

### 2.     Prior Deposition Testimony

63.     Lindis's Deposition Designations, Amgen's objections and counter designations, and Lindis's objections and counter-counter designations are attached as **Exhibit K**.

64.     Amgen's Deposition Designations, Lindis's objections and counter designations, and Amgen's objections and counter-counter designations is attached as **Exhibit L**.

65.     Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

66.     This pretrial order contains the maximum universe of deposition designations, counter-designations, counter-counter designations and objections to the admission of deposition testimony.  None of the foregoing shall be supplemented without approval of all parties or leave of the Court, on good cause shown.  Notwithstanding the foregoing, the parties will not designate deposition testimony for witnesses on either parties' will-call live or may-call live list, subject to the reservation to potentially designate deposition testimony at a later time to the extent a witness cannot testify at trial absent serious illness or inability to travel, or a party chooses not to call a may-call witness.

67.     When a witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with two copies of the transcript of the designations, counter-designations, and counter-counter designations that will be read or played.  The parties will be charged for all time that elapses from the time the witness is called until the next witness is called, according to the proportions to be provided by the parties based on which side designated or counter-designated or counter-counter designated which testimony.

68.     If a party decides to play less than all of the designated testimony for a witness at trial, or to include less than all of its counter-designations or counter-counter-designations, the opposing party may use such dropped testimony as counter-designations or counter-counter designations to the extent the usage of such testimony in such manner is otherwise consistent with Federal Rule of Evidence 106, Federal Rule of Civil Procedure 32, and any other applicable Federal Rule of Evidence or Federal Rule of Civil Procedure, and to the extent the procedures herein regarding disclosure of deposition testimony to be read or played have been followed.  A

14

party's designation of deposition testimony is not an admission that such testimony is relevant or admissible when offered by the opposing party. No comments shall be made before the jury regarding a party's decision to designate but not introduce deposition testimony.

69.     If a party intends to call a witness at trial by deposition testimony, the party shall (1) identify the specific pages and lines of the witness's deposition testimony that the party expects to read or play and (2) provide a list of each trial exhibit that the party seeks to introduce with that testimony by **6:00 P.M.** three (3) days before the day the party expects to read or play the deposition testimony. The other party shall then provide any objections to the identified testimony and exhibits and identify its counter-designations (and affirmative designations, if any), to the identified testimony by **6:00 P.M.** the following day, i.e., two (2) days before the deposition testimony is expected to be read or played. The offering party shall then identify any objections and counter-counter-designations (and any objections and counters if the other party provided affirmative designations) by **8:00 P.M.** that same day. The other party shall then identify any objections and counter-counters to the offering party's counter to its affirmative designations by **9:00 P.M.** that same day. The parties will meet and confer to resolve any objections to exhibits and to designated, counter-designated testimony, and counter-counter-designated testimony by **10:00 P.M.** that same day, i.e., two (2) days before the day the deposition testimony is expected to be read or played.

70.     The party introducing the deposition testimony will be responsible for editing the deposition video to include the testimony, counter-designated testimony, and counter-counter designated testimony, minus attorney objections (the "Video"), and will provide the Video to the other party by **6:00 P.M.** one (1) day before the deposition testimony is to be played to the jury. The exchange format consists of: (a) a download link to the Video file; (b) PDF Clip Report

for each witness (cover page to include total run time, Lindis's Designation Run Times, Amgen's Designation Run Times, and a listing of exhibits included in the testimony); and (c) .XML (or .CCS) file for the parties to exchange for playback during trial so that each party may properly review each other's video files and modify the counter-designations, as necessary.

71.    The deposition video will include the text of the testimony on the screen that matches the witness's testimony.  All irrelevant material, including colloquy between counsel and objections, will be eliminated when the deposition is played or read.  The witness's deposition testimony shall be played or read in chronological order.  The chronological order requirement does not apply to the use of deposition transcripts or video for impeachment purposes.

72.    For those witnesses whose depositions will be played or read, the parties shall be permitted to make brief, non-argumentative transition statements to introduce the witnesses by name, position or title, and/or the entity with which he or she is associated, unless otherwise agreed to by the parties.  As stated above, any short transition statement to introduce the witness should be exchanged by **6:00 P.M.** two (2) days before the related witness is expected to testify.

