## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINDIS BIOTECH, GMBH | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-35-GBW |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| AMGEN INC., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S ANSWERING BRIEF REGARDING INEQUITABLE CONDUCT

**SAUL EWING LLP**
James D. Taylor, Jr. (#4009)
Jessica M. Jones (#6246)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
(302) 421-6863
james.taylor@saul.com
jessica.jones@saul.com
michelle.streifthau-livizos@saul.com

i

<u>**TABLE OF CONTENTS**</u>

**Page**

Table of Authorities ..................................................................................................... iii

I.      SUMMARY OF ARGUMENT ................................................................. 1

II.     NATURE AND STAGE OF PROCEEDINGS.......................................... 2

III.    STATEMENT OF FACTS ......................................................................... 3

        A.    Relevant Facts from Litigation History ..................................... 3

        B.    Relevant Evidence and Issues Considered by the Jury.............. 4

IV.     LEGAL STANDARDS .............................................................................. 7

        A.    Inequitable Conduct and Materiality Standards......................... 7

        C.    The Court Must Presume that All Underlying Facts for the Jury Verdict Were Resolved in Lindis's Favor and Must Defer to the Jury's Findings ......................... 8

V.      ARGUMENT .............................................................................................. 8

        A.    Amgen's Remaining Inequitable Conduct Theories Have Already Been Rejected By the Jury, and this Court Must Defer to the Jury's Findings of Fact.......................... 8

              1.    Amgen Misrepresents the Case Law, as the Jury Already Considered the Materiality of the Trion and EMA Reports and Huhn Reference Under the Applicable Clear and Convincing Evidence Standard........................................ 9

              2.    The Jury Has Already Determined the Trion and EMA Reports and Huhn Reference Were Not Material to Validity, and this Court Must Give Deference to these Findings of Fact and Conclude the Same ............................................ 11

        B.    Amgen Waived its Right to Raise the Huhn Theory and Any Obviousness Arguments By Narrowing its Case in the Pre-Trial Order ...................................... 12

        C.    The Trion and EMA Theories Fail as a Matter of Fact Because Both Are Consistent With, and Do Not Negate, the Examples in the Asserted Patents' Specifications or the "Surprising Finding" of the Asserted Patents .................................... 13

        D.    Amgen's Huhn Theory and Should Be Rejected Because Amgen Mischaracterizes Both Huhn and the Asserted Patents' Specification, and Huhn is Cumulative of References Considered by the USPTO (Rose) ....................................... 16

E.    Amgen's Cited Case Law Is Distinguishable and Does Not Support Amgen's Central Argument that Misrepresentations Regarding the "Premises of the [] Invention" or "Surprise Finding" Are Material for Inequitable Conduct ............... 17

F.    Amgen's Alleged Inequitable Conduct Theory that the Trion and EMA Reports and Huhn Reference Contradict the "Surprising Finding" of the Asserted Patents Fails Because *the "Surprising Finding" Is True*, As Evinced by Amgen's Infringing Use of the Claimed Invention ......................................................................................... 19

VI.    **CONCLUSION** ............................................................................................... **20**

## <u>TABLE OF AUTHORITIES</u>

*Apple Inc. v. Samsung Electronics Co., Ltd.,*
    839 F.3d 1034 (Fed. Cir. 2016) (*en banc*) ................................................................8

*Aventis Pharma S.A. v. Hospira, Inc.,*
    675 F.3d 1324 (Fed. Cir. 2012)....................................................................1, 8, 10

*Care, Ltd. v. Laurain,*
    98 F.4th 1081 (Fed. Cir. 2024) .............................................................................18

*Cordis Corp. v. Bos. Sci. Corp.,*
    561 F.3d 1319 (Fed. Cir. 2009)..............................................................................12

*Dann v. Johnston,*
    425 U.S. 219 (1976)................................................................................................18

*Jurgens v. McKasy,*
    927 F.2d 1552 (Fed. Cir. 1991)..........................................................................8, 12

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.,*
    688 F.3d 1342 (Fed. Cir. 2012)................................................................................8

*Microsoft Corp. v. i4i Ltd. Partnership,*
    564 U.S. 91 (2011)....................................................................................................8

*Molins PLC v. Textron, Inc.,*
    48 F.3d 1172 (Fed. Cir. 1995)..................................................................................7

*Natera, Inc. v. ArcherDX, Inc.,*
    690 F. Supp. 3d 437 (D. Del. 2023).....................................................................8, 11

*Novo Nordisk Inc. v. Rio Biopharmaceuticals, Inc.,*
    No. 1-22-cv-00294-CFC (D.I. 359 at 1-2) (D. Del. Nov. 5, 2024)........................12

*PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.,*
    225 F.3d 1315 (Fed. Cir. 2000)........................................................................18, 19

*Phoenix Canada Oil Co. v. Texaco, Inc.,*
    842 F.2d 1466 (3d Cir. 1988)................................................................................12

*Reeves v. Sanderson Plumbing Products., Inc.,*
    530 U.S. 133 (2000)..................................................................................................8

*Rockwell Int'l Corp. v. United States,*
    549 U.S. 457,474 (2007).........................................................................................12

*Spectralytics, Inc. v. Cordis Corp.*,
    649 F.3d 1336 (Fed. Cir. 2011) ............................................................................8

*Therasense, Inc. v. Becton, Dickinson and Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) .................................................................... *passim*

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
    699 F.3d 1340 (Fed. Cir. 2012) ............................................................................8

### FEDERAL STATUTES

37 C.F.R. 1.56(b) ...................................................................................................17

35 U.S.C. § 102 ............................................................................................ *passim*

35 U.S.C. § 103 ...........................................................................................7, 9, 10, 11

35 U.S.C. § 112 ............................................................................................ *passim*

35 U.S.C. § 282 ......................................................................................................8

Fed. R. Civ. P. 16(e) ..............................................................................................13

Fed. R. Civ. P. 30(b)(6) ..........................................................................................20

53789982.2

## I.    SUMMARY OF ARGUMENT

1.    Despite Defendant Amgen, Inc.'s ("Amgen" or "Defendant") mischaracterization of applicable case law, its inequitable conduct theories are precluded by the jury verdict.  Under *Aventis* and *Therasense* the standard for materiality for "nondisclosure of information" is clear and convincing evidence. This is the standard considered by the jury to determine materiality of the same documents for invalidity.  That verdict determined that the Trion and EMA Reports and the Huhn reference are not material when the jury found in favor of Plaintiff Lindis Biotech GmBH ("Lindis" or "Plaintiff").  Deference must be given to the jury's implicit findings of fact.

