IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINDIS BIOTECH, GMBH | ) | |
| | ) | C. A. No.:  22-00035-GBW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMGEN INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT AMGEN INC.'S OPENING BRIEF
IN SUPPORT OF ITS MOTION UNDER RULES 50 AND 59
FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Stephanie N. Vangellow (No. 7277)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
svangellow@ycst.com

PERKINS COIE LLP
Michael J. Wise
Joseph P. Hamilton
Lara J. Dueppen
Courtney M. Prochnow
Alisha C. Burgin
Doris Alvarez-Reyes
1888 Century Park East
Suite 1700
Los Angeles, CA  90067-1721
(310) 788-9900

Garmai Gorlorwulu
Blake A. Winn
11452 El Camino Real, Suite 300
San Diego, CA  92130-2080
(858) 720-5700

AMGEN INC.
Brian Kao
J. Drew Diamond
Blake Greene
Wendy A. Whiteford
Carolyn S. Wall
One Amgen Center Drive
Thousand Oaks, CA  91320-1799
(805) 447-1000

O'MELVENY & MYERS LLP
Lisa B. Pensabene
Hassen Sayeed
Jing Ying (Amy) Zhao
1301 Avenue of the Americas
Suite 1700
New York, NY  10019
(212) 326-2000

Luann L. Simmons
Sorin Zaharia
Two Embarcadero Center
28th Floor
San Francisco, CA  94111
(415) 984-8700

AUTZ IP LLC
Lindsay H. Autz
115 Lampwick Lane
Fairfield, CT  06824
(203) 526-1307

*Attorneys for Amgen Inc.*

Dated:  March 21, 2025

**Table of Contents**                                                    **Page**

I.      NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II.     SUMMARY OF ARGUMENT ................................................................................... 1

III.    STATEMENT OF FACTS ........................................................................................ 2

IV.     LEGAL STANDARDS ............................................................................................ 5

    A.    Legal Standard for Judgment as a Matter of Law Under Rule 50 ................................. 5

    B.    Legal Standard for a New Trial Under Rule 59 ......................................................... 6

V.      ARGUMENT ........................................................................................................ 7

    A.    The Court Should Grant Judgment as a Matter of Law Under Rule 50(b) of No Induced Infringement and No Willfulness ................................................................................. 7

        1.    No Reasonable Jury Could Have Found that Amgen Believed Blincyto Causes "Non-Specific Release of Cytokines." ........................................................................ 8

        2.    No Reasonable Jury Could Have Found That Amgen Believed Blincyto Was "Trifunctional." .............................................................................................. 12

    B.    The Court Should Grant Judgment as a Matter of Law Under Rule 50(b) of No Direct Infringement ................................................................................................... 14

    C.    The Court Should Grant Judgment as a Matter of Law Under Rule 50(b) for Lack of Written Description and Lack of Enablement ............................................................ 15

        1.    Amgen Put Forth Unrebutted, Compelling Evidence to Support a Lack of Written Description; Lindis Responded with Nothing. ......................................................... 17

        2.    Amgen Put Forth Unrebutted, Compelling Evidence to Support a Lack of Enablement; Lindis Responded with Nothing. ......................................................... 24

        3.    That the Claims Are to Methods Does Not Avoid the Written Description or Enablement Requirements. ................................................................................ 28

    D.    In the Alternative, Amgen's Motion for a New Trial Should Be Granted. ................. 28

VI.     CONCLUSION ................................................................................................... 30

i

**Table of Authorities**

Page(s)

## Cases

*AbbVie Deutschland GmbH & Co., KG, v. Janssen Biotech Inc.*,
  759 F.3d 1285 (Fed. Cir. 2014) ................................................................ 20, 21, 22

*Amgen Inc. v. Hospira, Inc.*,
  336 F. Supp. 3d 333 (D. Del. 2018) .......................................................................... 6

*Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327 (Fed. Cir. 2019) ...................................... 6

*Amgen Inc. v. Sanofi*, 598 U.S. 594 (2023) ................................................ 15, 24, 26, 27

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) ........................................................... 15, 17, 19, 20

*Baxalta Inc. v. Genentech, Inc.*, 81 F.4th 1362 (Fed. Cir. 2023) ........................... 24, 27

*Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964 (Fed. Cir. 2021) ......................... 8

*Bd. of Regents v. Bos. Sci. Corp.*,
  C.A. No. 18-392-GBW, D.I. 368 (D. Del. June 5, 2024) ......................................... 6

*Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015) ............................... 7, 8, 12

*Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361 (Fed. Cir. 2013) ..................... 7, 14

*DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006) ................................. 7, 15

*Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171 (3d Cir. 1976) ................. 6

*Flash-Control, LLC v. Intel Corp.*, No. 2020-2141,
  2021 WL 2944592 (Fed. Cir. July 14, 2021) ......................................................... 23

*Fujikawa v. Wattanasin*, 93 F.3d 1559 (Fed. Cir. 1996) .............................................. 23

*Garrison v. Mollers N. Am., Inc.*, 820 F. Supp. 814 (D. Del. 1993) ........................... 29

*Halo Elecs., Inc. v. Pulse Elec., Inc..*, 281 F. Supp. 1087 (D. Nev. 2017) ................... 11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016) ............................................ 7

*Idenix Pharm. LLC v. Gilead Sciences Inc.*, 941 F.3d 1149 (Fed. Cir. 2019). .............. 22

*In re Wands*, 858 F.2d 731 (Fed. Cir. 1988) .............................................................. 24

*In re: Xencor, Inc.*, No. 2024-1870, 2025 WL 793963 (Fed. Cir. Mar. 13, 2025) ......... 28

*Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334 (Fed. Cir. 2007) ................ 6

*Juno Therapeutics, Inc. v. Kite Pharm., Inc.*, 10 F.4th 1330 (Fed. Cir. 2021). .......... 17, 19, 22

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) .................................. 6

*Lind v. Schenley Indus., Inc.*, 278 F.2d 79 (3d Cir. 1960) .......................................... 29

*Natera, Inc. v CareDx, Inc.*, No. 20-38-CFC,
  2025 WL 592760 (D.Del. Feb. 24, 2025) .............................................................. 17

*Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337 (Fed. Cir. 2019) ..................... 11

*Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888 (Fed. Cir. 1984) ........... 5, 14

**Table of Authorities**                                                         **Page(s)**

*PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342 (Fed. Cir. 2007)........................ 15

*Ponzini v. Monroe Cty.*, 789 F. App'x 313 (3d Cir. 2019) ...................................................... 6, 29

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315 (Fed. Cir. 2016). 5

*Shopify Inc. v. Express Mobile, Inc.*, No. 19-439,
  2024 WL 2260900 (D. Del. May 17, 2024)...................................................................... 29, 30

*SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323 (Fed. Cir. 2021) ................................. 7, 8, 12, 14

*Tech. Licensing Corp. v. VideoTek, Inc.,* 545 F.3d 1316 (Fed. Cir. 2008) .................................. 17

*TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278 (Fed. Cir. 2020) ......................................................... 7

*Teva Pharms. Int'l GmbH v. Eli Lilly & Co.*, No. 18-cv-12029,
  2023 WL 6282898 (D. Mass. Sept. 26, 2023) ................................................................... 28

*Tokash v. Foxco Ins. Mgmt. Servs., Inc.*, 548 F. App'x 797 (3d Cir. 2013) ................................... 6

*Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916 (Fed. Cir. 2004)..................... 19, 28

*Viatech Techs., Inc. v. Adobe Inc.*, No. 20-358,
  2024 WL 3444634 (D. Del. July 17, 2024) ............................................................................ 29

*WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959 (Fed. Cir. 2018) ............................................. 8

*Williamson v. Consol. Rail Corp.*, 926 F.2d 1344 (3d Cir. 1991) ................................................. 6

*Wyeth v. Abbott Lab'ys*, 720 F.3d 1380 (Fed. Cir. 2013) ............................................................. 28

**Statutes**

35 U.S.C. §112................................................................................................................................ 15

**Rules**

Fed. R. Civ. P. 50 ............................................................................................................................. 5

Fed. R. Civ. P. 59 ............................................................................................................................. 6

## I.     NATURE AND STAGE OF THE PROCEEDINGS

The jury returned a verdict against Amgen on December 17, 2024, finding direct, induced, and willful infringement, and finding that Amgen failed to prove the Asserted Patents[1] invalid. D.I. 335. Amgen moves for renewed judgment as a matter of law ("JMOL") under Rule 50(b) or, in the alternative, a new trial under Rule 59.

