IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LINDIS BIOTECH, GMBH | ) | |
| | ) | C. A. No.: 22-00035-GBW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMGEN INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT AMGEN INC.'S REPLY IN SUPPORT OF ITS MOTIONS UNDER
RULES 50 AND 59 FOR JUDGMENT AS A MATTER OF LAW AND NEW TRIAL**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Stephanie N. Vangellow (No. 7277)
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
msharp@ycst.com
jhiggins@ycst.com
svangellow@ycst.com

PERKINS COIE LLP
Michael J. Wise
Joseph P. Hamilton
Lara J. Dueppen
Courtney M. Prochnow
Alisha C. Burgin
Doris Alvarez-Reyes
1888 Century Park East
Suite 1700
Los Angeles, CA  90067-1721
(310) 788-9900

Garmai Gorlorwulu
Blake A. Winn
11452 El Camino Real, Suite 300
San Diego, CA  92130-2080
(858) 720-5700

AMGEN INC.
Brian Kao
J. Drew Diamond
Blake Greene
Wendy A. Whiteford
Carolyn S. Wall
One Amgen Center Drive
Thousand Oaks, CA  91320-1799
(805) 447-1000

O'MELVENY & MYERS LLP
Lisa B. Pensabene
Hassen Sayeed
Jing Ying (Amy) Zhao
1301 Avenue of the Americas
Suite 1700
New York, NY  10019
(212) 326-2000

Luann L. Simmons
Sorin Zaharia
Two Embarcadero Center
28th Floor
San Francisco, CA  94111
(415) 984-8700

AUTZ IP LLC
Lindsay H. Autz
115 Lampwick Lane
Fairfield, CT  06824
(203) 526-1307

*Attorneys for Amgen Inc.*

Dated:  April 25, 2025

**TABLE OF CONTENTS**

**Page**

I.    Judgment As A Matter Of Law Is Warranted For Induced And Willful Infringement ...... 1

    A.   Lindis Failed To Prove Intent For Inducement ................................................. 1

    B.   Lindis Failed To Prove Intent For Willful Infringement ................................. 5

    C.   The Overwhelming Evidence Favors Good-Faith Belief Of Non-Infringement .......... 7

    D.   Lindis's Direct Infringement Theories Are Not Evidence (Much Less Substantial Evidence) Of Intent For Induced And Willful Infringement ...................................... 7

    E.   Because No Reasonable Jury Could Have Found That Blincyto Was "Trifunctional" Or That Amgen Believed It Was, Lindis Failed As A Matter Of Law To Prove Direct Or Induced Infringement Of The '421 Patent ...................................................... 8

II.   Judgment As A Matter Of Law Is Warranted For Lack Of Written Description And Enablement ............................................................................................................. 9

    A.   Dr. Marasco Correctly Applied The Court's Claim Construction ............................ 10

    B.   Dr. Soiffer's and Dr. Marasco's Testimony Do Not Conflict ................................... 11

    C.   Lindis's Legal Arguments About The Appropriate Standard For Evaluating Section 112 Are Not Evidence—And Are Incorrect ............................................................... 13

III.  In The Alternative, Amgen's Motion For A New Trial Should Be Granted ................... 15

IV.   Conclusion ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*10X Genomics, Inc. v. Bruker Spatial Biology, Inc.*,
No. 23-653-MFK, 2024 WL 5201115 (D. Del. Dec. 23, 2024). ........................................... 3, 6

*Ariad Pharm., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) ....................................................................................... 12, 14

*Ateliers de la Haute Garonne v. Broetje Automation-USA Inc.*,
85 F. Supp. 3d 768 (D. Del. 2015) .......................................................................................... 15

*ATEN Int'l Co. v. Uniclass Tech.*, No. CV1504424AGAJWX, 2018 WL 11426504 (C.D. Cal.
Jan. 22, 2018) .......................................................................................................................... 1

*Bd. of Regents v. Boston Sci. Corp.*,
No. 18-392, 2024 WL 2848471 (D. Del Jun. 5, 2024) ............................................................ 6

*Boston Sci. Corp. v. Johnson & Johnson*,
647 F.3d 1353 (Fed. Cir. 2011) .............................................................................................. 15

*Capon v. Eshhar*,
418 F.3d 1349 (Fed. Cir. 2005) .............................................................................................. 14

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*,
541 F.3d 1115 (Fed. Cir. 2008) .............................................................................................. 15

*Eli Lilly & Co. v. Actavis Elizabeth LLC*,
435 F. App'x 917 (Fed. Cir. 2011) ........................................................................................... 5

*In re Xencor, Inc.*,
130 F.3th 1350 (Fed. Cir. Mar. 13, 2025) .............................................................................. 14

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
496 F.3d 1334 (Fed. Cir. 2007) ............................................................................................... 7

*Lipocine Inc. v. Clarus Therapeutics, Inc.*,
541 F. Supp. 3d 435 (D. Del. 2021) ...................................................................................... 15