73.    If an exhibit is referenced in a deposition designation played at trial, the designating party may seek to admit the exhibit into evidence if it is included on a party's trial exhibit list, subject to the other party's objections.  If an exhibit is referenced in a deposition designation played at trial and the Court has not sustained an objection to the exhibit's admission into evidence, the designating or counter-designating party may display the exhibit that has been admitted into evidence to the jury alongside the video and highlight or enlarge portions of the exhibit on the screen that were discussed or referenced in the designation or counter-designation, respectively, as if the exhibit was being shown to a live testifying witness.

74.    The time available for each side's trial presentation shall be reduced by the length of its designations, counter-designations, or counter-counter-designations actually played or read at trial.

### 3.    Impeachment

75.    Pursuant to Federal Rule of Evidence 613, deposition and other testimony or statements not specifically identified on a party's deposition designation list or exhibit list may be used at trial only for the purpose of impeachment, if otherwise competent for such purpose.

### 4.    Objections To Expert Testimony

76.    The parties have submitted motions *in limine* and Daubert motions that may affect the scope of expert testimony or Rule 26 disclosures (in the case of witnesses for whom an expert report is not required).  At trial, the Court will rule on any objections to expert testimony as beyond the scope of expert disclosures.  The time taken to argue and decide such objections in the presence of the jury will be charged to the losing party.

### C.    DISCLOSURE DISPUTE RESOLUTION

82.    If good faith efforts to resolve objections arising out of the disclosures in any section of this Pretrial Order fail, the parties shall raise any outstanding objections with the Court pursuant to the Court's Trial Procedures regarding Dispute Resolutions / Objections.  Specifically (unless the Court updates its Procedures prior to trial in this matter), the parties shall notify the Court by email (gbw_civil@ded.uscourts.gov) by **6:00 A.M.** of any objections to demonstratives, witnesses, exhibits, deposition designations, or other evidence to be presented that trial day.  The parties shall attach to the email digital copies of all relevant demonstratives, exhibits and deposition designations with the disputed passages highlighted.  By **8:15 A.M.,** the parties shall provide the Court with two (2) courtesy copies of the objections and relevant demonstratives,

exhibits and deposition designations.  The parties shall leave the courtesy copies on the podium in the courtroom.

### D.    PARTY OPPONENT STATEMENTS

83.    A party shall provide any statement by a party opponent in any pleading, request for admission response, interrogatory response, or the Joint Statement of Uncontested Facts (or portion thereof) that it intends to read, other than use during direct or cross-examination of a witness, by **6:00 P.M.** one (1) day before its intended use.  The statement shall be provided in the form of its intended use (e.g., any excerption or redaction applied).  The parties shall provide any objections by **8:00 P.M.** one (1) day before its intended use.  The parties will meet and confer to resolve any objections by **9:00 P.M.** one (1) day before its intended use.

### E.    NOTICE OF INTENT TO REST

84.    A party will provide to the Court and the other part a good-faith notice that it expects to rest by 5:00 p.m. or before leaving court, whichever is later, the day before that party expects to rest and a good-faith estimate of how much additional trial time the party expects to use before resting.

### F.    JUROR NOTEBOOKS

85.    Twelve (12) copies of an agreed juror notebook containing (1) the asserted patents, (2) a listing of each asserted claim and the Court's or parties' agreed claim constructions relevant thereto, dependent claims to be shown with the relevant limitations of the base claims incorporated, and (3) a single page for each witness expected to be called at trial that includes a color photograph of that witness, provided by the party who will be offering the witness, and space for the juror to take notes will be delivered to the Court by the day before jury selection at noon.

## VII.    PLAINTIFF'S STATEMENT OF PROOF AND DAMAGES

86.     Lindis will demonstrate at trial that Amgen induces infringement by inducing each and every step of the method in claims 3, 8 and 15 of the '421 Patent and 1, 12 and 20 of the '158 Patent ("Asserted Claims") and such infringement is willful.  Lindis will further demonstrate at trial how Amgen actively induces infringement by encouraging, instructing, enabling, and otherwise causing end users to use Blincyto in a manner that infringes, including through its prescribing information for Blincyto, such that Amgen is liable for actively inducing infringement and such infringement is willful.