2.    The Huhn Theory and Amgen's obviousness-type arguments also are precluded by waiver.  Amgen did not identify these theories in the Pre-Trial Order as issues of fact which must be adjudicated.  *See* D.I. 319, Ex. C at ¶¶ 66-69.

3.    Amgen's Theories also fail as a matter of fact.  The Trion Report's data is consistent with and does not negate the examples in the Asserted Patents' specifications or the "surprising finding" of the Asserted Patents.  Amgen mischaracterizes the conclusions of the EMA Report, which does not recommend against premedication with glucocorticoids.  Huhn (which Amgen mischaracterizes) is cumulative of information already before the Examiner (*i.e.*, Rose), and cannot be material to inequitable conduct.

4.    Amgen's central inequitable conduct theory that the Asserted Patents are invalid because the Trion and EMA Reports and Huhn allegedly contradict their "surprising finding" or "premise" also fails because it is unsupported by Amgen's cited precedent.

5.    Finally, Amgen's central inequitable conduct theory fails because Amgen itself **uses and relies upon** the "surprising finding" of the Asserted Patents in order to manufacture and sell Blincyto.  No Examiner would have issued a rejection based on alleged "inconsistent data"

53789982.2

when the "surprising finding" ***does work***, as evidenced by data in the Asserted Patents' specification, and Amgen's use of the claimed invention.

## II.   NATURE AND STAGE OF PROCEEDINGS

The First Amended Complaint was filed on April 4, 2024 asserting infringement of U.S. Patent Nos. 8,709,421 ("the '421 patent") and 10,071,158 ("the '158 patent") (collectively, the "Asserted Patents").  (D.I. 157, Exs. A and B.)  Amgen filed its Answer to First Amended Complaint, Affirmative Defenses, and Counterclaims on May 2, 2024 ("Answer"), and asserted affirmative defenses and counterclaims for inequitable conduct.  (D.I. 166 at 12-22, 27, 29.)

Of the defense theories and claims raised in its Answer, Amgen has only elected to pursue the following based on its Trial Brief Regarding Inequitable Conduct (D.I. 345) ("Brief"): that Dr. Lindhofer intentionally withheld an April 2005 non-clinical study report (the "Trion Report") and a February 2011 report entitled "Assessment Report for Removab" (the "EMA Report") from the USPTO.  Amgen alleges that both reports contradict the "surprising finding" or "unexpected results" of the Asserted Patents, which would have led to a rejection under § 112 (*see, e.g.,* D.I. 345 at 1-2, 17; D.I. 200 at 6-9; D.I. 166 at ¶¶ 80-115 ("Trion and EMA Report Theories")).  Amgen also alleges inequitable conduct for failure to disclose *Huhn et al*., "Rituximab therapy of patients with B-cell chronic lymphocytic leukemia," ("Huhn"), which Amgen argues teaches "glucocorticoid pretreatment with immunostimulatory antibodies" and contradicts the "surprising finding" of the Asserted Patents and arguments made to overcome obviousness rejections (D.I. 345 at 2; D.I. 200 at 19; D.I. 166 at ¶¶ 116-110) ("Huhn Theory")).[1]

---

[1] With Amgen's election of inequitable conduct theories in its Brief, Amgen has narrowed the scope of its defenses, and waived the right to raise any of other inequitable conduct theories at trial.  Lindis reserves the right to object to any attempt by Amgen or its experts to raise any inequitable conduct defenses not identified in its Brief.

From December 9 - 17, 2024, a jury considered infringement, validity, willfulness, and damages. The jury returned a verdict of willful infringement on all asserted claims of the Asserted Patents (D.I. 335 at 2-4). The jury found Amgen had not met its burden to prove invalidity of the asserted claims for lack of adequate written description (*id.* at 5), enablement (*id.* at 6), or obviousness (*id.* at 7).

## III.    STATEMENT OF FACTS

### A.    Relevant Facts from Litigation History

Mr. Robert Stoll issued an expert report ("Stoll Report") in support of Amgen's allegations of inequitable conduct, opining that Dr. Lindhofer breached his duty of candor to the PTO by not disclosing the Trion and EMA Reports.[2] (D.I. 183, Ex. 4 at ¶¶ 58-59.) Mr. Stoll admitted that the Trion and EMA Reports are *not* prior art under 35 U.S.C. §§ 102 / 103 (D.I. 184 at ¶ 7). Amgen did not assert the Trion and EMA Reports were prior art at trial. Mr. Stoll did not opine on Amgen's other inequitable conduct defenses, including *any* opinion that Huhn[3] or the Trion and/or EMA Reports rendered the Asserted Patents invalid for inequitable conduct as prior art under §§ 102 or 103. (*Id.*; *see below.*)

Mr. Stoll testified in deposition that the Non-Clinical Reports were but-for material and invalidated the Asserted Patents *solely* under § 112 for lack of written description/enablement. Ex. B at 88:8-13, 91:14-17 ("Q: So you would have given a rejection for 112, lack of written description? A: Right. Q: And would you have given a separate rejection for 112, lack of enablement? A: Yes. . . . . . Q: Any other statutory bases for rejection that you would think you would have given? A: Maybe, but I'm not thinking of any right now."); *see also* D.I. 202 at ¶ 1

---

[2] Mr. Stoll is the only Amgen expert to opine on the subject of inequitable conduct. Lindis reserves the right to object to any expert testimony that was not disclosed.