## II.     SUMMARY OF ARGUMENT

1.     JMOL of no induced infringement and no willfulness is warranted because the evidence presented at trial does not support the jury's verdict on inducement or willfulness. Both issues require proof of specific intent and active encouragement of infringement. Neither are present here. First, no reasonable jury could find specific intent to infringe. Every asserted claim requires that the recited antibody cause non-specific release of cytokines. Amgen offered overwhelming evidence that—even before the Asserted Patents ever issued—Amgen tested Blincyto extensively. In connection with safety assessments, Amgen authors published ten peer-reviewed papers, **all of which** concluded that Blincyto **did not cause** non-specific release of cytokines. Lindis's expert admitted that this conclusion appeared in the papers. Further, Dr. Lindhofer testified not only that his own presentations to Amgen confirmed that Blincyto was not trifunctional (as the '421 Patent requires), but also that Amgen's representatives told him that Blincyto did not infringe for that reason. Second, no reasonable jury could find active encouragement of infringement. The FDA agreed with Amgen's conclusions of no non-specific release of cytokines with Blincyto. Accordingly, the FDA-approved label does not mention non-specific release of cytokines, much less encourage the use of glucocorticoids for the purpose of

---

[1] The "Asserted Patents" are U.S. Patent Nos. 8,709,421 ('421 Patent) (JTX1) and 10,071,158 ('158 Patent) (JTX2). The "Asserted Claims" are '421 Patent claims 3, 8 and 15 and '158 Patent claims 1, 12, and 20.

reducing it.

2.     JMOL of no direct infringement is warranted because the evidence presented at trial does not support the jury's verdict of direct infringement. Lindis provided no substantial evidence that Blincyto is trifunctional. Lindis's failure to even attempt to identify any third function for Blincyto, outside of CD marker and target binding, renders its claims of direct infringement under the '421 Patent unsupported by any evidence—let alone substantial evidence.

3.     JMOL of invalidity based on lack of written description and enablement is also warranted. The written description and enablement requirements of §112 must be met by the specification, the contents of which were undisputed. Amgen presented conclusive expert evidence that the specification fails to satisfy the statutory requirements of §112. Tellingly, Lindis declined to put on a rebuttal case. The only evidence from Lindis on these questions confirms Amgen's arguments: Dr. Lindhofer agreed that while the claims covered use of a "practically limitless" number of bispecific antibodies, the specification does not correlate structure with the required function of causing non-specific release of cytokines. This Court has granted JMOL of invalidity under §112 when the non-movant's experts offered only generalities in rebuttal testimony. Lindis offered even less. Lindis's silence in rebuttal speaks volumes.

4.     In the alternative, the jury verdict on direct, induced, and willful infringement, and written description and enablement is at the very least "contrary to the great weight of the evidence," thus warranting the grant of a new trial under Rule 59.

III.    **STATEMENT OF FACTS**

The Asserted Patents are directed to complicated scientific concepts related to the immune system, including antibody structures, antibody functions, actions of various immune cells, and messenger compounds, called cytokines. Specifically, the Asserted Patents claim administering a

glucocorticoid with a bispecific antibody to reduce non-specific release of cytokines caused by the antibody. The antibodies also must have specific functional features.

The Asserted Patents distinguish between non-specific and specific release of cytokines. Specific release of cytokines happens when antibody treatments bind both a CD marker and a tumor antigen (also called the "target") on certain cells. JTr.[2] at 187:11-18, 188:18-22 (Lindhofer). The Asserted Patents are **not directed** to using glucocorticoids to reduce such specific release of cytokines, which was well-known (as Lindis admits). JTX1 at Abstract, 3:60-63, Claims 3, 8 and 15; JTX2 at Claims 1, 12 and 20; JTr. at 423:3-14 (Oleksowicz). The Asserted Patents' specification, and Asserted Claims, are instead directed **only** to using glucocorticoids to reduce **non-specific** release of cytokines, a phenomenon caused by certain unspecified antibodies when they are bound to CD markers but **not** bound to target cells. JTX1 at 3:60-63.

The '421 Patent claims methods of using bispecific antibodies of any structure, so long as they cause non-specific release of cytokines and have additional functional features (being immunostimulatory, binding to tumor antigens and CD markers, treating cancer, and being trifunctional). JTX1 at Claims 3, 8 and 15; JTr. at 1039:12-1041:1 (Marasco); JTr. at 423:3-8, 447:18-20 (Oleksowicz). The '158 Patent claims require bispecific antibodies with these functions and add a limitation that they also bind to markers called CD3 and CD19. JTX2 at Claim 1, 12, and 20; JTr. at 1041:5-1042:1 (Marasco); JTr. at 423:3-8, 447:18-20 (Oleksowicz). For Claims 12 and 20, these antibodies must also be a specific type of antibody fragment called an scFv. The Asserted Patents share the same specification, which discloses only two examples of bispecific antibodies and provides experimental data for only one of them. JTX1 at 2:65-67; JTr. at 1042:7-23, 1043:20-1044:5, 1044:25-1046:1 (Marasco). Neither example binds to both CD3 and CD19.

---

[2] Jury Trial Transcript is abbreviated as JTr.

JTr. at 1059:1-18 (Marasco). Neither of these two examples are an scFv. JTr. at 1041:5-1042:12 (Marasco). And both of these examples include what is known as an Fc region—a region Blincyto undisputedly lacks and a region identified as synonymous with "trifunctional." JTr. at 1045:21-1046:1 (Marasco), 553:19-554:3 (Heiss), 151:3-13, 312:4-13 (Lindhofer), 972:11-12, 978:22-979:20 (Buhmann), 336:12-22, 337:9-23 (Oleksowicz); JTX1 at 5:15-19, 53-67.

As to infringement, as a result of extensive clinical and laboratory testing—conducted for safety purposes—Amgen concluded Blincyto did not cause cytokine release unless both the CD marker and the target were bound (*i.e.*, Blincyto did not cause a non-specific release of cytokines). Amgen published these conclusions in ten peer-reviewed publications, most before the Asserted Patents even issued. JTr. at 1012:4-1013:1 (Marasco). At trial, Lindis's expert cherry-picked certain data points from four of these publications to argue that Blincyto causes non-specific release of cytokines. But she conceded on cross-examination that all of these publications concluded the opposite. JTr. at 459:3-460:7, 468:8-23, 471:7-21, 477:6-479:8 (Oleksowicz). Further, in an FDA report related to Blincyto's approval, five independent FDA scientists reviewed data (including data relied upon by Lindis's expert) and confirmed Amgen's conclusions. JTr. at 1032:18-1033:6 (Marasco), 459:20–460:10 (Oleksowicz). Accordingly, the FDA-approved Blincyto label has no mention of non-specific release of cytokines, much less an instruction to reduce it with glucocorticoids as claimed. *See, e.g.*, DTX198 (Label); JTr. at 424:8-11, 430:14-17 (Oleksowicz), 932:25-934:11 (Küfer), 1132:21-1133:12 (Marasco). Separately, the sole evidence presented of any third function meeting the '421 Patent's "trifunctional" requirement was the binding function of the Fc antibody region, which Blincyto undisputedly lacks. *See* JTr. at 151:3-13 (Lindhofer). Dr. Lindhofer also testified that years before this litigation Amgen representatives communicated their belief of non-infringement due to this absence of a third function. JTr. at

209:14-22.

As to invalidity for lack of written description and enablement, Dr. Lindhofer, co-inventor and CEO of Lindis, admitted that the claims include "practically limitless" bispecific antibody structures. JTr. at 231:11-19. The specification's deficiencies are undisputed: neither example in the specification is representative of the vast scope of claimed bispecific antibodies, and the specification does not disclose any structures commonly shared by antibodies that have each, or any, of the required functions. *See* JTX1[3] at 2:65-67; JTr. at 1042:2-23, 1047:25-1048:2, 1052:14-1053:8, 1054:13-1055:7 (Marasco). Practicing the claims would necessitate undue experimentation. JTr. at 1066:11-14, 1069:8-18 (Marasco). Amgen's technical expert detailed the specification's Section 112 deficiencies, which were unaddressed and uncontradicted during cross-examination. *See* Section V.C., infra. Lindis offered no rebuttal validity case (not even a "scintilla" of evidence) to the contrary.