*Microsoft Corp. v. DataTern, Inc.*,
755 F.3d 899 (Fed. Cir. 2014) ................................................................................................. 5

*Persion Pharmaceuticals LLC v. Alvogen Malta Operations Ltd*,
945 F.3d 1184 (Fed. Cir. 2019) .............................................................................................. 13

*Provisur Techs., Inc. v. Weber, Inc.*,
119 F.4th 948, 955-956 (Fed. Cir. 2024) ................................................................................. 1

# TABLE OF AUTHORITIES

**Page(s)**

*Purewick Corp. v. Sage Prods.*, LLC,
   666 F. Supp. 3d 419 (D. Del. Mar. 31, 2023) ............................................................... 1

*Suprema, Inc. v. Int'l Trade Comm'n*,
   626 F. App'x 273 (Fed. Cir. 2015) ................................................................................ 2

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
   358 F.3d 916 (Fed. Cir. 2004) ..................................................................................... 13

*Vectura Ltd. v. GlaxoSmithKline LLC*,
   397 F. Supp. 3d 579 (D. Del. 2019) .............................................................................. 6

**Statutes**

35 U.S.C. § 298 ................................................................................................................... 1

## I.   Judgment As A Matter Of Law Is Warranted For Induced And Willful Infringement

For inducement and willfulness, Lindis bore the burden of proving that Amgen believed Blincyto causes non-specific release of cytokines and is trifunctional. But there was no actual **evidence** of that belief at trial, and therefore Lindis identifies none in its brief. The evidence instead supports the opposite conclusion: that Amgen lacked intent because of its reasonable, good-faith belief of non-infringement. Lindis also failed its burden of proving direct infringement. Finally, Lindis failed to rebut Amgen's proof of invalidity for lack of enablement and written description.

### A.   Lindis Failed To Prove Intent For Inducement

### 1.   Absence Of Advice Of Counsel Is Not Proof Of Intent

Lindis attempts to fill the hole in its infringement proofs by shifting the burden to Amgen to prove its investigation of non-infringement. Opp. at 7-8. That argument turns the burden of proof upside down. **Lindis** was required to prove infringement, including intent. That burden cannot be discharged by accusing Amgen of failing to prove lack of intent. *See, e.g.*, *ATEN Int'l Co. v. Uniclass Tech.*, 2018 WL 11426504, at *5 (C.D. Cal. Jan. 22, 2018) ("[P]laintiffs' arguments about how Defendants failed to prove non-infringement turn the burden of proof on its head. . . ."), *aff'd in part, rev'd in part on other grounds*, 932 F.3d 1364 (Fed. Cir. 2019).

To the extent Lindis is arguing that Amgen was required to introduce advice of counsel evidence, that misstates the law. The Patent Act, the Federal Circuit authority cited by Lindis, and this District's precedent all confirm that the absence of advice of counsel evidence cannot be used as proof of induced infringement or willful infringement. *See* 35 U.S.C. § 298; *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 447 n.21 (D. Del. 2023) (noting that "failure of an infringer to obtain the advice of counsel . . . may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent." (quoting 35 U.S.C. § 298)); *Provisur Techs., Inc. v. Weber, Inc.,* 119 F.4th 948, 955-56 (Fed. Cir. 2024).

Lindis's criticism is merely a distraction from its failure of proof. The real "gaping hole" in the record is Lindis's lack of evidence establishing Amgen's intent.

### 2.    Lindis Cannot Fix Its Failures Of Proof By Invoking Willful Blindness

Lindis separately attempts to invoke the doctrine of willful blindness to justify the jury's decision with respect to intent for inducement. Opp. at 10. But willful blindness requires **evidence** that: (1) the defendant "subjectively believe[d] that there is a high probability that a fact exists and (2) the defendant [took] deliberate actions to avoid learning of that fact." *Suprema, Inc. v. Int'l Trade Comm'n*, 626 F. App'x 273, 280 (Fed. Cir. 2015). Lindis does not identify any (much less substantial) evidence that Amgen had a "subjective belief" of a "high probability" of infringement. Nor does Lindis identify any "deliberate actions" taken by Amgen to avoid learning about infringement upon which a reasonable jury could have relied. Those failures preclude the applicability of willful blindness here.