87.     At trial, pursuant to 35 U.S.C. § 284, Lindis will seek damages in the form of a reasonable royalty as compensation for Amgen's induced infringement of the Asserted Patents. Lindis contends that damages are available from January 10, 2016 through expiration of the Asserted Patents and will ask the jury to award reasonable royalty of not less than 3.0% in the principle amount of at least $ 67.1 million for U.S. sales, and at least $ 109.0 million for U.S. and worldwide sales.

88.     Lindis further seeks an award of prejudgment interest, an award of attorneys' fees pursuant to 35 U.S.C. § 285, and interest, costs, and disbursements as justified under 35 U.S.C. § 284 and/or Federal Rule of Civil Procedure 54.  Lindis also seeks treble damages based on Amgen's willful infringement of the patent-in-suit.

89.     Further details about Lindis's intended proofs may be found in its First Amended Complaint and responses to counterclaims, in its contentions and discovery responses, and in its expert reports and both sides' expert depositions, as well as in the Statement of Undisputed Facts, Lindis's Statement of Contested Facts, and Lindis's Statement of Issues of Law.

## VIII. AMGEN'S STATEMENT OF PROOF AND RESPONSE TO PLAINTIFF'S STATEMENT OF DAMAGES

90.     Amgen will demonstrate at trial that Lindis has failed to establish by a preponderance of the evidence that Amgen actively induces infringement of each and every step of the method in the Asserted Claims.  Amgen will also demonstrate that any alleged infringement has not been willful.

91.     Amgen will prove that the Asserted Patents are invalid.  Specifically, Amgen will demonstrate, by clear and convincing evidence, that the Asserted Claims are invalid under 35 U.S.C. § 102 as anticipated by the prior art.  Amgen will further prove, by clear and convincing evidence, that the Asserted Claims are invalid under 35 U.S.C. § 103 as obvious in view of the prior art.  Amgen will also prove, by clear and convincing evidence, that the Asserted Claims are invalid under 35 U.S.C. § 112 for lack of enablement.  Amgen will further prove, by clear and convincing evidence, that the Asserted Claims are invalid under 35 U.S.C. § 112 for lack of adequate written description.  Amgen will also prove, by clear and convincing evidence, that the Asserted Claims are invalid under 35 U.S.C. § 112 for indefiniteness.

92.     Amgen will also prove that the Asserted Claims are unenforceable based on inequitable conduct during prosecution of the Asserted Claims before the United States Patent and Trademark Office ("PTO").

93.     Amgen will demonstrate that Lindis has failed to prove by a preponderance of the evidence that it is entitled to damages in the form of a reasonable royalty and, if so, in what amount. To the extent Lindis has proven by a preponderance of the evidence that it is entitled to damages in the form of a reasonable royalty on Blincyto revenue, and to the extent the Court has not excluded testimony concerning Blincyto ex-U.S. revenue, Amgen will demonstrate that Lindis is entitled to a reasonable royalty on Blincyto U.S. revenue of not more than 0.5% and is not entitled to a reasonably royalty on Blincyto ex-U.S. revenue.

94.    If Lindis has proven by a preponderance of the evidence that it is entitled to damages in the form of a reasonable royalty, Amgen will demonstrate that Lindis is not entitled to pre- or post-judgment interest.

95.    Lindis is not entitled for an award under 35 U.S.C. § 284 for Lindis's actual damages resulting from infringement, together with interest and costs, or for an exceptional case under 35 U.S.C. § 285, and accompanying award of attorneys' fees and costs.

96.    Amgen has requested that this case be declared exceptional and Amgen be awarded its reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285, costs and expenses in this actions and any further relief this Court may deem just, proper and equitable.

97.    Further details about Amgen's intended proofs may be found in its Answer and Counterclaims, in its contentions and discovery responses, and in its expert reports and both sides' expert depositions, as well as in the Parties' Joint Statement of Uncontested Facts, Amgen's Statement of Issues of Fact to Be Litigated, and Amgen's Statement of Issues of Law.