[3] Mr. Stoll's expert report (D.I. 183, Ex. 4) does not even mention the Huhn reference.

("Mr. Stoll would have issued a rejection under 35 U.S.C. § 112 if he had received a copy of the TRION Report.").

On November 19, 2024 (D.I. 287) and again on December 5, 2024 (D.I. 319), Amgen submitted for inclusion in the Pre-Trial Order its identification of Issues of Facts to be Litigated (D.I. 287, Ex. C) ("Issues of Fact"), which were those "that remain to be litigated and [a] brief statement of what Defendant intends to prove as defenses." (D.I. 287, Ex. C at ¶ 1.) Of Amgen's remaining inequitable conduct counterclaims/defenses, the Issues of Fact identified *only* Amgen's Trion and EMA Report Theories, and *not* the Huhn Theory. None of the Issues of Fact mention Huhn. (D.I. 287, Ex. C at ¶¶ 66-69.)[4] The Issues of Fact did not identify any inequitable conduct theory based on obviousness, based on Huhn or the file histories. (*Id.* at ¶¶ 66-69.) The Pre-Trial Order was never amended to include such theories.

## B.    Relevant Evidence and Issues Considered by the Jury

The jury considered the following pertinent to Amgen's inequitable conduct theories:

<u>Trion and EMA Theories:</u>  Amgen presented the Trion and EMA Theories' at trial as part of its enablement and written description defense.

Amgen's opening statement claimed that there was no "surprising finding" for the Asserted Patents. *See* Dec. 9, 2024 Trial Tr. at 125:8-15, 130:8-16 ("MS. PENSABENE: [W]hat [Lindis] told the Patent Office about having a surprising finding. Their surprising finding that they talk about in the patents is that using glucocorticoid did not impair the antibody's killing activity. Well, it turned out that data showed that the killing activity was, indeed, impaired when the glucocorticoids were used with the Lindis antibody.") Amgen repeated its Trion and EMA

---

[4] Amgen did not address its inventorship theory for inequitable conduct in its  Brief.  The inventorship theory is therefore waived (*see* above; Section V(B)).

Theories in its closing argument. Dec. 16, 2024 Trial Tr. at 1495:24-1496:6 ("Lindis said that their method -- and their patent said their method gave unexpected results, they told the Patent Office that there was a surprising finding with their method, that the glucocorticoids reduced cytokines without the antibody's killing activity being impaired. But data showed that the killing activity was inhibited and that glucocorticoids should not be used with the Lindis antibodies.").

Drs. Lindhofer and Heiss testified about the "surprising finding" or "unexpected results" of the Asserted Patents. Dec. 9, 2024 Trial Tr. at 178:9-180:8; Dec. 11, 2024 Trial Tr. at 557:18-558:9. Dr. Lindhofer was cross-examined about the Trion Report, and the data's consistency with the unexpected results of the invention. Dec. 10, 2024 Trial Tr. at 278:5-284:7. Dr. Oleksowicz was cross-examined on the "surprising finding" of the Asserted Patents, the conclusions of the EMA Report, and the Trion Report data's consistency with the claims and premise of the invention. Dec. 10, 2024 Trial Tr. at 518:13-525:16. Third-party witness Dr. Michael Stroehlein testified about the unexpected results of the claimed invention. Dec. 13, 2024 Tr. at 1373:4-10 ("[S]cience like this finding -- finding new concepts . . . . You try it. You find a tremendous effect -- [] these data shows a tremendous effect. We have never seen this before.").)

Amgen's technical experts testified about the facts underlying the Trion and EMA Reports Theory. Dr. Wayne Marasco testified that the Trion and EMA Reports rendered the Asserted Patents invalid for lack of enablement, because the Trion and EMA Reports contradicted the Asserted Patents' unexpected results and would require undue experimentation. Dec. 12, 2024 Trial Tr. at 1071:15-1077:11; D.I. 345 at 17 (citing Dr. Marasco's testimony on the Trion and EMA Reports). Dr. Robert Soiffer also testified that there was no "surprising finding" or unexpected result disclosed by the Asserted Patents, and that the alleged "surprising finding" was contradicted by the EMA Report. Dec. 13, 2024 Trial Tr. at 1195:18-1196:18. Both of Amgen's

technical experts opined that the "surprising finding" of the Asserted Patents was contradicted by the Trion and EMA Reports, with Dr. Soiffer going so far as to opine he had seen "no evidence" "to support" the "surprising finding." *Id.* at 1195:15-1196:6. The Trion Report (DTX335) and the EMA Report (DTX201) were admitted into evidence.

The jury rejected the factual foundation for Amgen's Trion and EMA Theories. The jury found the Asserted Patents were valid, rejecting Amgen's invalidity defenses for lack of enablement/written description under § 112 or obviousness under 35 U.S.C. §§ 102 or 103. (D.I. 335 at 5-6.) The jury considered the materiality of the Trion and EMA Reports, and rejected them as immaterial. In so doing, the jury credited the "surprising finding" of the Asserted Patents. *See* D.I. 333 at 58-61 (Final Jury Instruction – Written Description Requirement (instructing jury to consider factors such as "existing knowledge in the relevant field")), 56-57 (Final Jury Instruction – Enablement), and 35-36 (Final Jury Instruction 5.1 – Patent Invalidity - Generally (detailing instructions for materiality for evidence not previously before USPTO)).

Huhn Theory Trial Record: Amgen presented factual evidence and legal argument regarding the Huhn Theory as part of its obviousness defense.