## IV.    **LEGAL STANDARDS**

### A.    **Legal Standard for Judgment as a Matter of Law Under Rule 50**

JMOL is appropriate if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party" on an issue. Fed. R. Civ. P. 50. To prevail on renewed JMOL, the moving party "must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied by the jury's verdict cannot in law be supported by those findings." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1326 (Fed. Cir. 2016). "Substantial evidence" is "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp. v. Computervision Corp.*, 732

---

[3] The '421 Patent (JTX1) and '158 Patent (JTX2) share the same specification. JTr. at 1037:9-12 (Marasco). For efficiency, this brief will generally cite to the '421 Patent specification.

F.2d 888, 893 (Fed. Cir. 1984) (citations omitted).

JMOL "should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find" for the nonmovant. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). Even "where the movant b[ears] the burden of proof on an issue," JMOL is proper if "there is insufficient evidence for permitting any different finding." *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019) (citing *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976)). While JMOL motions should be granted sparingly, "a scintilla of evidence is not enough to sustain a verdict of liability." *Lightning Lube*, 4 F.3d at 1166. "The rule that a jury verdict is reviewed for support by 'substantial evidence' does not mean that the reviewing court must ignore the evidence that does not support the verdict. . . . That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334, 1345 (Fed. Cir. 2007).

### B.    Legal Standard for a New Trial Under Rule 59

A court may grant a new trial if it finds that that the jury's verdict is against the weight of the evidence. *Ponzini v. Monroe Cnty.*, 789 F. App'x 313, 315 (3d Cir. 2019); *see also Bd. of Regents v. Bos. Sci. Corp.*, C.A. No. 18-392-GBW, D.I. 368 (D. Del. June 5, 2024). Under Rule 59, the Court need not "view the evidence in the light most favorable to the verdict winner[.]" *Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 341 (D. Del. 2018). Also, "the trial judge can weigh the evidence and assess the credibility of witnesses." *Tokash v. Foxco Ins. Mgmt. Servs., Inc.*, 548 F. App'x 797, 802 n.4 (3d Cir. 2013) (internal citation omitted). The court may scrutinize the jury verdict more closely if the case involved complex subject matter. *See Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991) ("Where the subject matter of the litigation

is simple and within a layman's understanding, the district court is given less freedom to scrutinize the jury's verdict than in a case that deals with complex factual determinations. . . .").

## V.    <u>ARGUMENT</u>

### A.    The Court Should Grant Judgment as a Matter of Law Under Rule 50(b) of No Induced Infringement and No Willfulness.

The record lacks substantial evidence that Amgen had the requisite intent for induced infringement and willfulness. The undisputed evidence demonstrates that **Amgen subjectively and reasonably believed** that Blincyto neither (1) causes non-specific release of cytokines, a limitation in all Asserted Claims nor (2) is trifunctional, a limitation in the '421 Patent claims.

Both induced infringement and willfulness require specific intent, which is evaluated from defendant's subjective state of mind. *Commil USA, LLC v. Cisco Sys., Inc*., 575 U.S. 632, 642 (2015); *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 579 U.S. 93, 103–05 (2016); *SRI Int'l, Inc. v. Cisco Sys., Inc*., 14 F.4th 1323, 1330 (Fed. Cir. 2021); *TecSec, Inc. v. Adobe Inc*., 978 F.3d 1278, 1286 (Fed. Cir. 2020) ("The intent standard focuses on, and can be met by proof of, the defendant's subjective state of mind. . . ."). "[A]ctively induce[d] infringement" "requires intent 'to bring about the desired result,' which is infringement." *Commil*, 575 U.S. at 642. "A good-faith belief of non-infringement is relevant evidence that tends to show that an accused inducer lacked the intent required to be held liable for induced infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367-68 (Fed. Cir. 2013) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1307 (Fed. Cir. 2006)). Specific intent "requires more than just intent to cause the acts that produce direct infringement. Beyond that threshold knowledge, the inducer must have an affirmative intent to cause direct infringement." *DSU*, 471 F.3d at 1306. Similarly, to show willful infringement, a patentee must show "deliberate or intentional infringement." *SRI Int'l, Inc.*, 14 F.4th at 1330. "Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient,

for a finding of willfulness." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). Lindis had the burden of proving that Amgen acted despite a risk of infringement that was either known or so obvious that it should have been known to Amgen. *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018). Lindis failed to do so.

Despite bearing the burden of proof on induced and willful infringement, Lindis failed to put forth any evidence that Amgen believed that Blincyto caused non-specific release of cytokines or that Amgen believed Blincyto was trifunctional. The only evidence of Amgen's state of mind was that Amgen had a reasonably held, good-faith belief that Blincyto and its use did not meet those two claim limitations. As such, no reasonable jury could have found that Amgen had the "require[d] intent 'to bring about" "infringement" of the Asserted Patents. *Commil*, 575 U.S. at 642. Similarly, no reasonable jury could have found that Amgen was willful because it "deliberate[ly] or intentional[ly] infringe[d]." *SRI Int'l, Inc.*, 14 F.4th at 1330. Lastly, no reasonable jury could have found that Amgen took action intending to "encourage" its customers to infringe. *Id.* at 1329; *Commil*, 575 U.S. at 642. Accordingly, Amgen's request for JMOL of no induced infringement and no willfulness should be granted.

### 1. No Reasonable Jury Could Have Found that Amgen Believed Blincyto Causes "Non-Specific Release of Cytokines."

No evidence—much less substantial evidence—shows that Amgen subjectively believed that Blincyto causes non-specific release of cytokines. Instead, the undisputed evidence shows Amgen reasonably believed the opposite, as corroborated by the FDA and outside scientists.

The Asserted Patents are premised on reduction of **non-specific** release of cytokines—a limitation of all Asserted Claims. JTr. at 301:9-11 (Lindhofer) (admitting "non-specific cytokine release is the problem that [his] invention is addressing"), 213:4-9 (Lindhofer) (admitting his "invention is directed to methods for reducing or eliminating the nonspecific release of

cytokines"); JTX1 at Abstract ("The present invention relates to methods for reducing or eliminating the non-specific release of a cytokine . . ..").

There is no dispute that specific and non-specific release of cytokines are "not the same." JTr. at 266:23-267:1 (Lindhofer). **Non-specific** release of cytokines can only occur when certain antibodies are bound to the CD marker, but not bound to the target. D.I. 95 at 2; JTr. at 187:11-13 (Lindhofer) ("We call it nonspecific release of the cytokines because here, there's no tumor target cell involved."). By contrast, **specific** release of cytokines is release when the antibody is bound to both CD marker and the target. JTr. at 322:3-9 (Oleksowicz) ("Specific cytokine release is when both arms of the antibody are bound, the T cell binds to the T cell arm and the tumor cell binds to the tumor cell arm."). Use of glucocorticoids with an antibody that causes only **specific** cytokine release (even if such specific release may cause cytokine release syndrome) does not and cannot infringe the Asserted Claims. JTX1 at Claims 3, 8 and 15; JTX2 at Claims 1, 12 and 20; JTr. at 422:20-423:14 (Oleksowicz) (admitting that to infringe "[t]he antibody has to be showing non-specific release of cytokines" and if it "does not cause non-specific release of cytokines, none of the asserted patent claims would be met"). The distinction is important: the undisputed evidence was that Amgen scientists, unaffiliated scientists, and the FDA concluded that Blincyto causes **specific** release of cytokines, which for Blincyto may include cytokine release syndrome, but Blincyto does **not** cause non-specific release of cytokines. JTr. at 1012:4-1013:1, 1013:9-1014:23 (Marasco), 459:13–460:1, 482:11-15, 483:12-18, 485:4-7, 497:7-20 498:7-13 (Oleksowicz).