The evidence showed Amgen's consistent belief that the use of Blincyto did not infringe. Lindis does not dispute Dr. Lindhofer's admission that Amgen declined to partner with Lindis because of that belief. JTr. at 209:14-22 (Lindhofer) (Amgen's "IP lawyer . . . said, No, we -- we are not convinced that we are really covered by your patent because, you know, we have no Fc region. . . .").[1] That admission is not only exculpatory, it is also the **only** contemporaneous testimonial evidence as to Amgen's intent. The documentary evidence also backs up Amgen's belief it did not infringe. As set forth in detail over four pages of Amgen's opening brief, mountains of evidence corroborate Amgen's good-faith belief both before and after issuance of the Asserted Patents that Blincyto did not cause non-specific release of cytokines—and therefore its use did not

---

[1] In addition to the 2013-2014 discussions, Lindis points to its March 2020 emailed letter "requesting Amgen take a license to practice the Lindis's patent method, which was taught by Amgen's FDA-approved proscribing [sic] information." Opp. at 7. That email request was not in evidence and, regardless, Lindis's statements in a self-serving email do not prove Amgen's intent.

infringe. This evidence includes: (1) ten peer-reviewed papers by Amgen authors concluding that Blincyto did not cause non-specific release of cytokines; (2) papers from unaffiliated scientists and FDA publications reaching the same conclusions and confirming that Amgen's belief was reasonable; and (3) expert witnesses from both Lindis and Amgen confirming these conclusions. Dr. Peter Kufer also testified that in nearly three decades of testing, he had never "seen any data that Blincyto causes non-specific release of cytokines." D.I. 390 at 11.

Lindis's reliance on *10X Genomics* is thus misplaced. Opp. at 8, 11. In *10X Genomics*, "the jury saw that a [defendant's] employee circulated a document about [the inventor's] technology in an email thread designed to share information on competing technologies." *10X Genomics, Inc. v. Bruker Spatial Biology, Inc.*, 2024 WL 5201115, *11 (D. Del. Dec. 23, 2024). Nothing remotely comparable occurred here. In stark contrast, Amgen conducted an investigation: numerous preclinical and clinical tests of Blincyto to assess its safety, published in peer-reviewed journals before and after Lindis's patents issued, were admitted as evidence. All concluded that Blincyto does not cause non-specific release of cytokines.

### 3. Lindis Cannot Use The Blincyto Label As Evidence Of Intent

Without citation or support, Lindis argues that "Amgen knew of the Asserted Patents and instructed its end-users . . . to administer a glucocorticoid with its Blincyto regimen in an infringing manner based on the Blincyto label, **which Amgen does not dispute**." Opp. at 9 (emphasis added). But at trial, Amgen **did** dispute that assertion, repeatedly.

The Blincyto label refers to treatment with glucocorticoids in two circumstances: after Blincyto administration as a rescue medication for Cytokine Release Syndrome ("CRS") and as premedication for infusion reactions. No reasonable jury could have found intent based on these treatments because—as the evidence confirms—neither treatment infringes the Asserted Patents:

- For CRS, the Blincyto label instructs the administration of glucocorticoids only

3

**after** symptoms develop following Blincyto administration (thus making it a "rescue" medication). JTr. at 1211:9-18 (Soiffer). In contrast, the Asserted Claims all require administration of glucocorticoids **before** the administration of Blincyto. JTX1 at Claims 3, 8, 15; JTX2 at Claims 1, 12, 20; JTr. at 432:8-18 (Oleksowicz).[2]

- For infusion reactions, Dr. Lindhofer admitted that premedication with glucocorticoids to treat such reactions was not his invention. *Id.* at 270:3-7 (Lindhofer) ("Q. So if a doctor, in your understanding, is premedicating with glucocorticoids to prevent infusion reactions, then, in your view, that wouldn't be practicing your invention, right? A. Right.").

Nor are these conditions interchangeable. Contrary to Lindis's suggestion, Opp. at 12-13, Dr. Kufer testified explicitly that the Blincyto label distinguishes infusion reactions from CRS: they have similar symptoms but different causes. JTr. at 963:4-965:14 (Kufer); *see also id.* at 326:14-327:9 (Oleksowicz). That testimony was unrebutted.

Lindis's reference to CRS and infusion reactions in the label is also a red herring because each is unconnected to the non-specific release of cytokines required by the Asserted Claims. Opp. at 12-13. **Every** expert testified that the label does not reference or encourage reduction of the non-specific release of cytokines. JTr. at 1199:10-21 (Soiffer), 1132:21-1133:12, 1141:19-25 (Marasco), 424:8-11 (Oleksowicz) ("Q. The label does not say that premedication with glucocorticoids will reduce non-specific release of cytokines, right? A. That is correct."), 429:24-430:2 (Oleksowicz); DTX198 (Blincyto Label). Lindis's expert Dr. Oleksowicz also agreed with Dr. Kufer and Dr. Marasco that the Blincyto label does not instruct that CRS is caused by non-specific release of cytokines.[3] JTr. at 429:24-430:2 (Oleksowicz), 885:24-886:18, 932:25-934:11

---

[2] Lindis withdrew before trial its contention that glucocorticoid administration "concurrently or immediately after" administration of Blincyto would infringe the '421 Patent. D.I. 209 at 4, n.1.