## IX.    MOTIONS *IN LIMINE*

98.    Lindis's *in limine* motions, Amgen's oppositions thereto, and Lindis's replies are attached as **Exhibit M**.

99.    Amgen's *in limine* motions, Lindis's oppositions thereto, and Amgen's replies attached as **Exhibit N**.

100.    The parties have confirmed that they agree to the following:

    a.    The parties shall be precluded from introducing evidence, testimony, or argument bolstering or disparaging the U.S. Patent Office, its examiners, or the process for prosecuting patent applications or granting patents in the United States.  This does not preclude factual evidence as to the operations of the USPTO.

21

b.   The parties shall be precluded from introducing evidence, testimony, or argument regarding the size of the parties' law firms or the number of attorneys representing the parties.

c.   The parties shall be precluded from introducing evidence, testimony, or argument regarding the fact that testimony or opinions offered by any expert may have been criticized, excluded, or found to be unreliable by a tribunal in any other litigation.

d.   The parties shall be precluded from introducing evidence, testimony, or argument referring to the role or presence in the courtroom of jury consultants or shadow jurors, or the use of focus groups or mock proceedings to assist with trial preparation, jury selection, or trial.

e.   The parties shall be precluded from allowing fact witnesses to offer expert testimony.

f.   The parties shall be precluded from introducing expert testimony on opinions where the basis of those opinions is privileged, and expert opinions not disclosed within an expert's report.

g.   The parties shall be precluded from referencing the absence of a witness at trial or what he/she would have testified to, other than the playing of deposition testimony pursuant to Section VI.B above.

h.   The parties are precluding from introducing evidence, testimony, or argument regarding a party's corporate revenues or profit or other financial information that is not relevant to or considered by the damages expert's analyses.

i.     The parties are precluding from introducing evidence, testimony, or argument regarding a party's litigation history.

j.     The parties shall be precluded from introducing evidence, testimony, or argument concerning any party's overall financial size, wealth, or executive compensation.

k.     The parties shall be precluded from introducing evidence, testimony, or argument referring to any other person or entity as "greedy," "corrupt," "evil," or "dishonest," or using any other pejorative term.  The parties shall also be precluded from introducing evidence, testimony, or argument that characterizes any other person or entity's actions as "stealing," "copying," "misappropriating," "pirating," "trespassing," or any similar terms.

l.     The parties shall be precluded from introducing evidence, testimony, or argument concerning the Patent Trial and Appeal Board, inter partes review, the Smith-Leahy America Invents Act, or any alternative structure that does not relate directly to an Article III trial in a district court.

## X.     DISCOVERY

101.     The parties agree that discovery is complete and closed.

## XI.     NUMBER OF JURORS

102.     There shall be 8 jurors.  The Court will conduct jury selection through the "struck juror" method, which the parties understand to be the Court's standard jury selection process: (1) the Court reads the Parties' proposed *voir dire* to the jury panel in the courtroom; (2) the Court and counsel (and a jury consultant, if present) for each side meets with jurors individually in chambers to further inquire about responses to the *voir dire* and to address any challenges for cause until the 14 potential jurors are seated in the box; and (3) the parties may exercise three peremptory

strikes each.  To the extent any jury panel member has failed to provide the basic information requested in the jury room, either party may request that information during the *voir dire* process.

## XII.   LENGTH OF TRIAL

103.    The trial will be timed.  Unless otherwise ordered, time will be charged to a party for its: (1) opening statement; (2) direct and redirect examinations of witnesses it calls; (3) cross-examination of witnesses called by any other party; and (4) closing argument.  Time will be charged to the losing party for all sides' argument on objections a party raises (outside the presence of the jury) to another party's exhibits, witnesses, deposition testimony, questions and demonstrative exhibits.

104.    The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all its allotted trial time, the Court will terminate that party's trial presentation.

105.    Considering the Court's procedures for counting time, with 7 trial days amounting to approximately 42 hours, and considering the nature and extent of the parties' disputes, the Court grants each party 18 hours for its trial presentation.

## XIII.   AMENDMENT OF THE PLEADINGS

106.    The parties do not seek to amend the pleadings.

## XIV.   MOTIONS FOR JUDGMENT AS A MATTER OF LAW

107.    The parties propose that motions for judgment as a matter of law be made and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed.  The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard and whether the Court wishes to receive briefing.