Dr. Lindhofer was cross-examined regarding the Huhn reference. Dec. 10, 2024 Tr. at 284:10-285:4. Dr. Soiffer testified in depth as to how the Huhn reference, in combination with Ruf, rendered the '421 Patent invalid as obvious, citing to Huhn for the asserted claims' pretreatment with a glucocorticoid element, but with the monoclonal antibody Rituximab, rather than with a bispecific antibody which activates T cells. Dec. 13, 2024 Trial Tr. at 1177:25-1185:12, 1188:14-1193:19. Huhn was introduced into evidence as DTX199.

The jury rejected Amgen's §§ 102 and/or 103 invalidity arguments based on Huhn. (D.I. 335 at 7.) In doing so, the jury considered the materiality of Huhn and found it immaterial to the

Asserted Patents' validity under the clear and convincing evidence standard. (D.I. 333 at 35-36)
(Final Jury Instruction 5.1 – Patent Invalidity - Generally (detailing instructions for materiality for
evidence not previously before USPTO)), 40 (Final Jury Instruction 5.4 – Prior Art Generally),
and 42-43 (Final Jury Instruction 5.5 – Obviousness).

## IV.    LEGAL STANDARDS

### A.    Inequitable Conduct and Materiality Standards

"To prevail on the defense of inequitable conduct, the accused infringer must prove that
the applicant misrepresented or omitted material information with the specific intent to deceive the
PTO. [] ***The accused infringer must prove both elements—intent and materiality—by clear and
convincing evidence***." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed.
Cir. 2011).[5] "'***In a case involving nondisclosure of information***, clear and convincing evidence
must show that the applicant *made a deliberate decision* to withhold a *known* material reference.'
In other words, the accused infringer must prove by clear and convincing evidence that the
applicant knew of the reference, knew that it was material, and made a deliberate decision to
withhold it." *Id.* at 1290, citing *Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1181 (Fed. Cir. 1995).

"***A prior art reference*** 'is but-for material if the PTO would not have allowed a claim had
it been aware of the undisclosed prior art.' Unlike the clear and convincing evidence standard for
invalidating a patent in the district court under 35 U.S.C. §§ 102 and 103, the standard for
establishing but-for materiality in the inequitable conduct context only requires a preponderance
of the evidence, "giv[ing] claims their broadest reasonable construction." *Aventis Pharma S.A. v.
Hospira, Inc*., 675 F.3d 1324, 1334 (Fed. Cir. 2012), citing *Therasense* at 1291-1292.

---

[5] Unless otherwise indicated, emphasis has been added in this Opposition.

53789982.2

The accused infringer must prove obviousness under §§ 102, 103 and 112 by clear and convincing evidence because, under 35 U.S.C. § 282, all issued patents are presumed to be valid. *Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91, 97 (2011)).

### C.    The Court Must Presume that All Underlying Facts for the Jury Verdict Were Resolved in Lindis's Favor and Must Defer to the Jury's Findings

Post-trial review of a jury's verdict is limited to whether there was evidence to support the verdict. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 839 F.3d 1034, 1400 (Fed. Cir. 2016) (en banc). The Court must "give credence to the evidence favoring the verdict" and "disregard all evidence favorable to the moving party that the jury is not required to believe." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1341 (Fed. Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Products., Inc.*, 530 U.S. 133, 150–51 (2000)); *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1358-60 (Fed. Cir. 2012). The district court must "presume that the jury resolved the underlying factual disputes in favor of the verdict [] and leave those presumed findings undisturbed if they are supported by substantial evidence." *Id.* at 1356-57 (quoting *Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed. Cir. 1991)). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1347 (Fed. Cir. 2012). "[W]here there are overlapping issues that relate to a claim tried to a jury and a claim to be resolved by the court, the court must defer to the jury's finding on any overlapping factual issues." *Natera, Inc. v. ArcherDX, Inc.,* 690 F. Supp. 3d 437, 448 n.5 (D. Del. 2023).

## V.    ARGUMENT

### A.    Amgen's Remaining Inequitable Conduct Theories Have Already Been Rejected By the Jury, and this Court Must Defer to the Jury's Findings of Fact

Despite the attorney argument in Amgen's Brief, the Court actually has very little to decide in this bench trial. The jury has already determined that the Trion and EMA Reports and the Huhn reference are not material to the Asserted Patents' validity under the same standard for both §§ 102-103 and 112 and inequitable conduct (*i.e.,* clear and convincing evidence). This Court should defer to the verdict and reject Amgen's inequitable conduct arguments.

> **1.    Amgen Misrepresents the Case Law, as the Jury Already Considered the Materiality of the Trion and EMA Reports and Huhn Reference Under the Applicable Clear and Convincing Evidence Standard**

As discussed below in Section V(A)(2), each bases for Amgen's inequitable conduct theories have already been rejected by the jury because the jury determined the Trion and EMA Reports and Huhn were not material to the Asserted Patents' validity. Amgen tries to obscure this fact and the inevitable effect of the jury's ruling with a one-paragraph argument that misrepresents case law and invites this Court to commit error. (D.I. 345 at 17.)

Specifically, Amgen argues that the materiality prong of its inequitable conduct case was not decided by the jury because there are "different evidentiary standards" at play.[6] (*Id.* at 17.) Amgen argues the jury determined materiality of the Trion and EMA Reports and Huhn reference under the clear and convincing evidentiary standard for invalidity and "obviousness [under §§ 102-103] and § 112" (D.I. 345 at 17). Amgen argues that the Court must determine "but-for materiality" for inequitable conduct for these same documents under the lower "preponderance of

---

[6] Amgen does not, and cannot, dispute that the underlying facts of its inequitable conduct arguments for materiality have already been decided by the jury in the context of "obviousness and § 112." (D.I. 345 at 17.) Amgen effectively concedes this point by citing to the trial transcript and Lindis's own trial arguments throughout its Brief. *See, e.g.,* D.I. 345 at 5-8, 10-11, 17, 19-20 ("At trial, Dr. Lindhofer, Lindis' other witnesses, and Lindis's counsel repeated the false assertions of the patent specification to support patentability.").

the evidence standard," and as such, materiality is undecided.  (*Id.* at 17, citing *Aventis Pharma S.A.*, 675 F.3d at 1334.)  This argument is wrong, and misrepresents the applicable legal standard.