Amgen tested Blincyto repeatedly, both in the laboratory and clinically, and concluded from all of the data, long before this litigation, that Blincyto only causes specific release of cytokines. Amgen scientists published ten peer-reviewed papers—eight predating the issuance of the first of the Asserted Patents. **All** concluded that Blincyto only causes specific release of

cytokines. JTX66 (Klinger 2012); DTX139 (Baeuerle & Reinhardt 2009); DTX143 (d'Argouges 2009); DTX145 (Frankel & Bauerle 2013); DTX142 (Brischwein 2007); DTX146 (Goebeler & Bargou 2016); DTX151 (Nagorsen & Bauerle 2011); JTX75 (Nagorsen 2012); DTX149 (Klinger 2016); JTX80 (Brandl 2007); *see also* JTr. at 1012:4-1013:1 (Marasco). Lindis's expert, Dr. Oleksowicz, confirmed that "each one of these publications concluded that Blincyto does not activate the T cell without binding to the target cell," *i.e.*, does not cause non-specific release of cytokines. JTr. at 498:7-13 (Oleksowicz). These are Amgen's publications, a point Lindis underscored through its expert and in closing, and thus, they reflect Amgen's belief. JTr. at 1518:8-18 (Lindis closing) (Amgen is "relying on articles that were written by folks that are affiliated with Amgen"), 504:18-511:22 (Oleksowicz) (same). Scientists in industry—unaffiliated with Amgen—concluded Blincyto only causes specific release of cytokines and this was also undisputed. JTr. at 482:11-15, 483:10-18, 485:4-7, 497:7-20 (Oleksowicz), 1013:9-1014:23 (Marasco); DTX269 (Shah 2023), DTX252 (Feucht 2016), DTX258 (Huo 2021), DTX257 (Huels 2015).

Lindis's expert further admitted that, in the course of the FDA review for approval of Blincyto, five independent FDA scientists concluded that Blincyto does not cause T cell proliferation absent binding the target. JTX79 at 27, 29 (FDA report) ("No T cell proliferation was noted when PBMC depleted of B cells were treated with blinatumomab."); JTr. at 459:13–460:1 (Oleksowicz) (agreeing that the FDA reviewers said "there was no T cell proliferation absent the target with Blincyto"). It is undisputed that T cell proliferation is a proxy for "release of cytokines," so when there is no T cell proliferation absent the target, that means no non-specific release of cytokines. JTr. at 1032:22-1033:6 (Marasco) (explaining that "[n]o T cell proliferation" means in plain English "[t]hat Blincyto only causes specific release of cytokines and does not cause the non-specific release of cytokines"); 345:3-18 (Oleksowicz) (testifying that T cell "proliferation is

dependent on cytokine–cytokine production"). Dr. Oleksowicz testified that she "did not disagree" with the FDA reviewers' conclusion that Blincyto does not cause non-specific cytokine release. JTr. at 459:13–460:10. That unaffiliated scientists, including at the FDA, concluded the same as Amgen demonstrates that Amgen's belief was reasonable.

Further uncontradicted witness testimony confirmed Amgen's belief. Dr. Peter Küfer, the inventor of Blincyto and Vice President for BiTE technology at Amgen, testified about his "30 years working with Blincyto, and all the testing that [he's] personally conducted"—much of which was conducted in preparation for clinical testing to understand "what [his] compound does and – doesn't [do]." In those 30 years of testing, he had not "seen any data that Blincyto causes non-specific release of cytokines." JTr. at 861:7-12, 896:1-3, 896:10-23, 901:17-902:10. These experiments had been "done many times," "reproduced and reproduced," and the results shared with the public in publications. JTr. at 897:4-9. The Federal Circuit has found such evidence from a senior executive "critical to the question of whether [the defendant] had the required mental state" for induced infringement and willfulness. *Omega Patents, LLC v. CalAmp Corp.*, 920 F.3d 1337, 1352 (Fed. Cir. 2019); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 281 F. Supp. 3d 1087, 1093-95 (D. Nev. 2017) (giving significant weight to defendant's engineer with "30 years of experience in and knowledge of the relevant field"). Dr. Küfer's cross-examination solidified his data-based conclusion that Blincyto does not cause non-specific release of cytokines: "Q. And that's because of your theory that Blincyto never causes non-specific cytokine release, correct? A. No, it's not a theory, it's the data that we have over and over again." JTr. at 946:14-24.

Blincyto's FDA-approved label also confirmed Amgen's belief that Blincyto does not cause non-specific release of cytokines. Blincyto's label does not include anything about "**non-specific** release of cytokines" or using glucocorticoids to reduce it. DTX198 (Label). The Blincyto

label refers to cytokine release syndrome—caused by specific cytokine release—undisputedly long known and long treated with glucocorticoids before the Lindis patents. JTr. at 885:24-886:18 (Küfer) (stating that Cytokine Release Syndrome indicated in the Blincyto label is caused by "specific cytokine release . . . [which] is the only type of cytokine release that can occur with Blincyto"), 1141:19-25 (Marasco) ("[I]t's specific release of cytokines and that's what it's approved for."). And as admitted by Lindis's expert, the Blincyto label nowhere says, as the patent requires, that cytokine release syndrome or any cytokine release is non-specific. JTr. at 424:8-11, 430:14-17 (Oleksowicz) (label does not say that cytokine release syndrome is caused by non-specific release); *see also* JTr. at 1132:21-1133:12 (Marasco) (label does "not include the non-specific release of cytokines"), 885:24-886:18 (Küfer). The Blincyto label does not and cannot encourage use of glucocorticoids to reduce non-specific release of cytokines.

Despite bearing the burden of proof, Lindis failed to put forth any evidence that Amgen believed that Blincyto caused non-specific release of cytokines. The only evidence of Amgen's state of mind was that Amgen had a reasonably held, good-faith belief that it did not infringe because Blincyto did not cause non-specific release of cytokines. Accordingly, Amgen's request for JMOL of no induced infringement and no willful infringement should be granted because no reasonable jury could have found that Amgen had the required intent to bring about infringement, intentionally or deliberately infringed, or encouraged others to infringe. *Commil*, 575 U.S. at 642; *SRI Int'l, Inc.*, 14 F.4th at 1329, 1330.

### 2. No Reasonable Jury Could Have Found That Amgen Believed Blincyto Was "Trifunctional."

Amgen had a second reason for its belief of non-infringement—that Blincyto is not trifunctional, which is a requirement of the '421 Patent Asserted Claims. The evidence established that Amgen believed it did not infringe on this basis and Lindis introduced nothing to the contrary.

Undisputedly, Blincyto does not have an Fc region. JTr. at 406:16-17 (Oleksowicz). Based on the lack of Fc region, Amgen believed that Blincyto was not trifunctional, as Dr. Lindhofer confirmed. During the 2013-14 licensing communications, Amgen explained its belief that Blincyto did not infringe on that basis. JTr. at 209:14-22 (Lindhofer) (Amgen's "IP lawyer . . . said, No, we -- we are not convinced that we are really covered by your patent because, you know, we have no Fc region . . ..").

Amgen's belief comported with Dr. Lindhofer's own. During their communications, Dr. Lindhofer represented to Amgen that a trifunctional antibody contained an Fc region that can bind accessory cells. He distinguished trifunctional antibodies, like Lindis's Removab, from bispecific BiTE antibody structures, like Blincyto. JTX28 at 5; JTr. at 209:14-22, 244:23-245:1, 263:15-265:3 (Lindhofer) (admitting Amgen's BiTE (Blincyto) has no "Fc structure"), 592:18-593:8 (Brea-Krueger), 390:19-23 (Oleksowicz) ("Blincyto [] is a single-chain variable fragment, or BiTE"). Dr. Lindis's presentation to Amgen, reproduced in part below, states Lindis's "Trifunctionals Differ Significantly" from Amgen's BiTEs, and shows the BiTE lacked a Fc region, whereas the trifunctional antibody contained an Fc region bound to an accessory cell. JTX28 at 5; JTr. at 244:23-245:1 (Lindhofer) (discussing JTX28 at 5 "distinguishing trifunctionals, the far-right side antibody from conventional and bispecific antibodies").