[3] At trial, Lindis's witnesses and counsel wrongly conflated CRS and non-specific release of cytokines. *See, e.g.*, JTr. at 450:1-4, 451:5-22, 497:15-25 (Oleksowicz) (referring to "non-specific CRS"), 170:15-24 (Lindhofer) (testifying that "[t]his inflammatory reaction of cytokine release syndrome or nonspecific cytokine release, it's all the same at the end of the day."), 1418:8-20 (Lindis counsel). It was undisputed that CRS can be caused exclusively by specific release of cytokines—as is the case with Blincyto. *Id.* at 885:24-886:18, 904:23-905:23 (Kufer).

(Kufer), 1141:19-25 (Marasco). Lindis's post-trial assertion that the label "is alone sufficient for a finding of intent to induce infringement" rewrites the label and what the witnesses said—and highlights Lindis's failure to identify any actual evidence of intent to induce infringement.

For similar reasons, the two cases on which Lindis relies are irrelevant. Opp. at 9-10. In *Eli Lilly & Co. v. Actavis Elizabeth LLC*, 435 F. App'x 917, 919 (Fed. Cir. 2011), the claim at issue recited "[a] method of treating attention-deficit/hyperactivity disorder comprising administering to a patient in need of such treatment an effective amount of tomoxetine." The Federal Circuit affirmed the judgment of induced infringement because "the product sold by the defendants [w]as labeled **solely** for the patented use to treat ADHD." *Id.* at 926 (emphasis added). In contrast, the Blincyto label nowhere refers to the "patented use." There is no mention of non-specific release of cytokines caused by Blincyto, much less an instruction to reduce it through glucocorticoid premedication. In *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014), which did not involve a pharmaceutical label, but rather "instruction manuals for using the components in an infringing manner," the Court merely affirmed declaratory judgment jurisdiction for induced infringement. *Id.* Here, however, the Blincyto label is not an "instruction[] to use a product in an infringing manner," at least because it does not mention non-specific release of cytokines. *Id.*

## B.    Lindis Failed To Prove Intent For Willful Infringement

For willful infringement, Lindis retreads the same argument concerning intent as it does for inducement. Singling out Tracy Fleming's testimony, Lindis argues that Amgen failed to "present witnesses and documents at trial demonstrating its pre-suit investigation into its non-infringement position." Opp. at 8. For the same reasons as discussed above, that argument fails. The burden of proof lies with Lindis—**not** Amgen. Moreover, Lindis's argument is not only wrong on the law, it is also wrong on the facts. At trial, Ms. Fleming, a marketing executive, verified a narrow interrogatory about Amgen's first knowledge of the Asserted Patents. The fact that she did

5

not address intent and could not speak on Amgen's scientific investigation of non-infringement does not create a "glaring hole in the record." Indeed, Amgen's first witness was Dr. Kufer, head of Amgen's BiTE group responsible for Blincyto. Dr. Kufer testified about Amgen's extensive scientific testing, the results of which were corroborated by unaffiliated scientists and the FDA— **all** concluding that Blincyto causes only **specific** release of cytokines, which does not infringe. D.I. 390 at 8-12. Amgen's experts confirmed these findings, and Lindis's expert conceded the same on cross-examination. *See id.*

Lindis's cited cases—which both involved known potential infringement—are inapposite. In *10X Genomics,* the defendant's employees circulated a document about the patented technology in an email thread sharing information about competitors. *10X Genomics, Inc.*, 2024 WL 5201115 at *11. In *Vectura,* the defendants' own pre-suit testing provided information from which they could discern infringement. *Vectura Ltd. v. GlaxoSmithKline LLC*, 397 F. Supp. 3d 579, 593 (D. Del. 2019), *aff'd*, 981 F.3d 1030 (Fed. Cir. 2020). In contrast, here, Amgen consistently concluded from its studies (and told the world that it believed) that the use of Blincyto did not infringe.

That belief is consistent with how Blincyto was developed. Lindis does not dispute that Dr. Kufer and Amgen independently used Blincyto with glucocorticoids before 2005, the earliest priority date of the Asserted Patents. *See* DTX192 at 25 (Blincyto's clinical trial (completed by 2003) required patients "to be pretreated with . . . prednisolone 30 minutes **prior to** infusion."). Amgen extensively tested Blincyto over a period of nearly **30** years, and the only conclusion Amgen drew from that testing was that Blincyto does not cause non-specific release of cytokines. Opp. at 11; *cf. Bd. of Regents v. Boston Sci. Corp.*, 2024 WL 2848471, at *12 (D. Del Jun. 5, 2024) (despite evidence of copying, finding the record "insufficient to establish that Defendant's 'conduct rose to the level of wanton, malicious, and bad-faith behavior required for willful

infringement.'") (internal citation omitted). Amgen's independent development of Blincyto and the absence of any copying evidence in this case falls far short of that *Board of Regents* threshold.