## XV.   SETTLEMENT

108.    The parties have participated in settlement discussions on two occasions, once assisted by a professional neutral.  Neither was successful.  The parties are open to continued dialogue on settlement.

## XVI.   CONFIDENTIALITY

109.    The provisions of the Protective Order shall govern the use at trial of information designated confidential, except as modified herein.  The parties agree to cooperate to minimize disclosure of confidential information during trial, including through conferral during pretrial exchanges and through the appropriate use of courtroom technology (e.g., not publishing confidential information in the courtroom).  Subject to the approval of the Court, the Parties agree that they will not oppose any reasonable request by the Producing Party that the courtroom be sealed during the presentation of any testimony, evidence, or argument relating to or involving the use of any Protected Material, nor will they oppose a reasonable motion to seal or redact transcripts containing Protected Material.  The restrictions of the Protective Order notwithstanding, the parties' corporate representatives, in-house counsel, experts, and members of the parties' trial teams may remain in the courtroom when and to the extent the courtroom is sealed.

## XVIII.  OTHER OPEN ISSUES

110.    The parties have submitted proposed final verdict forms (D.I. 281 , 282) and jury instructions (D.I. 280, 283).

111.    **Open Issues Raised by Lindis's Motion for Partial Summary Judgment No. 2**:

Amgen's position: In its July 27, 2023 Order (D.I. 95), this Court construed the term "cytokine release" in claim 12 of the '158 patent (and claims 1 and 20 and "non-specific release of . . . cytokine[s]" as recited in the other claims) to mean "release of . . . cytokine[s] caused by [a/the trifunctional, bispecific immunostimulating antibody/bispecific antibody/bispecific immunostimulating antibody] binding to the CD marker on a cell but independent of the antibody

25

binding to the target antigen on a cell." That is a settled matter in this case. Yet, Lindis's Motion for Partial Summary Judgment No. 2 is premised on the false assertion that the Court did not construe that term and uses Lindis's contrary construction. D.I. 173, D.I. 203. To the extent Lindis's Motion for Partial Summary Judgment No. 2 is a preview of arguments it intends to make at trial, Lindis should be precluded from rearguing the construction of terms this Court has already construed.

112.    <u>Lindis's Position</u>: Consistent with the Court's claim construction ruling, there are two types of "cytokine release": specific and non-specific. Claim 12 of the '158 patent require requires reduction of only "cytokine release," whether non-specific or specific. Blincyto causes both non-specific and specific cytokine release. Lindis did not agree during claim construction to limit the scope of claim 12 solely to non-specific cytokine release. Lindis's Motion for Partial Summary Judgment No. 2 is consistent with the Court's claim construction ruling regarding "cytokine release," as explained the parties' briefing on the motion. (D.I. 173, D.I. 234.) The motion was fully briefed by both parties. Amgen has not sought leave to file supplemental briefing, nor does Lindis agree Amgen has shown good cause for any additional briefing on the motion. Lindis objects to Amgen's attempt to provide additional briefing on the motion without leave of Court.

113.    **Open Issues Raised by Lindis's Response to Amgen's Motion for Summary Judgment No. 3:** <u>Amgen's Position</u>: Lindis asserts that the administration of recited antibodies is not required by the Asserted Claims. Lindis's assertions are directly contradicted by the plain language of the claims and the Court's claim construction (DI 95). All of the Asserted Claims recite terms directed to certain types of antibodies—terms that should be given effect as material limitations, as explained in Amgen's briefing on its Motion for Summary Judgement No. 3. D.I.

180, D.I. 240. To the extent Lindis's response to Motion for Summary Judgment No. 3 is a preview of arguments it intends to make at trial, Lindis should be precluded from rearguing the construction of terms this Court has already construed.