As provided by both *Aventis* and *Therasense* (but conspicuously absent from Amgen's legal discussion in its Brief), "[t]o prevail on the defense of inequitable conduct, the accused infringer must prove . . . . ***both elements—intent and materiality—by clear and convincing evidence***."  *Aventis Pharma S.A.*, 675 F.3d at 1334, citing *Therasense,* 649 F.3d at 1287.  *Therasense* further clarifies that the "clear and convincing" evidence standard applies to inequitable conduct theories "[i]n [cases] involving ***nondisclosure of information***," such as the present matter.  (*Therasense* at 1290.)  In contrast, when inequitable conduct is alleged for failure to disclose a "withheld prior art reference" under §§ 102-103, *Aventis* provides that but-for materiality may be established by a preponderance of the evidence.  *Aventis* at 1334.

Amgen never alleged the Trion and EMA Reports or Huhn reference are invalidating for inequitable conduct as "withheld prior art references" under §§ 102-103.  *See, e.g.,* Sections II, III(A); D.I. 345 *generally*.  The EMA and Trion Report are indisputably not prior art, as admitted by Amgen's own expert Mr. Stoll.  (D.I. 184 at ¶ 7.)  Amgen never argued the Reports are prior art in the Pre-Trial Order or at trial.  Instead, Amgen alleged that the Trion and EMA Reports and Huhn reference invalidate the Asserted Patents for inequitable conduct because these documents allegedly contradict the "unexpected results" or "surprising finding" of the Asserted Patents. This allegedly renders these references "but-for material" as the Applicant would not have overcome the Examiner's obviousness rejections if they had been disclosed.  *See* Sections V(C) and (E); D.I. 345 at 16.  This is not the equivalent of asserting invalidity due to inequitable conduct for "withheld prior art references" under §§ 102-103.  Rather, this argument falls squarely within the "nondisclosure of information" contemplated by *Therasense*, which is analyzed under the same

clear and convincing evidence standard. *Therasense* at 1290 (information not disclosed to USPTO was an EPO briefing).

As such, the clear and convincing standard for determining materiality that the jury applied for its invalidity determination (in Lindis's favor) is the same the Court must apply to determine materiality for inequitable conduct. The Court's conclusions should be the same too.

> **2.** **The Jury Has Already Determined the Trion and EMA Reports and Huhn Reference Were Not Material to Validity, and this Court Must Give Deference to these Findings of Fact and Conclude the Same**

As outlined above in Sections III(A)-(B), the question of materiality as to invalidity under §§ 102, 103, and 112 for the Trion and EMA Reports and Huhn was squarely before the jury. On all counts, the jury found in favor of Lindis. *Id.* The jury, acting as a fact-finder, has already determined that Amgen did not meet its burden to prove by clear and convincing evidence that the Trion and EMA Reports and Huhn were material. *Id.* This is explicit from the jury verdict and the instructions themselves, which directed that the jury weigh the Trion and EMA Reports in light of the "existing knowledge in the relevant field" and determine if the Asserted Patents "yielded unexpected or unpredictable results" in light of Huhn. (D.I. 333 at 46, 55.) For each question, the jury found the Trion and EMA Reports and Huhn were not material.

In such circumstances, this Court's directive is clear: "where there are overlapping issues that relate to a claim tried to a jury and a claim to be resolved by the court, the court must defer to the jury's finding on any overlapping factual issues." *Natera, Inc. v. ArcherDX, Inc.,* 690 F. Supp. 3d 437, 448 n.5 (D. Del. 2023). Accordingly, this Court must "presume that the jury resolved the underlying factual disputes in favor of the verdict [] and leave those presumed findings undisturbed if they are supported by substantial evidence." *Id.* at 1356-57 (quoting *Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed. Cir. 1991)). This precedent is not only instructional but logical. To rule otherwise would risk undoing the jury's findings of fact so the court may come to an inconsistent

result.  This Court should therefore find, as the jury did, in favor of Lindis, and rule that the Trion and EMA Reports and Huhn reference are not material to invalidity, and reject Amgen's attempt to re-hash its invalidity arguments through its inequitable conduct case.[7]

### B.    Amgen Waived its Right to Raise the Huhn Theory and Any Obviousness Arguments By Narrowing its Case in the Pre-Trial Order

As detailed in Section III(A), Amgen narrowed its inequitable conduct theories in the Pre-Trial Order's Issues of Fact.  These theories are now limited *only* to Amgen's Trion and EMA Theories.  Amgen did not include the Huhn Theory (or any reference to Huhn) or any prior art inequitable conduct arguments in the Pre-Trial Order.  (D.I. 287, Ex. C at ¶¶ 1, 66-69.)  Amgen therefore waived the right to raise Huhn or any other obviousness-type inequitable conduct theories.  *Novo Nordisk Inc. v. Rio Biopharmaceuticals, Inc.*, No. 1-22-cv-00294-CFC (D.I. 359 at 1-2) (D. Del. Nov. 5, 2024) (holding invalidity argument not raised in pre-trial order were waived and could not be raised at trial), citing *Rockwell Int'l Corp. v. United States*, 549 U.S. 457,474 (2007) ("[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint[.]" ( alteration in original) (internal citations omitted); *Phoenix Canada Oil Co. v. Texaco, Inc*., 842 F.2d 1466, 1476 (3d Cir. 1988) ("[P]retrial procedures provide the district courts with a useful tool to harness unwieldy litigation by simplifying the dispute and narrowing the issues for trial.  For this reason, pretrial orders bind the parties unless modified by the court to prevent manifest injustice." (citing Fed. R. Civ. P. 16(e))).