TRIFUNCTIONALS DIFFER SIGNIFICANTLY FROM CONVENTIONAL mAbs AND BISPECIFICS

This Court construed trifunctional as a third function "in addition to the two specific binding functions" (D.I. 95 at 2). And at trial, Lindis did not present any evidence that Blincyto had a third function, much less that Amgen believed it met this limitation. The sole evidence at trial of the third function was the binding of the Fc region to accessory cells, in testimony of co-inventors Drs. Heiss and Lindhofer, Lindis's Dr. Buhmann, and Lindis's technical expert. *See, e.g.*, JTr. at 553:19-554:3 (Heiss) ("The third function, which was very unique, is that [] Fc part is able to bind accessory cells to activate, complement, and so to induce a very effective tumor cell—cell killing . . . ."), 151:3-13 (Lindhofer) ("[T]he function of the Fc region" is "the reason why we – we called it trifunctional antibody"), 312:4-13 (Lindhofer) (the invention has "the Fc region."), 972:11-12 (Buhmann) ("We characterize the antibody to be trifunctional if -- if there is a complete Fc part."), 978:22-979:20 (Buhmann) (admitting Blincyto's "BiTE format lacks the third function of the trifunctional bispecific antibody"), 336:12-22 (Oleksowicz) ("Let's do the trifunctional antibody . . . the T cell is going to bind the CD3 arm, the tumor cells are CD19, right. And then what's going to happen is, yeah, you'll get activation of your Fc receptors down in the tail and these will activate NK cells and macrophages . . .."); *see also* JTX1 at 5:15-19, 53-67.

No reasonable jury could have found that Amgen believed Blincyto was trifunctional. JTr. at 209:14-22 (Lindhofer); *Perkin-Elmer Corp.*, 732 F.2d at 893. JMOL of no induced infringement and no willful infringement of the '421 Patent should be granted. *Commil*, 575 U.S. at 642; *SRI Int'l, Inc.*, 14 F.4th at 1329, 1330.

## B. The Court Should Grant Judgment as a Matter of Law Under Rule 50(b) of No Direct Infringement

Given Lindis's complete lack of evidence that Blincyto is a "trifunctional" bispecific immunostimulating antibody, as required by all claims of the '421 Patent, no reasonable jury could have concluded direct infringement of those claims. As noted above, based on the Court's claim

construction of "trifunctional," Lindis must show that Blincyto has "a function in addition to the two specific binding functions." D.I. 95 at 2. But despite repeated questions by Lindis's counsel, Dr. Oleksowicz failed to identify any third function, and only provided legally insufficient conclusory testimony. JTr. at 393:25-394:23 ("Yes, Blincyto is a bispecific T cell-stimulating trifunctional antibody."); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1351, 1355 (Fed. Cir. 2007) (affirming JMOL of noninfringement where expert's testimony "in conclusory terms" "did not constitute sufficient proof of infringement"). As explained above, the only third function identified was the binding of the Fc region, which Blincyto indisputably does not have. *See* Section V.A.2, supra. Accordingly, Blincyto's use neither directly infringes the '421 Patent claims, nor could Amgen have induced such infringement. *DSU*, 471 F.3d at 1305 (A patentee may only establish inducement under 35 U.S.C. § 271(b) if it can prove the accused "actively and **knowingly** aid[ed] and abett[ed] another's direct infringement.") (emphasis added).

### C.     The Court Should Grant Judgment as a Matter of Law Under Rule 50(b) for Lack of Written Description and Lack of Enablement

Section 112 requires that "the specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 USC §112. It "limits patent protection to those who actually perform the difficult work of 'invention'" and prevents an overreach in which the breadth of the claims exceeds the "complete and final invention with all its claimed limitations" that was disclosed to the public. *Ariad Pharm., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1353 (Fed. Cir. 2010). The broader the claims, the more that must be described. *Id.* at 1358. By the same token, "[t]he more one claims, the more one must enable." *Amgen Inc. v. Sanofi*, 598 U.S. 594, 610, 613 (2023). The trial record permits only one conclusion: Lindis overreached here in the scope of its Asserted Claims.

There is no dispute that the Asserted Claims cover use of a "practically limitless" genus of bispecific antibodies. JTr. at 231:11-19 (Lindhofer) (possible antibodies could be "practically limitless"), 229:13-21 (Lindhofer) ("A very high number" of antibodies with CD markers.), 1047:10-13 (Marasco). The Asserted Claims too are explicit that the antibodies must perform certain functions (causing non-specific release of cytokines, being immunostimulatory, binding to tumor antigens and CD markers (CD19 and CD3 for the '158 Patent), treating cancer, and, for the '421 Patent, being trifunctional). But they lack any structural limitations that would delineate which amongst the "practically limitless" genus of bispecific antibodies will have these functional attributes. JTX1 at Claims 3, 8 and 15; JTX2 at Claim 1, 12, and 20; JTr. at 1039:12-1042:1 (Marasco), 423:3-8, 447:18-20 (Oleksowicz).

The specification's contents are not disputed. The specification does not reflect that the inventors actually invented or were in possession of the full scope of the method of using this functionally limited genus of possible bispecific antibodies with glucocorticoids to reduce nonspecific release of cytokines. And the specification is devoid of information to permit making and using the full scope of the claimed methods without extensive experimentation to determine which might have the claimed functions and which do not. While the claims cover a great deal, the specification describes little. The specification has:

- Only two examples of bispecific antibodies and experimental data for only one of them. JTX1 at 2:65-67; JTr. at 1042:7-23, 1043:20-1044:5, 1044:25-1046:1 (Marasco).

- No structural features of the bispecific antibodies beyond mere basic information—the skilled person could not even reproduce the two examples. JTr. at 1046:25-1053:23 (Marasco), 272:8-13 (Lindhofer).

- No correlation of a particular bispecific antibody structure to the claimed functions. JTr. at 272:2-6 (Lindhofer), 1047:17-1053:23 (Marasco).

- No examples of bispecific immunostimulating antibodies without an Fc region that have the claimed functions. JTr. at 1045:21-1046:1 (Marasco), 272:8-13 (Lindhofer).

- No bispecific antibody species structurally similar to Blincyto. JTr. at 1043:20-1044:5,

1045:21-1046:1 (Marasco), 273:6-16, 218:4-219:14 (Lindhofer).

Lindis did not and could not dispute the salient facts about what was in the specification. Indeed, Lindis opted against putting on any witnesses in rebuttal. JTr. at 1352:6-1355:18 (Lindis counsel).

JMOL is appropriate here. After Amgen presented evidence that justified a conclusion of invalidity, Lindis had "the burden of going forward with evidence" to rebut that conclusion. *Tech. Licensing Corp. v. VideoTek, Inc.,* 545 F.3d 1316, 1327 (Fed. Cir. 2008); *Natera, Inc. v CareDx, Inc.*, 2025 WL 592760 at *5 (D. Del. Feb. 24, 2025) (same). In *Natera*, JMOL was granted for lack of written description where—relying on the presumption of validity—the patentee set forth "conclusory" expert testimony to rebut defendant's evidence of lack of written description. *Natera, Inc.*, 2025 WL 592760 at *6 (citing *Juno Therapeutics, Inc. v. Kite Pharma, Inc*., 10 F.4th 1330, 1336-37 (Fed. Cir. 2021) (rejecting district court's reliance on expert testimony that was "far too general")). Here, Lindis did even less—it provided no rebuttal testimony. While Amgen bore the burden of proof, Lindis's lack of evidence mandates JMOL of invalidity because "there is insufficient evidence for permitting any different finding." *Hospira*, 944 F.3d at 1333. As detailed below, JMOL of lack of written description and enablement should be granted.

### 1. Amgen Put Forth Unrebutted, Compelling Evidence to Support a Lack of Written Description; Lindis Responded with Nothing.

Each of the Asserted Claims recite a functionally-defined genus of bispecific antibodies. For such genus claims, the Federal Circuit has ruled—repeatedly and consistently—that sufficient written description of a genus requires "either a representative number of species falling within the scope of the genus or structural features common to the members of the genus so that one of skill in the art can 'visualize or recognize' the members of the genus." *Ariad*, 598 F.3d at 1350. The unrebutted trial evidence confirms that—under either test or any other test—no reasonable jury could have concluded that Lindis satisfied the written description requirement for the Asserted

Claims.

### a. The Asserted Patents Fail to Disclose Ariad's "Structural Features Common to Members of the Genus."

With respect to structural features, the Asserted Claims cover administering glucocorticoids in conjunction with a functionally-defined, "practically limitless" genus of bispecific antibodies. The Asserted Claims explicitly require the functional features shown below:

| Functionality | '421 Patent | '158 Patent |
|---|---|---|
| **causing non-specific cytokine release** | X | X |
| **being immunostimulatory** | X | X |
| **binding one of 41 tumor antigens and one of 8 markers** | X | |
| **binding to the CD19 antigen and CD3 marker** | | X |
| **having the ability to treat cancer** | X | X |
| **being trifunctional** | X | |

JTX1 at Claims 3, 8 and 15; JTX2 at Claim 1, 12, and 20. Dr. Marasco explained the requirement for each in detail. JTr. at 1039:5-1042:1 (Marasco). There was no rebuttal and no dispute.