**C.**  **The Overwhelming Evidence Favors Good-Faith Belief Of Non-Infringement**

Lindis's failure to meet its burden of proof—and the fact that the record lacks substantial evidence that Amgen had the requisite intent for inducement or willfulness—should be dispositive in Amgen's favor. But this Court should also consider the undisputed evidence favoring the opposite conclusion: that Amgen had a good-faith belief of non-infringement. *See supra* I.A.2. That evidence—including conclusions from Amgen, other scientists, and the FDA, as well as expert testimony—is overwhelming. As the Federal Circuit has explained, "[t]he court should give credence to . . . evidence supporting the moving party that is uncontradicted and unimpeached." *Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334, 1345 (Fed. Cir. 2007).

Lindis portrays Amgen's JMOL as repackaging non-infringement arguments "regarding how Blincyto does not cause non-specific cytokine release." Opp. at 11. Not so. The relevant issue for proof of intent is what Amgen **believed** about the data. The uncontradicted, unimpeached evidence overwhelmingly supports Amgen on the intent issues of willfulness and inducement.

**D.**  **Lindis's Direct Infringement Theories Are Not Evidence (Much Less Substantial Evidence) Of Intent For Induced And Willful Infringement**

Lindis criticizes Amgen's scientific papers and relies on testimony from Dr. Oleksowicz. Opp. at 11-12. Yet Lindis conspicuously ignores the actual conclusions of these papers, as well as Dr. Oleksowicz's trial admissions about them. None of Dr. Oleksowicz's testimony—in which she reinterpreted selective data within Amgen/Micromet papers to theorize that Blincyto could cause non-specific release of cytokines—relates to **Amgen's intent**. All the evidence about these papers shows that Amgen interpreted the data as proof that Blincyto does not cause non-specific release of cytokines. *See, e.g.*, JTr. at 861:7-12, 896:1-3, 896:10-23, 901:17-902:10 (Kufer), 467:23-

468:23 (Oleksowicz) (admitting that Klinger 2012 (JTX66 and DTX147) concludes that "monovalent binding of Blincyto does not activate T cells which is strictly dependent on the presence of target cells"), 471:7-21 (admitting that Topp 2011 (DTX300) concludes that "univalent binding of Blincyto to T cells . . . does not induce cytokine release or proliferation"), 474:25-475:20 (the one patient Dr. Oleksowicz cherry-picked from Bargou (DTX240) did not have an "absence of CD19 (tumor) cells" but instead had three billion CD19 cells). Dr. Oleksowicz also acknowledged that, on the same data on which she relied, five FDA reviewers disagreed with her and reached the identical conclusion as Amgen. *Id.* at 457:9-458:2, 459:2-460:1 (Oleksowicz).

Lindis also claims Dr. Marasco testified that a Micromet paper (JTX102) showed Blincyto causing non-specific cytokine release. Opp. at 12. Not so. Dr. Marasco actually testified: "the conclusions of this report is that—and I agree with—that no cytotoxicity, cytokine production or proliferation of T cells could be triggered by MT103 [Blincyto] in the absence of specific target cells." JTr. at 1011:6-23. Put simply, the report confirmed no non-specific release of cytokines.

Lindis and its expert may disagree with the papers' conclusions, but they do not dispute that Amgen—like the rest of the scientific community, including the FDA—believed those conclusions. Nor does Lindis identify any evidence showing Amgen believed otherwise. Evaluating this record, no reasonable jury could have found intent for inducement or willfulness.

**E.    Because No Reasonable Jury Could Have Found That Blincyto Was "Trifunctional" Or That Amgen Believed It Was, Lindis Failed As A Matter Of Law To Prove Direct Or Induced Infringement Of The '421 Patent**

As Amgen explained in its opening brief, the evidence at trial established that Amgen did not believe that Blincyto was trifunctional and there was no evidence that it is. D.I. 390 at 12-14. Rather than identifying substantial evidence to support the jury's verdict, Lindis points again to an "absence of evidence on this issue," and argues that Amgen failed to show a subjective, good-faith belief of non-infringement. Opp. at 13. But infringement is Lindis's burden. Without evidence that

Blincyto is trifunctional and that Amgen believed it would meet the "trifunctional" limitation required by the '421 Patent, Lindis cannot prevail on direct or induced infringement.

Lindis does not dispute Dr. Lindhofer's admission that Amgen's lawyer told him that Amgen **did not believe** it infringed because its antibody has no Fc region and therefore was not trifunctional. JTr. at 209:14-22 (Lindhofer). The only evidence of a trifunctional bispecific antibody was one with an Fc region. *Id*. at 867:17-21 (Kufer) (With the addition of an "Fc region, the bispecific antibody, so to say, becomes – [] a third function and is trifunctional."), 970:23-971:1, 972:7-12 (Buhmann), 553:19-554:3 (Heiss), 151:3-13, 312:4-13 (Lindhofer), 336:12-22 (Oleksowicz). Amgen's belief that Lindis's patent did not cover Blincyto was entirely reasonable.