114.    <u>Lindis's Position</u>: All of Amgen's written description arguments are premised on the flawed theory that the Assert Claims require an active step of administering a genus of CD19 x CD3 antibodies. The Asserted Claims are directed to methods for reducing release of cytokines associated with treatment of cancer. Each of the claimed methods include a single active step: administering an effective amount of at least one glucocorticoid as a premedication. Nothing in the Asserted Claims covers the composition of the antibody, nor any active step of using the antibody, as explained in Lindis's response to Amgen's Motion for Summary Judgment No. 3. D.I. 209. The motion was fully briefed by both parties. Amgen has not sought leave to file supplemental briefing, nor does Lindis agree Amgen has shown good cause for any additional briefing on the motion. Lindis objects to Amgen's attempt to provide additional briefing on the motion without leave of Court.

115.    **Open Issues With Regard to Agreed-Upon Withdrawal of Issues by Lindis**: In response to Amgen's Motion for Summary Judgment No. 1, Lindis explicitly and unequivocally limited its infringement arguments: "Lindis does not pursue claims for induced infringement of the '421 patent based on the alternative requirements of administration of a glucocorticoid 'immediately after' or 'concurrently with' a bi-specific antibody." Plaintiff Lindis Biotech, GmbH's Answering Brief in Opposition to Defendant Amgen Inc.'s Motion for Summary Judgment and Daubert Motion D.I. 209 at 4n.1. Additionally, Lindis has withdrawn its claims that (1) Amgen directly infringes the Asserted Patents, (2) Amgen is liable for contributory infringement of the Asserted Patents, (3) Amgen infringes U.S. Patent No. 10,576,149 and (4)

administration of Blincyto to pediatric patients infringes the Asserted Patents. First Amended Complaint, D.I. 157, Plaintiff Lindis Biotech, GmbH's Answering Brief in Opposition to Defendant Amgen Inc.'s Motion for Summary Judgment and Daubert Motion D.I. 209 at 4n.1. Amgen proposed including as uncontested facts Lindis's election to limit its infringement arguments and withdraw (in whole or in part) certain of its claims, but Lindis refused. Applied to trial, as it should be, Lindis's limitation of its infringement arguments and withdrawal (in whole or in part) of claims narrows the issues and will eliminate controversy over evidence and jury confusion.

116.    **Timing of Trial and Equitable Issues:** During the pretrial conference, the Court indicated it would schedule a bench trial if necessary to try the equitable issues at a later date.

Dated: December 5, 2024

**SAUL EWING LLP**

  */s/Michelle C. Streifthau-Livizos*
James D. Taylor, Jr. (#4009)
Jessica M. Jones (#6246)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
(302) 421-6863
james.taylor@saul.com
jessica.jones@saul.com
michelle.streifthau-livizos@saul.com

Henry A. Platt
Robert C. Gill
Matthew J. Antonelli
Alireza Behrooz
Dennis Ostrovsky
1919 Pennsylvania Avenue, NW, Suite 550
Washington, DC 20006
henry.platt@saul.com
robert.gill@saul.com
matt.antonelli@saul.com

Courtland C. Merrill
33 South Sixth Street, Suite 4750
Minneapolis, MN 55402
courtland.merrill@saul.com
(612) 225-2943

Andrew Schwerin
Veronica McCarty (#6734)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
(215) 972-7184
andrew.schwerin@saul.com
veronica.mccarty@saul.com

*Attorneys for Plaintiff Lindis Biotech, GmbH*

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

  */s/James L. Higgins*
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Stephanie N. Vangellow (No. 7277)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
svangellow@ycst.com

**PERKINS COIE LLP**
Michael J. Wise
Joseph P. Hamilton
Lara J. Dueppen
Courtney M. Prochnow
Alisha C. Burgin
Doris Alvarez-Reyes
1888 Century Park East
Suite 1700
Los Angeles, CA 90067-1721
(310) 788-9900

Garmai Gorlorwulu
Blake A. Winn
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
(858) 720-5700

**AMGEN INC.**
Brian Kao
J. Drew Diamond
Blake Greene
Wendy A. Whiteford
One Amgen Center Drive
Thousand Oaks, CA 91320-1799
(805) 447-1000

**O'MELVENY & MYERS LLP**
Lisa B. Pensabene

29

Hassen Sayeed
Carolyn S. Wall
Jing Ying (Amy) Zhao
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
(212) 326-2000

Luann L. Simmons
Sorin Zaharia
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
(415) 984-8700
*Attorneys for Amgen Inc*

30