---

[7] Amgen's Brief suggests that Amgen is attempting to use the bench trial on inequitable conduct to both reargue and shoe-horn in new evidence and arguments related to its § 112 written description and enablement defenses in order to bolster its record for appeal.  Such efforts are impermissible. Lindis reserves the right to object to any such attempts.  *See Cordis Corp. v. Bos. Sci. Corp*., 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("argument[s] … not timely raised before the district court … [are] waived.").

### C.    The Trion and EMA Theories Fail as a Matter of Fact Because Both Are Consistent With, and Do Not Negate, the Examples in the Asserted Patents' Specifications or the "Surprising Finding" of the Asserted Patents

Even if the Court were to find that the materiality of the Trion and EMA Reports was not already determined by the jury, Amgen's inequitable conduct theory still fails.  The data in the Trion Report is consistent with, and does not negate, the "surprising finding" of the Asserted Patents or the Asserted Patents' data.  The EMA Report (directed towards Removab and never submitted for approval with a glucocorticoid pretreatment) is also consistent with this "surprising finding."  Amgen's flawed Trion and EMA Theories are without proper and objective consideration to the surrounding information or overall context that is tantamount to a repeated pattern of misdirection.  The Court should reject them accordingly.

The "surprising finding" that the novel claimed use of glucocorticoids results in a reduction of the non-specific release of cytokines by immunological cells "without the action of the immunostimulating antibodies directed against the defined antigen(s) being impaired" is supported by the experimental data disclosed in the specification of the Asserted Patents.  *See* D.I. 157, Ex. A ('421 Patent) at 3:27-44 (3:27-44); *id.*, Ex. B ('158 Patent) at 3:35-54.

For example, referring to the *in vitro* results shown in Fig. 5D with a dexamethasone concentration of 10 µg/mL, in the case of stimulation of the peripheral blood mononuclear cells ("PBMCs") (*e.g.*, T-cells) in the presence of HCT8 (tumor) cells, a percentage ***specific cytotoxicity*** arose that corresponded roughly to that which was established in the case of dexamethasone concentrations of 0.1 µg/mL and 1 µg/mL (cf. Figs. 5B and 5C).  This is illustrated by the cytotoxicity data shown in Fig. 5D (10 µg/ml (= 10,000 ng/ml) dexamethasone; 100 µg/mL bispecific, immunostimulating antibody), which is reproduced immediately in Exhibit A in relevant part (top values "x" denote in the presence of tumor cells (+HCT8 cells); bottom values

"▲" denote in the absence of tumor cells (-HCT8 cells); y-axis: % cytotoxicity; x-axis: effector cells to target cells).  *See* Ex. A at 1.

In other words, the specification data demonstrates that "in the case of a stimulation of the PBMC *in the absence of HCT8 cells the cytotoxicity values in relation to the lower dexamethasone concentrations declined further*."  *See* D.I. 157, Ex. A ('421 Patent) at 13:11-25; *id.*, Ex. B ('158 Patent) at 13:34-58.  The "surprising finding" of the Asserted Patents is thus clearly supported in Figures 5A to 5D of Example 3 of the Asserted Patents, making the (consistent) data from the Trion Report cumulative and immaterial.

Contrary to Amgen's assertions, the "surprising finding" of the Asserted Patents is supported by the results in Table 4 of the Trion Report.  These results support the *in vitro* cytotoxicity data shown in Figure 5 of the Asserted Patents.  First, Amgen's attempt to rely on and extrapolate from the Trion Report to support its meritless inequitable conduct theory as it relates to the Asserted Patents is flawed and misplaced.  Amgen is making an apples to oranges comparison, considering that the highest concentration (50 ng/mL) of the Removab antibody used in the Trion Report to demonstrate cytotoxicity is 2,000-fold less than the lowest concentration (100,000 ng/mL) of the same antibody used to generate the cytotoxicity data in Fig. 5 of the Asserted Patents.  That aside, the cytotoxicity results shown in Table 4 of the Trion Report are consistent with the cytotoxicity results shown in Fig. 5 of the Asserted Patents.

For example, in some of the experiments shown in Table 4 of the Trion Report, the dexamethasone concentrations tested (*i.e.,* 0.01 µg/mL, 0.1 µg/mL, or 1 µg/mL dexamethasone) showed *no effect whatsoever on tumor cell killing* (*i.e.,* 100% cytotoxicity is reported in the presence of dexamethasone as indicated by "tumor cell counts" values of "0") at 50 ng/mL, 10 ng/mL, and/or 5 ng/mL removab concentrations (*see, e.g.,* highlighted data shown in Table 4

reproduced in Exhibit A. Columns B, C, D, and E correspond to dexamethasone at 0 μg/mL; 1 μg/mL, 0.1 μg/mL, and 0.01 μg/mL, respectively. The Trion Report (and, by extension, the EMA Report that paraphrases statements made in the Trion Report) is thus consistent with the "surprising finding" of the Asserted Patent. *See* Ex. A.

And Amgen's allegations that "the conclusions of the Trion Report were confirmed by the EMA in its approval of Removab, which recommends against premedication with glucocorticoids" is highly misleading. (D.I. 345 at 5.) Nowhere in the four corners of the EMA Report is there any mention whatsoever of any recommendation against premedication with glucocorticoids. Amgen has failed to produce evidence that Trion sought approval for its glucocorticoid regimen from the EMA. Although the EMA Assessment describes a ***prior*** study ("AGO-OVAR-2.10") where purportedly, for reasons not mentioned in the EMA Assessment, "[p]remedication with antihistamines or corticosteroids was prohibited" and where, "[i]n the case of adverse events [AEs] … [a]dministration of other medications to treat AEs depending on symptoms, was left to the investigators discretion. ***Corticosteroids were not mentioned***." (D.I. 346 (EMA Report), Ex. D at 24.) In no universe is this a recommendation by the EMA Report against premedication with glucocorticoids. To the contrary, the EMA Assessment recognized "infusion of catumaxomab ***with*** and without ***prednisolone premedication*** in patients," which is not only consistent with the "surprising finding" of the Asserted Patents but directly contradicts Amgen's characterization of the EMA Report. (*Id.* at 45.) This understanding is echoed in the EMA Report with specific reference to cytokine release related symptoms, providing ***"[s]tandard therapy or premedication***, e.g. analgesic / antipyretic / nonsteroidal antiphlogistic is appropriate to limit the risk." (*Id.* at 45.) The EMA Report, like the Trion report, is thus consistent with and does not contradict the "surprising finding" of the Asserted Patents. As such, none of Amgen's flawed theories or

arguments can satisfy the but-for materiality required to prove inequitable conduct, much less by the required clear and convincing evidence standard.