It was also undisputed that the specification discloses no specific structural features, much less correlation of any particular structure, to these required functional features. JTr. at 1046:25-1053:23 (Marasco). Dr. Marasco testified that "without structure, you can't determine function" and "because there's no structural information, there's no way to determine, you know, what features of the antibodies would lead to non-specific release of cytokines, how you would be able to treat cancer, whether they're immunostimulating." JTr. at 1052:14-1053:8 (Marasco). Lindis neither disputed nor cross-examined Dr. Marasco on the requirement of these functional features or the specification's lack of correlation to any structure.

By way of example, for the functional requirement that the claimed antibody causes non-specific release of cytokines, the specification discloses merely one single example of the "practically limitless" genus, and provides minimal structural information for that example—a "Y shape molecule with a biologically active Fc region." JTr. at 1046:25-1047:9 (Marasco). The

specification of the Asserted Patents includes no distinguishing characteristics of the antibodies to identify those which cause non-specific release of cytokines and retain the other required functionalities, much less those for which use of glucocorticoids would reduce it. Even Dr. Lindhofer admitted that his "patent **doesn't correlate** any particular structure to the [function of] non-specific release of cytokines." JTr. at 272:2-6 (Lindhofer). That is particularly problematic here. There are countless different bispecific antibody structures, including many without an Fc region, and as Dr. Lindhofer admitted, "bispecific antibodies can have different effects on the immune system if they have different structures." JTr. at 273:17-24 (Lindhofer), 1045:21-1046:1 (Marasco) (testifying that the Asserted Patents do not disclose any examples without Fc.). The result is that the skilled person cannot distinguish bispecific antibodies that fall within the claimed methods from those that do not. JTr. at 1052:14-1053:8 (Marasco). That is plainly insufficient written description. *See Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 923 (Fed. Cir. 2004) (requiring description of compound, which was a part of a claimed method, sufficient to "distinguish infringing compounds from non-infringing compounds, or infringing methods from non-infringing methods.").

The Asserted Patents simply identify a "problem to be solved while claiming all solutions to it . . . cover[ing] any [antibody] later actually invented and determined to fall within the claim's functional boundaries." *Ariad*, 598 F.3d at 1353. In *Ariad*'s progeny, the Federal Circuit has repeatedly found this type of overreach of functional genus claims to violate the written description requirement. In *Juno Therapeutics*, the patent at issue "not only fail[ed] to disclose structural features common to scFvs capable of binding specific targets, it also fail[ed] to disclose a way to distinguish those scFvs capable of binding from scFvs incapable of binding those targets." 10 F.4th at 1339. Those precise deficiencies (and more) are present here where the Asserted Claims cover

scFvs that bind specific targets (and have the other claimed functions). Similarly, in *AbbVie Deutschland GmbH & Co.*, there was insufficient written description where the claims covered a broad genus of antibodies defined by function but the specification only described one species and provided no correlation between the antibody's structure and the claimed function. *AbbVie Deutschland GmbH & Co. v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1301 (Fed. Cir. 2014). These controlling cases compel a finding of no written description on the record evidence here.

### b.    The Asserted Patents Fail to Describe *Ariad's* "Representative Number of Species Falling within the Scope of the Genus"

With respect to the representative species test, no reasonable jury could have concluded that the Asserted Patents describe a "representative number of species" falling within the scope of the broad genus of bispecific antibodies to be administered in the claimed methods. *Ariad*, 598 F.3d at 1350. The specification discloses only two examples of bispecific antibodies, Lindis's antibody, Removab (anti-EpCAM×anti-CD3), and an anti-HER2×neu×anti-CD3 having the same Y-shape structure with an Fc region, with experimental data reported on only one, Removab. JTX1 at 2:65-67; JTr. at 1042:7-23, 1043:20-1044:5, 1044:25-1046:1 (Marasco).

As Dr. Marasco explained, these two disclosed antibodies (only one with data) cannot be "representative" of the vast universe of functionally-defined antibodies encompassed by the claimed methods—particularly without a way to associate structure with function. JTX1 at 2:65-67; JTr. at 1042:7-23, 1054:2-1058:16 (Marasco) (not representative of the full scope of the '421 Asserted Claims), 1059:1-21 (Marasco) (same as to the '158 Asserted Claims). The lack of representative species is particularly striking for the '158 Asserted Claims, which require a CD19 x CD3 antibody. As Dr. Marasco explained, the specification does not disclose such an antibody **at all**, much less one that is immunostimulating and causes non-specific release of cytokines. JTr. at 1057:5-20, 1059:11-21 (Marasco). The only examples disclosed in the '158 Patent specification

20

(the two noted above) fall outside the scope of the Asserted Claims entirely.

Further illustrating this failure, while Lindis argued that the claims covered Blincyto, the specification lacks any antibody species structurally similar to Blincyto. It was undisputed that Blincyto, which has no Fc region, has a "different structure" than Removab (catumaxomab) and the other antibody example in the patents, which do have an Fc. JTr. at 218:4-219:14 (Lindhofer), 408:17-20 (Oleksowicz); 1045:21-1046:1, 1059:1-21 (Marasco). In fact, as explained above, Dr. Lindhofer acknowledged that his trifunctional antibodies "differ significantly" from BiTEs like Blincyto. JTX28 at 5; JTr. at 244:23-245:1 (Lindhofer); *see also* JTr. at 978:22-979:9 (Buhmann) (considering trifunctional bispecific antibodies and BiTEs to be "two completely different classes of molecules").

The Federal Circuit addressed this situation in *AbbVie*, which held that where a patent claims structurally diverse antibodies but fails to "at least describe some species representative of antibodies that are structurally similar to [accused product]," the patent lacks written description. 759 F.3d 1301 ("[T]here is no evidence to show any described antibody to be structurally similar to, and thus representative of, [the accused product] Stelara."). Just as in *AbbVie*, the claims here undisputedly encompass structurally diverse antibodies (*i.e.*, different antibody formats such as an intact antibody with Fc region versus a fragment like an scFv without). JTX1 at 5:1-19; JTr. at 230:2-231:19 (Lindhofer) (admitting that by changing the "variables in making these antibodies in [the Asserted Patents]," including the "shapes or structures of the antibodies" there are "practically limitless" antibodies claimed in the Asserted Patents). And just as in *AbbVie*, there is no dispute that the patent specification lacks any species that is structurally similar to the accused antibody. JTr. at 1069:13-15 (Marasco) ("There's no disclosure of any bispecific antibody, for example, without an Fc that causes non-specific release of cytokines."). Dr. Lindhofer agreed: the

Asserted Patents do not "have an example of a non-specific release of cytokines for any antibody format or structure except for [his] anti-EpCAM, antiCD3" which has an Fc region. JTr. at 273:6-16. The result here should be the same as in *AbbVie*: no written description exists. *AbbVie*, 759 F.3d at 1301.

Another example of this description gap is the required functionality of binding to one of 41 different tumor antigens and one of 8 CD markers, as the '421 Patent claims require, and the binding to one specific tumor antigen and one specific CD marker as the '158 patent claims require. The Federal Circuit addressed this situation in *Juno Therapeutics*, where a claimed method required use of an scFv to bind to a CD19 target and the patent disclosed only two examples. *Juno*, 10 F.4th 1330 at 1338.   There, the Federal Circuit explained that to satisfy written description, "the inventors needed to convey that they possessed the claimed invention, which encompasses all scFvs, known and unknown, as part of the claimed CAR that bind to a selected target." *Id.* The *Juno* court found written description inadequate, reasoning that "even accepting that scFvs were known and that they were known to bind, the specification provides no means of distinguishing which scFvs will bind to which targets." *Id.* Because the same deficiencies in the specification are present here, the Asserted Patents lack written description.

### c.    The '158 Patent Fails the "Blaze Marks" Test: Written Description Requires More than "Laundry List" of Disclosures

Amgen additionally presented unrebutted evidence that the '158 Patent fails the "blaze marks" test. For claims that recite a subset of a broader genus disclosed in the specification, written description has been described as requiring "blaze marks which single out particular trees in a forest," rather than generally "pointing to trees." *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149 (Fed. Cir. 2019) (internal quotation marks and citations omitted).