Lindis nowhere identifies any other evidence—as it must to prevail—showing the trifunctional limitation was met and that Amgen believed as much. Lindis identifies in bullet points supposed third "functions" of Blincyto, including increased expression of cell-killing chemicals; cytokine release; T-cell proliferation; upregulated T-cell adhesion; and upregulation of activation markers. Opp. at 11-12, 14. But as Dr. Kufer's undisputed testimony explained, these "functions" are merely the secondary downstream effect of Blincyto's first two "functions"—binding to CD3 and CD19. JTr. at 882:19-22, 895:7-17, 948:11-949:11 (Kufer). Accordingly, the downstream effects Lindis identified cannot be third functions of the bispecific antibody at all. If that were so, it would render meaningless the Court's claim construction (D.I. 95)—which requires a function **in addition to** the bispecific antibody binding a CD marker (CD3) and a target antigen (CD19). Without any evidence that Blincyto is trifunctional (or that Amgen believed it to be), Lindis cannot show the '421 Patent direct or induced infringement verdict is supported by substantial evidence.

II.    **Judgment As A Matter Of Law Is Warranted For Lack Of Written Description And Enablement**

Contrary to Lindis's brief, Opp. at 17, Amgen is not arguing that it should prevail on its

9

Section 112 defenses because Amgen's technical experts were the only ones who testified about lack of written description and enablement. Amgen contends that based on the trial record, **no reasonable jury could have concluded otherwise** given the substantial unrebutted evidence.

Lindis does not substantively address any of the Section 112 evidence that Amgen identified in its opening brief as warranting JMOL. Opp. at 15-29. Instead, Lindis argues that the jury's Section 112 verdict was properly based on Dr. Marasco's allegedly improper application of claim construction; alleged contradictions between the testimony of Drs. Marasco and Soiffer; and the "fundamental fallacy" of "non-existent claim limitations." Opp. at 18-20. Each argument fails.

### A.      Dr. Marasco Correctly Applied The Court's Claim Construction

Lindis argues that Dr. Marasco's unfamiliarity with preambles, "exacerbated by his refusal to comply with the Court's claim construction ruling," is sufficient evidence for the jury's Section 112 decision. Opp. at 18. That manufactured argument ignores the record. The claim limitations "treatment of a cancer"/ "cancer treatment" (found in all Asserted Claims) and "reducing the non-specific release" (found in all but two Asserted Claims) are required limitations in the claim preambles. In rendering his opinions, Dr. Marasco specifically addressed those claim limitations, in accordance with the Court's claim construction that the preambles are limiting. *See, e.g.,* JTr. at 1055:8-1056:1, 1057:1-20, 1065:14-1066:14 (Marasco). He also repeatedly confirmed that he complied with the Court's constructions (including the preambles) in reaching his opinions. *Id.* at 986:10-16, 1138:20-1139:4, 1151:1-3, 1151:4-15 (Marasco). Tellingly, Lindis does not identify a single error with Dr. Marasco's application of the Court's claim construction.

Rather than engage with the substance of Dr. Marasco's opinions, Lindis's counsel cross-examined him about legal terminology, which could only serve to confuse the jury. The Court cautioned more than once in response to Amgen's objections that Lindis's counsel was "getting into claim construction." JTr. at 1145:5-20; *see also id. at* 1145:25-1146:14. Lindis made similar

10

improper arguments in closing. *Id*. at 1376:8-9. And in its opposition, Lindis once again argues that that "[t]he jury, using their own eyes to read the plain language of the claims and hearing such confirmation from Dr. Marasco, determined that the Asserted Claims were not as Amgen characterized." Opp. at 23. But juries do not decide what claims mean: this Court does. Lindis's baseless suggestion that Dr. Marasco ignored the Court's claim construction cannot be a proper basis for the jury's Section 112 verdict.

## B. Dr. Soiffer's and Dr. Marasco's Testimony Do Not Conflict

Lindis mischaracterizes Dr. Soiffer's testimony in arguing that his obviousness opinions "directly contradict[]" Dr. Marasco's opinions on written description and enablement. Opp. at 19-20, 28. Try as it might, Lindis cannot show that the full scope of the bispecific antibodies in the Asserted Claims was well-known. Dr. Soiffer never testified to that. He testified that, for some antibodies, the problem supposedly addressed by Lindis's patents was known: certain "bispecific antibodies with an intact functional Fc region" caused non-specific release of cytokines. JTr. at 1174:16-1176:1, 1173:21-1174:4, 1186:19-1187:3 (Soiffer) (discussing the Weiner and Ruf references incorporating functional Fc regions causing non-specific cytokine release); DTX85 (Weiner); JTX11 (Ruf). But the Asserted Claims encompass much more than just bispecific antibodies having an Fc region. As Dr. Marasco and others testified, the disclosure in the specification simply does not provide adequate support for that broad scope. *See, e.g.*, JTr. at 1055:8-1056:9 (patent disclosure of antibodies containing Fc not representative of antibodies without), 1047:1-13, 1052:14-1053:8, 1057:5-1059:21, 1060:20-1063:14, 1064:18-1065:6, 1069:8-1070:4 (Marasco), 272:2-6 (Lindhofer) (admitting patent does not correlate any structure to non-specific release of cytokines). Dr. Marasco also provided unrebutted testimony that the full scope of recited bispecific antibodies were not well-known, explaining that bispecific antibodies were not "off-the-shelf" and that a skilled person would not know which bispecific antibodies