**D.     Amgen's Huhn Theory and Should Be Rejected Because Amgen Mischaracterizes Both Huhn and the Asserted Patents' Specification, and Huhn is Cumulative of References Considered by the USPTO (Rose)**

In addition to mischaracterizing case law (*see* Section V(A)(1)), Amgen mischaracterizes Huhn and the Asserted Patents' specification for the premise of its inequitable conduct theory. Amgen cherry-picks a citation to the shared Asserted Patent specification to argue "[t]he Trion Report statement" and citation to Huhn "to demonstrate that it was 'established' that glucocorticoids had been used successfully in the clinic with immunostimulatory antibodies to reduce cytokine secretion," which "is the opposite of the patent specification statement that 'administration of glucocorticoids in connection with the stimulation of the immune system of a patient by ***antibody therapies . . . is totally unknown***." (D.I. 345 at 6-7.)

This strategic ellipsis in Amgen's Brief attempts to hide that the Asserted Patents are clear that the administration of glucocorticoids with ***trifunctional antibodies*** was "totally unknown" at the time, not monoclonal antibodies (like Rituximab, as discussed in Huhn). *See* Ex. A (citing the '421 Patent at 2:8-19. The referenced text from the Asserted Patents' specification, through their citation to Herbelin, make clear that pretreatment with glucocorticoids for ***monoclonal*** antibody administration was known. The Asserted Patents' specification is consistent with the Trion Report. Any citation to Huhn would be cumulative, and Amgen's premise for inequitable conduct based on Huhn thus fails.

To the extent the Court were to find that Amgen has not waived the Huhn Theory (as discussed above in Sections V(A)-(B), Amgen's Huhn Theory should be rejected because Huhn cannot be "but-for material" for at least the following reasons:

53789982.2

First, as Amgen's expert Dr. Soiffer conceded, Huhn is directed towards Rituximab, which is a monospecific antibody and not a bispecific antibody. Huhn is therefore immaterial to validity or inequitable conduct. *See* Dec. 13, 2025 Trial Tr. at 1223:25-1224:2 ("[Ritxumab is] a monospecific antibody that is targeting a CD20."). The jury heard this argument and evidence, and ultimately rejected Huhn as material. *See* Section II. Second, Huhn is not directed towards an immunostimulating antibody, which is a requirement of the "surprising finding" of the Asserted Patents. The jury heard testimony to the contrary from Dr. Soiffer (who conceded that Rituximab "can be somewhat immunosuppressive for a patient"), and rejected this argument, finding in favor of Lindis, and necessarily finding that evidence of a non-immunostimulating antibody was not material. *See* Section III; Dec. 13, 2025 Trial Tr. at 1226:5-1228:1. Because Huhn is directed towards a ***monospecific, non-immunostimulating*** antibody, it cannot contradict the "surprising finding" of the Asserted Patents and is immaterial to inequitable conduct.

Finally, Huhn is cumulative of Rose AL et al., "Glucocorticoids and rituximab in vitro: Synergistic direct antiproliferative and apoptotic effects,: Blood. Sep. 1, 2002; 100(5):1765-73 ("Rose"), which addressed Rituximab therapy and was disclosed to and considered by the USPTO Examiner and is referenced on the face of the Asserted Patents. (D.I. 156-1, Ex. A ('421 Patent) at 1; *id.* at Ex. B ('158 Patent) at 3. Amgen concedes that Rose is directed towards experimental use of glucocorticoid pretreatment with the Rituximab antibody. (D.I. 200 at 18.) Huhn cannot therefore, as a matter of law, be material for inequitable conduct, because it is cumulative of Rose, which was considered by the USPTO. *See* 37 C.F.R. 1.56(b).

**E.     Amgen's Cited Case Law Is Distinguishable and Does Not Support Amgen's Central Argument that Misrepresentations Regarding the "Premises of the [] Invention" or "Surprise Finding" Are Material for Inequitable Conduct**

This Court should also reject Amgen's inequitable conduct arguments because the case law cited in support is inaccurately cited (*see* Section V(A)(1)), is distinguishable, and does not support

Amgen's central argument that the Asserted Patents are invalid due to misrepresentations about the "surprising finding" or "premise" of the invention.

Amgen cites to *Luv n' Care, Ltd. v. Laurain,* 98 F.4th 1081, 1098 (Fed. Cir. 2024) for the purported proposition that "mischaracterization of the prior art product" amounts to *per se* materiality, and as such, Lindis's alleged "repeated pattern of making misrepresentations to the Patent Office about the very premises of the supposed invention . . . are *per se* material." (D.I. 345 at 11, n.7.) But in *Luv n' Care*, the Federal Circuit remanded a finding of no inequitable conduct because the district court failed to analyze materiality separate and apart from deceptive intent, as required. *Luv n'Care* at 1097. The result does not support Amgen's characterization of *Luv n' Care*. Nowhere in the opinion did the Federal Circuit find that repeated mischaracterizations amounted to *per se* materiality. *Id.* at 1097. Furthermore, the alleged mischaracterizations in *Luv n' Care* were related to a "prior art product" for an inequitable conduct analysis under a §§ 102 and/or 103 rejection. *Id.* at 1097-1098. Amgen's reliance on *Luv n' Care* for its central argument is thus misplaced.