As noted above (and as confirmed by Dr. Marasco), the '158 Patent does not disclose a

single bispecific antibody that meets that limitation. JTr. at 1052:14-1053:8, 1058:21-1059:18 (Marasco). At best, it mentions CD19 twice, each time appearing in a lengthy list of possible tumor antigens, whereas CD3 appears in a **separate** list of eight possible CD markers. JTX2 at 2:57-3:3. This is a "laundry list" of different cancer antigens that "one would like to develop an antibody to as an anticancer therapeutic." JTr. at 1059:24-1060:17 (Marasco). Nowhere is the combination of the CD19 tumor antigen combined with the CD marker singled out in this forest of possibilities. JTr. at 232:25-233:2 (Lindhofer) (admitting there's no data "[i]n this patent" for a bispecific antibody with a CD19 and a CD3), 234:20-25 (Lindhofer) (admitting he "never made a single-chain variable fragment . . . with a CD3 and CD19"), 1041:5-1042:12 (Marasco) ("[T]here's no data in the '158 Patent regarding an antibody – an scFv antibody that combines CD19 and CD3"), 1052:14-1053:23 (Marasco) (The specification provides "no structural information on how you could determine if [scFvs] bind to CD19 or CD3.").

Thus, the only way to derive from the specification antibodies that bind both CD19 and CD3 is to select CD19 from one list of more than 40 possible tumor antigens and—separately—to select CD3 from another list of eight possible CD markers. JTr. at 1059:24-1060:17 (Marasco). The specification does not teach a connection between CD19 and CD3 to guide a POSA towards such a specific selection. *Id.* Further, as explained above, there is nothing in the specification to guide the POSA in distinguishing CD19 x CD3 antibodies that would have the claimed functional requirements from those that do not. *Id.*; *see also* JTr. at 1058:21-1059:4, 1059:24-1060:17 (Marasco) ("You can't tell from this information which one to choose" or "if they're immunostimulating," "if they can be used to treat cancer," "if they're going to cause non-specific cytokine release."); *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1571 (Fed. Cir. 1996) (mere lists do not suffice for written description in the absence of blaze marks); *Flash-Control, LLC v. Intel*

*Corp.,* 2021 WL 2944592, at *3 (Fed. Cir. July 14, 2021) ("pointing to an 'amalgam of disclosures' from which an artisan could have created the claimed invention does not satisfy [the written description] requirement."). JMOL should be granted for lack of written description of the '158 Patent.

### 2. Amgen Put Forth Unrebutted, Compelling Evidence to Support a Lack of Enablement; Lindis Responded with Nothing.

A patent must disclose sufficient information to enable persons of ordinary skill in the art as of the effective filing date to make and use the full scope of the claimed invention without undue experimentation. *Sanofi,* 598 U.S. at 610 (If a patent claims an entire class, it must enable the entire class); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) (disclosing factors to consider); *Baxalta Inc. v. Genentech, Inc.*, 81 F.4th 1362, 1367 n.4 (Fed. Cir. 2023) (reaffirming consistency of *Wands* analysis with the standard set by the Supreme Court in *Sanofi*). "Enablement is a question of law based on underlying factual findings." *Baxalta* at 1365. Amgen presented a *prima facie* (and clear and convincing) case of lack of enablement. Lindis had no response. The only conclusion from the evidence is a lack of enablement.

The evidence for each *Wands* factor fell in Amgen's favor:

**The nature of the invention and breadth of the claims:** Lindis's expert admitted, "[t]he claims require both premedication with a glucocorticoid and administration of the antibody." JTr. at 447:18-20 (Oleksowicz); *see also* JTr. at 1065:16-1066:10 (Marasco). The claims cover use of glucocorticoids with a "practically limitless" broad genus of antibodies. *See supra* V.C; JTr. at 1064:21-1065:6 (Marasco) ("[T]he breadth of the claims are enormous[,] it's making bispecific antibodies to treat cancer, are immunostimulating, cause non-specific release of cytokines, are trifunctional . . . against 8 different CD molecules, markers, and 41 different tumor antigens.").

**The state of the prior art, the relative skill of those in the art, and the predictability**

24

**of the art**:  at the time of the alleged invention, it was undisputed that the art was highly complex and unpredictable, as bispecific antibodies were not off-the-shelf and using them to treat cancer had poor success rates. JTr. at 858:13-19 (Küfer) ("At that time, the scientific -- the scientific community actually almost 15 years worked on getting drugs out of bispecific antibodies that recruit T cells to kill cancer cells. And the belief in this community really decreased, so the general belief at that time was, okay, it was a nice idea but never -- we'll never become a drug."), 1067:16-23 (Marasco), 1363:2-5 (Stroehlein). The Parties agreed that the skill of those in the art was relatively high. *See* D.I. 333 (Final jury instructions) at 38-39. The art was also unpredictable—Dr. Lindhofer testified that "working in antibodies and antibody science is not a predictable field." JTr. at 285:18-25; *see also* JTr. at 1068:7-14 (Marasco) ("While use of glucocorticoids was well established to treat a cytokine release, it was unpredictable how the functional features of bispecific antibodies would relate to that. . . ."); DTX38 at 690-91 (published in 2002; "To date, however, no T-cell-recruiting bispecific format antibody has progressed very far in clinical trials.").

**The amount of direction or guidance disclosed in the patent and the presence or absence of working examples in the patent:**  the specification has only one working example with experimental data, for only one antibody, the anti-EpCAM×anti-CD3 (Removab), and only one glucocorticoid, dexamethasone. JTr. at 1069:8-18, 1042:17-1046:1 (Marasco)**,** 273:6-16 (Lindhofer). Yet, there's not even enough information disclosed to reproduce that one antibody. JTr. at 1046:25-1048:11 (Marasco). There is no example of any bispecific antibody without an Fc region that causes non-specific release of cytokines. JTr. at 1069**:**8-18 (Marasco). "The specification provides only "a general disclosure with minimum guidance on how to practice the claims, there's no guidance provided on which bispecific antibodies have which functional features of the claims and the POSA is left to enormous trial and error to find bispecific antibodies that

meet all the elements of the claims to practice this method." JTr. at 1069:21-1070:4 (Marasco).

**The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques:** the alleged invention here requires "a very high degree" of experimentation. JTr. at 1066:11-14, 1069:8-18 ("[T]o meet those functional requirements would require an enormous amount of experimentation for which the claim of patents provide no guidance."), 1070:10-1071:13 ("There's extensive . . . trial and error experimentation that would be required."), 1071:14-1074:13 (The "inconsistent results" between the Trion Report and the specification "require much more experimentation"), 1073:23-1074:3 (Marasco) (the EMA Assessment shows that it would require additional experimentation "to find glucocorticoid type, dose, timing, route of administration that would affect non-specific release of cytokines without jeopardizing the antitumor activities"); DTX335 at 18; DTX201 at 13, 45; *Sanofi*, 598 U.S. at 594.

In view of these undisputed factors, Amgen's expert concluded that "it would take undue experimentation" to practice the full scope of the Asserted Claims. JTr. at 1070:10-1074:20 (Marasco). Lindis did not counter any of this evidence. And, Lindis did not counter the evidence in the EMA Assessment and the Trion Report that the claimed method did not work for Lindis's own antibody. JTr. at 1071:14-1072:21 (Marasco) (testifying that based on the contradictory results of Trion, "the quantity of experimentation would be high"), 1072:23-1074:13 (testifying that based on the EMA Assessment's conclusion, "an additional set of experimentation to find glucocorticoid type, dose, timing, route of administration that would affect non-specific release of cytokines without jeopardizing the antitumor activities" would be required).

At best, Lindis resorted to attorney argument, not evidence, that the Asserted Claims are enabled because the claimed methods worked with Blincyto: "[i]f the Dr. Lindhofer invention doesn't work, then why have they been selling it for 10 years as part of the Blincyto product?".

JTr. at 1521:25-1522:13 (Lindis Closing). That does not serve to prove enablement. Putting aside that Blincyto does not cause non-specific release of cytokines, none of the needed information to make Blincyto (JTr. at 1042:7-23, 1059:5-10, 1070:10-23 (Marasco)) and use it as a treatment with glucocorticoids to treat cancer and reduce non-specific release of cytokines (JTr. at 898:1-900:19, 910:24-913:10 (Kufer) (testifying about Blincyto's continuous infusion method), 1057:10-20 (Marasco)) was in the specification.