11

satisfy the claimed functional features. *See, e.g.*, *id*. at 1067:19-1068:23 (Marasco) (citing DTX38 at 690-91), 1052:14-1053:23, 1054:17-1056:9, 1057:5-1058:16, 1069:8-1070:4 (Marasco), 858:13-19 (Kufer). Dr. Marasco testified that far from being well-known, the two exemplary antibodies in the Asserted Patents could not be reproduced by a skilled person given the deficient disclosure. *Id*. at 1047:1-1048:11.

Lindis does not dispute that it failed to engage entirely with the *Ariad* or the blazemarks tests for written description. It introduced no cross-examination evidence through Dr. Marasco concerning common structural features, or how or why the two exemplary antibodies in the patent specification would be representative of the genus. Lindis's enablement analysis is similarly deficient. Dr. Soiffer's narrow testimony about glucocorticoids in the art (Opp. at 20) does not contradict Dr. Marasco's testimony about the extensive experimentation required to identify successful combinations of glucocorticoids, bispecific antibodies, and dosages commensurate with the broad scope of the Asserted Claims. JTr. at 1064:21-1065:6, 1069:8-15 (Marasco). Lindis also does not dispute that it failed to engage Dr. Marasco on the *Wands* factors analysis for enablement. Nor does Lindis address testimony from Dr. Marasco about the Trion Report and the EMA Assessment consistent with undue experimentation. *See* D.I. 390 at 26; DTX335 at 18; DTX201.

Lindis's other counterarguments are far from persuasive. For example, Lindis cites to the entirety of fact witness Dr. Stroehlein's testimony as alleged invalidity rebuttal. Opp. at 16. But— just as it did in opposing Amgen's Rule 50(a) Motion at trial—Lindis says nothing in its brief as to why any of that testimony rebuts Amgen's expert witness evidence on lack of written description and enablement, or the admissions by Dr. Lindhofer and Dr. Oleksowicz. JTr. at 1380:3-9.

In sum: Dr. Soiffer testified only about a very small subset of bispecific antibodies with an Fc region and about glucocorticoids in the prior art; Dr. Marasco testified about the lack of written

description and undue experimentation arising from the full scope of Lindis's genus claims, which Dr. Lindhofer described as "practically limitless." JTr. at 231:16-19. That is not a contradiction. The Federal Circuit addressed a similar issue in *Persion Pharmaceuticals LLC v. Alvogen Malta Operations Ltd.*, where the claims covered an "essentially limitless number of formulation species." 945 F.3d 1184, 1195 (Fed. Cir. 2019). The district court found a claim invalid for both obviousness and lack of written description; the patent owner argued on appeal that the district court's findings were inconsistent. *Id.* at 1194. The Federal Circuit rejected that argument given the scope of the claims: the evidence showed that a skilled artisan would have been motivated to combine prior art to achieve a single embodiment with a reasonable expectation of success. *Id.* This evidence did not contradict the lack of written description: "there was nothing in the state of the art . . . that would have provided guidance as to which of the broadly claimed formulations would work and which would not, with the exception of the single embodiment described." *Id.* at 1195.

### C.    Lindis's Legal Arguments About The Appropriate Standard For Evaluating Section 112 Are Not Evidence—And Are Incorrect

Finally, Lindis relies on the "fundamental fallacy" of "non-existent claim limitations," revisiting arguments made in its closing that its method claims need not satisfy the written description and enablement requirements for the recited genus of bispecific antibodies. JTr. at 1444:23-1446:11 (Lindis Closing) (arguing "we didn't claim an antibody in the patents, we only claimed the glucocorticoid regimen."). The Court already rejected these improper claim construction arguments when declining to adopt Lindis's jury instructions. *Id.* at 1408:9-1410:5 (rejecting Lindis's argument), 1567:6-8 (instructing the jury that "the asserted claims recite, among other requirements, use of bispecific antibodies, which can be referred to as 'genus.'").

Decisions from the Federal Circuit on written description confirm that the Court's rejection

13

was appropriate. *See, e.g.*, *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 918, 927 (Fed. Cir. 2004) (specification must provide adequate written description for the full genus of compounds used in method of treatment claims). Tellingly, Lindis cites **no** case in support of its legal theory. Lindis's other criticisms of the Federal Circuit cases cited by Amgen (*In re Xencor* and *Teva*) are equally problematic. Opp. at 22. Lindis contends that those cases are distinguishable because the disputed antibodies were not well-known in the art. But that is true in this case too. As explained above, Dr. Marasco testified that the claimed antibodies here were not well-known. Dr. Soiffer did not contradict that testimony, and Lindis did not rebut it. The broad scope of Lindis's claims and the absence of disclosure in Lindis's patents to support the broad claim breadth, either express or by reference, make the cases cited by Amgen directly relevant to the facts here.