The only other cases Amgen cites for the central argument that "[m]isrepresenting the very premises of invention [*i.e.*, the "surprising finding] is but-for material" are *Dann v. Johnston*, 425 U.S. 219, 225 (1976) and *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000). (D.I. 345 at 12, 15.) ***Neither case supports this statement.*** *Dann* did not address an argument of inequitable conduct related to the premise of the invention, or indeed inequitable conduct at all, but rather obviousness under § 103. *Dann*, 425 U.S. at 225-226. *PerSeptive* did address inequitable conduct, but in the context of inventorship only, and not about any "premises of invention," which was not in dispute. *PerSeptive*, 225 F.3d at 1317. As such, Amgen provides no case law supporting its central inequitable conduct theory, that a

misrepresentation regarding the premise of an asserted patents is *per se* material and renders the patent invalid. This Court should reject Amgen's invited error.

> **F.    Amgen's Alleged Inequitable Conduct Theory that the Trion and EMA Reports and Huhn Reference Contradict the "Surprising Finding" of the Asserted Patents Fails Because *the "Surprising Finding" Is True*, As Evinced by Amgen's Infringing Use of the Claimed Invention[8]**

Amgen's argument for inequitable conduct, including its citations to deposition transcripts, file histories, and the trial record, are all in accord with Lindis' consistent position and the jury verdict: the "surprising finding" described in the Asserted Patents is ***correct and the claimed method works***.  Even if there were some inconsistent data in the Trion and EMA Reports (both Dr. Lindhofer and Dr. Oleksowicz testified there was not, and the jury agreed (*see* Section II)), it would not be but-for material, or contradict the "surprising finding" of the Asserted Patents because the "unexpected results" are that the claimed method works.  The premise of Amgen's inequitable conduct argument is disproven by undisputed evidence.  Amgen has sold billions of dollars of Blincyto, which the jury found is administered according to the claimed Lindis glucocorticoid regimen.  The glucocorticoid administration does not render Blincyto ineffective.

Every piece of evidence which the jury weighed in favor of Lindis confirms, from the testimony of Drs. Lindhofer, Oleksowicz, Heiss, and Stroehlein (*see* Section III) to the data from the Asserted Patents' specifications themselves (*see* Section V(C)) that the "surprising finding" of the Asserted Patents is correct.  The Court, like the jury, need not take Lindis' word for it, but rather can take notice of Amgen's own conduct and evidence.  For example, Dr. Kufer, Amgen's Fed. R. Civ. P. 30(b)(6) witness, testified that glucocorticoids were used as a pretreatment with

---

[8] Amgen does not analyze or present the intent prong of its inequitable case in any meaningful detail in its Brief.  Accordingly, Lindis incorporates its arguments regarding intent for the EMA and Trion Reports and the Huhn Theories from its summary judgment briefing (D.I. 183, 233).

53789982.2

Blincyto "to prevent Cytokine Release Syndrome in advance".  *See* Dec. 12, 2024 Trial Tr. at 942:20-22, 944:18-945:20; JTX075 (Micromet paper confirming the same).

The ultimate evidence that the "surprising finding" of the Asserted Patents is correct and the claimed method works is that ***Amgen uses it*** to infringe the Asserted Patents and make billions of dollars in revenue.  Dec. 11, 2024 Trial Tr. at 686:25-687:19; Dec. 13, 2024 Trial Tr. at 1336:9-12.  It is so necessary to Amgen's application of Blincyto that Amgen has never sought approval for Blincyto from the FDA or EMA without requiring the use of glucocorticoid as a premedication.  *See* PTX008 (U.S. label for Blincyto); JTX041 (EMA approval submission by Amgen for Blincyto); Dec. 12, 2024 Trial Tr. at 953:10-14.  Amgen's use and reliance on the "surprising finding" of the Asserted Patents, as confirmed by the jury's finding of infringement (D.I. 335 at 1-4), confirms  the "unexpected results" of the Asserted Patents.

The fundamental premise of Amgen's inequitable conduct arguments is thus flawed.  No Examiner would have rejected the asserted claims of the Asserted Patents based on alleged "inconsistent data" about the claimed invention, when the "surprising finding" of the Asserted Patents is correct and ***does work***, as evidenced by data in the Asserted Patents' specification, and Amgen's use of the claimed invention.  The Court need look no further to reject Amgen's inequitable conduct case.

## VI.    CONCLUSION

For the foregoing reasons, Lindis respectfully requests this Court find there is no inequitable conduct, and to preclude Amgen from presenting evidence or argument in support of its waived Huhn or obviousness-type theories.

53789982.2

Date:  January 23, 2025

SAUL EWING LLP

*/s/Michelle C. Streifthau-Livizos*
James D. Taylor, Jr. (#4009)
Jessica M. Jones (#6246)
Michelle C. Streifthau-Livizos (#6584)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
(302) 421-6863
james.taylor@saul.com
jessica.jones@saul.com
michelle.streifthau-livizos@saul.com

Henry A. Platt
Robert C. Gill
Matthew J. Antonelli
Alireza Behrooz
Dennis Ostrovsky
1919 Pennsylvania Avenue, NW, Suite 550
Washington, DC  20006
henry.platt@saul.com
robert.gill@saul.com
matt.antonelli@saul.com

Courtland C. Merrill
33 South Sixth Street, Suite 4750
Minneapolis, MN  55402
courtland.merrill@saul.com

Andrew Schwerin
Veronica McCarty (#6734)
1500 Market Street, 38th Floor
Philadelphia, PA  19102
andrew.schwerin@saul.com
veronica.mccarty@saul.com

*Attorneys for Plaintiff Lindis Biotech, GmbH*