The evidence at trial showed that—in this highly complex, unpredictable field—the Asserted Patents' specification, with experimental data for just one antibody, provides virtually no guidance. The jury heard unrebutted evidence that a skilled person would have to engage in trial and error to discover not only which of the "practically limitless" antibodies satisfy the recited functional features but also the appropriate combination of that antibody, glucocorticoid, dose, timing, and route of administration that would work in the claimed methods. JTr. at 231:11-19 (Lindhofer). As the Federal Circuit recently held, such "trial and error . . . leaves the public no better equipped to . . . use the claimed antibodies than the inventors were when they set out to discover the antibodies over which they now have an exclusive right." *Baxalta*, 81 F.4th at 1367. "[S]uch random trial-and-error discovery, without more, constitutes unreasonable experimentation that falls outside the bounds required by § 112(a)." *Id.* (citing *Sanofi*, 598 U.S. at 613-15).

As the Supreme Court recently explained in *Sanofi*, where a patentee "seeks to monopolize an entire class of [antibodies] defined by their function," the entire class must be enabled with more than instructions that require "painstaking experimentation to see what works." 598 U.S. at 613-614 (internal quotations omitted). "The more one claims, the more one must enable." *Id.* at 610. Having elected to claim a broad genus, Lindis did not meet its end of the patent bargain through its disclosure. Its specification falls far short of enabling its broad claims of "practically

limitless" bispecific antibodies. JTr. at 231:11-19 (Lindhofer). Amgen introduced unrebutted evidence confirming that the Asserted Patents offer only a research plan to test, requiring undue experimentation to practice the full scope of the claimed methods. *See Wyeth & Cordis Corp. v. Abbott Lab'ys*, 720 F.3d 1380, 1384-85 (Fed. Cir. 2013) (where it is necessary to make and test candidates that may meet functional limitations, undue experimentation may be needed to practice the full scope of the invention). The Court should grant JMOL for lack of enablement.

### 3.    That the Claims Are to Methods Does Not Avoid the Written Description or Enablement Requirements.

As its sole response to Amgen's proof of the specification's §112 deficiencies, Lindis obliquely challenged whether a method claim that "entails the use of" an antibody requires adequate description and enablement related to the antibody. For example, Lindis argued in its closing that Amgen's written description defense fails because "we didn't claim an antibody in the patents, we only claimed the glucocorticoid regimen." JTr. at 1444:23-1446:11 (Lindis Closing). Such legal arguments are not evidence and are at any rate wrong as a matter of law—claims to a method do not absolve a patentee from the written description and enablement requirements related to the components of the method. *See Univ. of Rochester*, 358 F.3d at 918, 927 (holding that the specification must provide adequate written description for the full genus of compounds used in method of treatment claims); *In re Xencor, Inc*., 2025 WL 793963 at *4, (Fed. Cir. Mar. 13, 2025) (same); *Teva Pharms. Int'l GmbH v. Eli Lilly & Co*., 2023 WL 6282898, at *11, *19 (D. Mass. Sept. 26, 2023) (same).

### D.    In the Alternative, Amgen's Motion for a New Trial Should Be Granted.

"Federal Rule of Civil Procedure 50 permits a party who moves for judgment as a matter

of law to move in the alternative for a new trial."[4] *Garrison v. Mollers N. Am., Inc.*, 820 F. Supp. 814, 820 (D. Del. 1993). If the Court does not grant JMOL, it should order a new trial, which is warranted here based on "a finding that the jury's verdict is against the weight of the evidence." *Ponzini*, 789 F. App'x at 315. For the reasons noted above as to the Rule 50 motion, the verdict on direct infringement, induced infringement, willful infringement, written description, and enablement is contrary to the great weight of the evidence, and therefore a new trial is warranted.

An additional reason why the verdict on direct infringement is "contrary to the great weight of the evidence" is because the overwhelming scientific data and literature showed that Blincyto did not cause non-specific release of cytokines, and thus could not directly infringe. *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258 (Fed. Cir. 2004). Lindis offered nothing more than speculation and unproven theories. Close scrutiny should be given to the verdict where, as here, the trial was "complicated and deals with a subject matter not lying within the ordinary knowledge of jurors." *Shopify Inc. v. Express Mobile, Inc.*, , 2024 WL 2260900, at *2 (D. Del. May 17, 2024) (quoting *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 90-91 (3d Cir. 1960)).

Close scrutiny reveals that the evidentiary scales tipped entirely in favor of Amgen. Dr. Oleksowicz's "theories," Lindis's sole "evidence" that Blincyto causes non-specific release of cytokines, were completely undone in cross examination. Dr. Oleksowicz never tested Blincyto. She cherry-picked individual data points from four references as purportedly showing non-specific cytokine release, but agreed that none of the references conclude as she does and indeed all explicitly conclude the contrary on the basis of the totality of the data. *See Section* V.A.1, *supra*.

For one of the four references, the FDA report (JTX79), Dr. Oleksowicz acknowledged

---

[4]  Should the Court grant Amgen's JMOL motion, it should also conditionally grant a new trial "if the judgment is later vacated or reversed." *Viatech Techs., Inc. v. Adobe Inc.*, No. 20-358, 2024 WL 3444634, at *6 (D. Del. July 17, 2024) (citing Rule 50(c)(1)).

that at least five FDA scientists concluded that "there's no cell proliferation noted [absent the target with Blincyto]," *i.e.*, Blincyto did not cause non-specific release of cytokines. JTr. at 457:24-458:1, 459:13-460:1, 460:17-22. Dr. Oleksowicz further testified that she "do[es] not disagree with the FDA." JTr. at 460:5-7. For the remaining three, Dr. Oleksowicz premised her theories on the assumption that there were no target cells present in the tested samples, but she conceded in cross examination that was incorrect. JTr. at 465:7-466:7, 472:3-473:23. In contrast to her disproven theories, there was overwhelming clinical and laboratory data, along with repeated and consistent conclusions—by 88 scientists plus peer reviewers and the FDA—that Blincyto did not cause non-specific cytokine release. *See* Section V.A.1, *supra*. Under the great weight of the evidence, a new trial is required because "[i]t would be a miscarriage of justice to allow the verdict of infringement to stand." *Shopify*, 2024 WL 2260900, at *5, 14 (granting a new trial on infringement, where patentee's expert's testimony was "unclear and confusing" and "even conflicting").

## VI.    **CONCLUSION**

Based on the foregoing, Amgen requests that this Court grant its motion under Rule 50 for JMOL of no induced infringement, no willfulness, no direct infringement, lack of written description, and lack of enablement, or alternatively a new trial under Rule 59.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Stephanie N. Vangellow (No. 7277)
PERKINS COIE LLP                      1000 North King Street
Michael J. Wise                       Wilmington, DE  19801
Joseph P. Hamilton                    (302) 571-6600
Lara J. Dueppen                       msharp@ycst.com
Courtney M. Prochnow                  jhiggins@ycst.com
Alisha C. Burgin                      svangellow@ycst.com
Doris Alvarez-Reyes
1888 Century Park East
Suite 1700
Los Angeles, CA  90067-1721           *Attorneys for Amgen Inc.*
(310) 788-9900

Garmai Gorlorwulu
Blake A. Winn
11452 El Camino Real, Suite 300
San Diego, CA  92130-2080
(858) 720-5700

AMGEN INC.
Brian Kao
J. Drew Diamond
Blake Greene
Wendy A. Whiteford
Carolyn S. Wall
One Amgen Center Drive
Thousand Oaks, CA  91320-1799
(805) 447-1000

O'MELVENY & MYERS LLP
Lisa B. Pensabene
Hassen Sayeed
Jing Ying (Amy) Zhao
1301 Avenue of the Americas
Suite 1700
New York, NY  10019
(212) 326-2000

Luann L. Simmons
Sorin Zaharia
Two Embarcadero Center
28th Floor
San Francisco, CA  94111
(415) 984-8700

AUTZ IP LLC
Lindsay H. Autz
115 Lampwick Lane
Fairfield, CT  06824
(203) 526-1307


Dated:  March 21, 2025