Lindis further alleges—without any citation—that Amgen's position is that Lindis is "required to provide a[n] . . . 'amino acid sequence' in order to sufficiently disclose the 'structure' of the antibodies claimed." Opp. at 20-21. That is not Amgen's argument. Rather, the absence of any amino acid sequence in Lindis's patents was an example of the lack of disclosure of "structural features" common to the genus pursuant to one of *Ariad*'s written description tests. JTr. at 1047:1-9 (Marasco); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1350, 1352 (Fed Cir. 2010). The Asserted Patents fail that test (and all other tests) for written description; Lindis does not dispute that the specification discloses no common structural features, much less a correlation of any particular structure to the functional features required by the claims. JTr. at 1039:5-1042:1, 1046:25-1053:23 (Marasco), 272:2-6 (Lindhofer); D.I. 390 at V.C.1.

Lindis's reliance on *Capon v. Eshhar,* 418 F.3d 1349 (Fed. Cir. 2005), Opp. at 22, is also misplaced. That the written description requirement "varies with the nature and scope of the invention" does not excuse the inadequate support in Lindis's patents for the full claim scope. The

14

Federal Circuit and this Court have found a lack of written description where, as here, the claims were directed to a large genus, and the disclosure included only a small number of species within that genus. *See, e.g., Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1365 (Fed. Cir. 2011); *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1126 (Fed. Cir. 2008); *Lipocine Inc. v. Clarus Therapeutics, Inc.*, 541 F. Supp. 3d 435, 467-68 (D. Del. 2021) (distinguishing *Capon*). The same outcome is warranted here.

**III.    In The Alternative, Amgen's Motion For A New Trial Should Be Granted**

Lindis's arguments in opposition to Amgen's motion for a new trial under Rule 59 should be rejected. First, Lindis argues that "nothing has changed" except briefing since the Rule 50(a) motion raised by Amgen at trial and in closing arguments. Opp. at 30. But trial arguments made before the jury receives the case for deliberation do not limit or constrain this Court's evaluation, after the trial concludes, of the propriety of those arguments, and the sufficiency of the evidence. Amgen's elucidation of evidence in briefing is proper, and provides a substantive assessment of the evidence for this Court. Second, Lindis correctly notes that the Court instructed the jury that the "evidentiary scales" tip in favor of the best quality of evidence, not just quantity. *Id.* at 30. Here, Amgen has both. The overwhelming volume of evidence presented to the jury—and the lack of counterevidence advanced by Dr. Oleksowicz and Lindis—warrant a new trial should the Court not grant JMOL. This is not "reversing the jury's factfinding" or engaging in a credibility determination. Rather, it is recognizing that the verdict was "against the clear weight of the evidence" and preventing a miscarriage of justice. *Ateliers de la Haute Garonne v. Broetje Automation-USA Inc.,* 85 F. Supp. 3d 768, 775 (D. Del. 2015).

**IV.    Conclusion**

For the foregoing reasons, Amgen requests that the Court grants its motion.

15

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Melanie K. Sharp*

_____

Melanie K. Sharp (No. 2501)
James L. Higgins (No. 5021)
Stephanie N. Vangellow (No. 7277)
PERKINS COIE LLP                                    1000 North King Street
Michael J. Wise                                     Wilmington, DE  19801
Joseph P. Hamilton                                  (302) 571-6600
Lara J. Dueppen                                     msharp@ycst.com
Courtney M. Prochnow                                jhiggins@ycst.com
Alisha C. Burgin                                    svangellow@ycst.com
Doris Alvarez-Reyes
1888 Century Park East
Suite 1700                                          *Attorneys for Amgen Inc.*
Los Angeles, CA  90067-1721
(310) 788-9900

Garmai Gorlorwulu
Blake A. Winn
11452 El Camino Real, Suite 300
San Diego, CA  92130-2080
(858) 720-5700

AMGEN INC.
Brian Kao
J. Drew Diamond
Blake Greene
Wendy A. Whiteford
Carolyn S. Wall
One Amgen Center Drive
Thousand Oaks, CA  91320-1799
(805) 447-1000

O'MELVENY & MYERS LLP
Lisa B. Pensabene
Hassen Sayeed
Jing Ying (Amy) Zhao
1301 Avenue of the Americas
Suite 1700
New York, NY  10019
(212) 326-2000

16

Luann L. Simmons
Sorin Zaharia
Two Embarcadero Center
28th Floor
San Francisco, CA  94111
(415) 984-8700

AUTZ IP LLC
Lindsay H. Autz
115 Lampwick Lane
Fairfield, CT  06824
(203) 526-1307

Dated: April 25, 2025

17